IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| **HELFERICH PATENT LICENSING, LLC** | ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:10-cv-04387<br><br>Hon. John Darrah<br>Magistrate Hon. Jeffrey Gilbert |
| Plaintiff, | | |
| v. | | |
| **THE NEW YORK TIMES COMPANY** | | |
| Defendant. | | |

### DEFENDANT THE NEW YORK TIMES COMPANY'S SUPPLEMENTAL MEMORANDUM OF LAW

Defendant The New York Times Company ("New York Times") submits this supplemental memorandum of law to address the two issues requested by the Court:

*Issue 1*: What is the legal impact upon a common interest group when a member of such a group enters into a license with the opposing party and/or becomes adverse in interest, in whole or in part, to the common interest group as discussed in open court?

*Answer*: The privileged communications between the members of the group continue to be protected after one or more members withdraws or becomes adverse.

*Issue 2*: May a Court, consistent with Rules 26(b)(5)(A)(ii) and 26(c), determine whether materials are protected by the work product privilege described in Rule 26(b)(3) based upon *in camera* submissions without requiring production of such materials to opposing parties?

*Answer*: The Court may and should determine the privilege based on an *in camera* review to protect the identity of the members and confidential information that is otherwise not relevant.

1

A.  **Privilege Remains With the Common Interest Group Even When A Member Leaves the Group Because Consent From All Members is Required to Waive Privilege**

It is fundamental that "the joint defense privilege cannot be waived without the consent of all parties to the defense." *Ohio-Sealy Mattress Mfg. Co. v. Kaplan*, 90 F.R.D. 21, 29 (N.D. Ill. 1980); *see also Western Fuels Ass'n v. Burlington N. R.R.*, 102 F.R.D. 201, 203 (D. Wyo. 1984). If one member of the group takes a license, settles or otherwise departs the group, the departing member cannot unilaterally waive the privilege on the materials shared while it was a member of the common interest group. *Ohio-Sealy Mattress*, 90 F.R.D. at 29. In other words, the privilege remains with the group. This is necessary to "assure joint defense efforts are not inhibited or even precluded by the fear that a party to joint defense communications may subsequently unilaterally waive the privileges of all participants, … in an effort to exonerate himself …" *Western Fuels Ass'n*, 102 F.R.D. at 203.

An essential benefit of joint collaboration is that a member of the common interest group cannot reveal the contents of the shared communications without the consent of all the members. *Matter of Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F. Supp. 381, 393 (S.D.N.Y. 1975) ("[W]ithout it the protection is reduced to an improbable alternative."). That is, the privilege continues long after a member of the common interest group has departed from the legal consortium and none of the members may unilaterally waive the privilege. *Lugosch v. Congel*, 219 F.R.D. 220, 238 (N.D.N.Y. 2003). Therefore, any settlement involving a member of the group does not in any way affect a claim of another member of the group, it only disposes the claims of the settling member. *Waller v. Financial Corporation of America*, 828 F.2d 579 (9th Cir. 1987).

The only exception to this well established principle does not apply here. The privilege could be waived if one former member sues another member ***in litigation***. *See Ohio-Sealy*, 90

F.R.D. at 29 (citing *Grand Jury Subpoena*, 406 F. Supp. at 393-394).  If one such member were to leave the group, that member is not considered "adverse" merely by his departure from the group.  The exception requires a departed member to be adverse to another member ***in litigation*** and the waiver of privilege would apply to that litigation.

      **B.    A Court May and Should Review Documents *In Camera* To Determine Privilege**

Joint defense and common interest agreements are well understood to be protected by the work product doctrine.  *McNally Tunneling Corp., v. City of Evanston*, No. 00-C-6979, 2001 WL 1246630 (N.D. Ill. Oct. 18, 2001).  The purpose of the work product doctrine is to protect a party's litigation strategies from disclosure to the opposing party.  *Trading Technologies Int'l, Inc. v. eSpeed, Inc.*, Nos. 04 C 5312, 05 C 1079, 05 C 4088, 05 C 4120, 05 C 4811, 05 C 5164, 2007 WL 1302765, at *2 (N.D. Ill. May 1, 2007) ("Where defendants corresponded with third parties in preparation for litigation, such communications are privileged under the work product doctrine, whether or not the third parties were members of the joint defense group.").

The agreements at issue were all made in anticipation of litigation.  Courts have recognized the privileges to apply even when the agreement is made to avoid litigation.  Where "pre-litigation advice and assistance serve a shared legal interest" such communication may be protected by attorney-client and joint defense privileges.  *Trading Technologies Int'l, Inc. v. eSpeed, Inc.*, No. 04 C 5312, 2007 WL 1521136, at *1 (N.D. Ill. May 17, 2007) (citing *In re Regents of the University of California*, 101 F.3d 1386, 1391 (Fed. Cir. 1996)).

Other plaintiffs have tried to compel discovery on joint defense agreements on the theory that they were entitled to review the terms and challenge defendant's claim of privilege.  The courts have generally denied those requests and opted for an *in camera* review to determine whether privilege applies without requiring production to the requesting party.  The court in

3

*McNally Tunneling* conducted an *in camera* review and concluded that the joint defense agreement was protected by work product and attorney client privilege. *McNally Tunneling*, 2001 WL 1246630, at *4 ("Moreover, **after inspecting** the joint defense agreement, this Court notes that production of that document would reveal the mental processes of [the] attorney.") (emphasis added). Other courts have conducted similar *in camera* reviews and concluded work product privileges apply. *City of Columbus v. Hotels.com*, No. 3:07cv2117, 2009 WL 3335577, at *3 (N.D. Ohio Oct. 14, 1009) (The court reviewed a common interest agreement and joint defense agreement and found them to be subject to attorney client and work product privileges.). In fact, some courts have found *in camera* reviews necessary to preserve and protect privileged materials. *Morrow v. Brown, Todd & Heyburn*, 957 S.W.2d 722, 727 (Ky. 1997) ("[W]e strongly believe that production of opinion work product should not be ordered without a prior *in camera* inspection by the trial court.").

In *United States v. Bicoastal Corp*, the defendants argued that to produce their joint defense agreement "would be tantamount to disclosing the type of defense that the defendants were considering, as well as whether defendants felt that they had common interests." *United States v. Bicoastal Corp*, No. 92-CR-261, 1992 WL 693384, at *6, (N.D.N.Y. Sept. 28, 1992). The court agreed, holding that to disclose even "the existence of [a joint defense] agreement would be an improper intrusion into the preparation of the defendants' case." *Id*. In *McNally Tunneling*, the court held that a joint defense agreement "was clearly prepared in anticipation of litigation," and "production of [the joint defense agreement] would reveal the mental processes of [the defendant's] attorney." *McNally Tunneling*, 2001 WL 1246630, at *4.

Courts have also conducted similar *in camera* reviews to determine whether the documents at issue were *discoverable*, not just whether they were privileged. In such instances,

4

"[t]he relevancy of a joint defense agreement depends on the language of the agreement," and thus an *in camera* review of the document was necessary. *Warren Distrib. Co. v. InBEV USA L.L.C.*, No. 07-1053, 2008 WL 4371763, at *3 (D.N.J. Sept. 18, 2008). After an *in camera* review, the court in *Warren* found that the joint defense agreement was not discoverable because the agreement "merely contains language that parties typically include in joint defense agreements to protect from discovery privileged information revealed to a third party." *Id*. Using *Warren* as a guideline, the court in *Ford Motor Company* conducted a similar *in camera* review and found that the agreement contains standard and boilerplate language that is not discoverable because it is not relevant to any claim or defense in this case. *Ford Motor Company v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 428 (D. N.J. 2009).[1] Other courts agree with *Warren*. *See, e.g., Broessel v. Triad Guar. Ins. Corp.*, 238 F.R.D. 215, 217 (W.D. Ky. 2006) (joint defense agreements are "not relevant to the claim or defense of any party") (quoting Fed. R. Civ. P. 26(b)(1)). Thus, the relevance of the information concerning joint defense agreements should be well established before compelling disclosure. *United States v. Int'l Longshoremen's Ass'n*, No. 05-3212, 2006 WL 2014093, at *1 (E.D.N.Y. July 18, 2006) (recognizing that information concerning joint defense agreements is sensitive, and that disclosure of such information should not be lightly ordered).

After an *in camera* review of joint defense agreements, the courts have denied production on two independent grounds:

(1) the joint defense agreement contains trial strategies and thereby constitutes **privileged information** under the work product doctrine and/or attorney client privilege; or

---

[1] The Court found that the parties to the agreement are relevant. *Ford Motor Company*, 257 F.R.D. at 428. The distinction here is that the members of the joint defense agreements at issue are ***not*** parties.

5

(2) the joint defense agreement contains standard boiler plate language. In this circumstance, courts have denied production because the agreement is *not relevant* to any claim or defense in the case and therefore *not discoverable*.

An *in camera* review by this court will reveal that the joint defense agreements at issue contain privileged information protected by work product. Namely, the joint defense agreements would indicate which third parties are cooperating with the New York Times. This cooperation and whom the New York Times is in cooperation with would reveal trial strategies and the mental processes of defendant's attorneys (as well as those of third parties). Because the *identity* of such third parties would essentially disclose confidential information, these identities should be protected under work product.[2] *See McClure & O'Farrell, P.C. v. Grigsby*, 918 N.E.2d 335, 343 (Ind. Ct. App. 2009) ("Identity … may be privileged where revealing the third party's identity … would be tantamount to the disclosure of a confidential communication …."). Accordingly, the agreements at issue should not be produced to protect the identities of the third party members and confidential legal strategies.

### C. Conclusion

Use of *in camera* review is particularly appropriate here because the agreements themselves and the identity of the members to those agreement are not otherwise relevant in this case. Plaintiff Helferich Patent Licensing, LLC ("HPL") has admitted to sending hundreds of infringement demand letters. When it first filed its motion to compel, it candidly admitted that it wanted the names of the members to the common interest agreement so that it could sue them.

---

[2] An analogous situation involves consulting expert witnesses who are retained by parties in litigation but are not expected to testify at trial. The identities of, and documents generated by, consulting expert witnesses are generally protected from discovery under the work product doctrine. *See, e.g., Advance Technology Incubator, Inc. v. Sharp Corp.*, No. 2:07-CV-468, 2009 WL 4432569, at *6 (E.D. Tex. July 29, 2009).

6

Protecting those identifies through the *in camera* process, protects the interests of non-parties against whom HPL has voluntarily elected not to sue at this time. HPL's attempt to target parties as retaliation for preparing a defense together is a compelling reason to protect their identities through the use of the *in camera* review process.

Dated: January 31, 2011                           Respectfully Submitted,

By: *[signature: Brian M. Buroker]*

Michael R. Weiner (Ill. Bar No. 06217025)
Julianne M. Hartzell (Ill. Bar No. 06275093)
**MARSHALL, GERSTEIN & BORUN LLP**
233 South Wacker Drive
6300 Sears Tower
Chicago, IL 60606-6357
(312) 474-6300
mweiner@marshallip.com
jhartzell@marshallip.com

Brian M. Buroker *(Admitted Pro Hac Vice)*
Daniel G. Vivarelli *(Pro Hac Vice to be filed)*
**HUNTON & WILLIAMS LLP**
1900 K Street, NW
Washington, DC  20006
(202) 955-1500
bburoker@hunton.com
dvivarelli@hunton.com

David A. Kelly *(Pro Hac Vice to be filed)*
**HUNTON & WILLIAMS LLP**
Bank of America Plaza, Suite 4100
600 Peachtree Street, NE
Atlanta, Georgia 30308
(404) 888-4280
dkelly@hunton.com

Kenneth Richieri, Esq. (Of Counsel)
The New York Times Company
620 Eighth Avenue, (17th floor)
New York, NY 10018
212-556-1995
richierk@nytimes.com

***Counsel for Defendant The New York Times Company***

8

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy on the 31st day of January, 2011 the foregoing DEFENDANT THE NEW YORK TIMES COMPANY'S SUPPLEMENTAL MEMORANDUM OF LAW was served via email on the following counsel of record:

| | |
|---|---|
| Steven G. Lisa | Victoria Curtin |
| Donald J. Lisa | VICTORIA GRUVER CURTIN, PLC |
| James Busch | 14555 North Scottsdale Road |
| Jon Kappes | Suite 160 |
| Mildred Park | Scottsdale, AZ 85254 |
| Timothy Sperling | victoria@vcurtin.com |
| LAW OFFICES OF STEVEN G. LISA, LTD. | |
| 55 W. Monroe St. Suite 3210 | |
| Chicago, IL 60603 | |
| stevelisa@patentit.com | |
| donlisa@patentit.com | |
| jamesbusch@patentit.com | |
| jonkappes@patentit.com | |
| millypark@patentit.com | |
| timsperling@patentit.com | |

**By:** _____
Brian M. Buroker