**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:10-cv-04387 |
| | ) | |
| THE NEW YORK TIMES COMPANY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THE NEW YORK TIMES COMPANY'S MOTION TO STAY PENDING
REEXAMINATIONS OF ALL THREE ASSERTED PATENTS**

# TABLE OF CONTENTS

I.     INTRODUCTION ...............................................................................................1

II.    STATEMENT OF FACTS ..................................................................................1

    A.    HPL's Licensing And Litigation Campaign ............................................1

    B.    This Litigation.........................................................................................3

    C.    The New York Times' Reexamination Requests......................................4

III.    LEGAL AUTHORITIES .....................................................................................7

IV.    ARGUMENT .......................................................................................................8

    A.    HPL Will Not Be Prejudiced Or Tactically Disadvantaged ...................8

    B.    The Reexaminations Will Simplify The Issues And Streamline The Case ...........10

    C.    A Stay Will Reduce The Burden of Litigation On The Parties And The Court .........................................................................................................13

V.    CONCLUSION...................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arrivalstar S.S. v. Canadian Nat'l Ry. Co.*,
  No. 08 C 1086, 2008 WL 2940807 (N.D. Ill. July 25, 2008) .................................. 8, 10, 11, 13

*Baxter Int'l, Inc. v. Fresenius Med. Care Holdings, Inc.*,
  No. 08 C 2389, 2008 WL 4395854 (N.D. Ill. Sept. 25, 2008) .................................................. 8

*Broadcast Innovation, LLC v. Charter Commc'ns, Inc.*,
  No. 03 C 2223, 2006 WL 1897165 (D. Colo. July 11, 2006) .................................................. 7

*Constellation IP, LLC v. The Allstate Corp.*,
  No. 07 C 132, 2008 WL 4787625 (E.D. Tex. May 21, 2008) .................................................. 8

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
  849 F.2d 1430 (Fed. Cir. 1988) ............................................................................................... 12

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*,
  No. 85 C 7565, 1987 WL 6314 (N.D. Ill. February 2, 1987) .......................................... 7, 9, 10

*eSoft, Inc. v. Blue Coat Sys, Inc.*,
  505 F. Supp. 2d 784 (D. Colo. 2007) ........................................................................................ 7

*Ethicon, Inc. v. Quigg*,
  849 F.3d 1422 (Fed. Cir. 1988) ............................................................................................... 10

*E-Z-GO v. Club Car, Inc.*,
  No. 09 C 119 (S.D. Ga. January 12, 2010) ............................................................................... 8

*Gould v. Control Laser Group*,
  705 F.2d 1340 (Fed. Cir. 1983) ......................................................................................... 11, 13

*In re Cygnus Telecomm. Tech., LLC, Patent Litig.*,
  385 F. Supp. 2d 1022 (N.D. Cal. 2005) ................................................................................... 12

*JAB Distributors, LLC v. London Luxury LLC*,
  No. 09 C 5831, 2010 WL 1882010 (N.D. Ill. May 11, 2010) ............................... 7, 9, 10, 11, 13

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) .................................................................................................................. 7

*Pactool Int'l Ltd. v. DeWalt Indus. Tool. Co.*,
  No 06 C 5367, 2008 WL 312677 (W.D. Wash. Feb. 1, 2008) ................................................. 8

*Pass & Seymour, Inc. v. Hubbell Inc.*,
  532 F. Supp. 2d 418 (N.D.N.Y. 2007) .................................................................................... 13

*Pfizer Inc. v. Apotex Inc.*,
    640 F. Supp. 2d 1006 (N.D. Ill. 2009) ........................................................................ 7

*Rockwood Pigments, NA, Inc. v. Interstate Materials, Inc.*,
    No. 02 C 2178, 2002 WL 1160170 (N.D. Ill. May 29, 2002) ................................... 10

*Trippe Mfg. Co. v. Am. Power Conversion Corp.*,
    46 F.3d 624 (7th Cir. 1995) ....................................................................................... 7

**Other Authorities**

M.P.E.P. § 2686.04(1) ....................................................................................................... 10

M.P.E.P. § 609.5(a) .............................................................................................................. 6

**Regulations**

37 C.F.R. § 1.515(a) ............................................................................................................. 6

## I.      INTRODUCTION

The Court should stay this case in view of Defendant The New York Times Company's

("The New York Times") recently filed *ex parte* reexamination requests, which will confirm that

all three of the patents-in-suit are invalid.  The Court and the parties gain nothing by litigating

issues in this Court that will be resolved by the specially-trained patent examiners at the U.S.

Patent and Trademark Office ("PTO").  Staying this case in its early stages will conserve judicial

resources because the reexaminations will either eliminate this case entirely (if the PTO agrees

that all three patents are indeed invalid) or at a minimum streamline the issues in this case (by

HPL having to amend its patent claims or clarify the meaning of those patent claims during

reexamination).  Also, staying this case now will prevent Plaintiff Helferich Patent Licensing,

LLC ("HPL") from inundating the Court by naming additional parties in this lawsuit and/or

filing numerous additional lawsuits, as it has said it plans to do.  The interest in preserving Court

resources and the expense of litigating to the parties far outweighs any delays to HPL's litigation

campaign.  The New York Times therefore moves the Court to stay the above-captioned case

pending the resolution of its recently filed *ex parte* reexamination requests.

## II.     STATEMENT OF FACTS

### A.      HPL's Licensing And Litigation Campaign

HPL, by its own admission, is a patent holding company that has the exclusive rights to

license patents owned by Wireless Science, LLC, a company founded by Richard Helferich.

HPL's patents purportedly relate to sending SMS text messages to wireless devices, such as

mobile telephones.  Starting in 2008, HPL began suing wireless handset manufacturers in this

District.[1]  In all, HPL sued eighteen different companies.  All of those HPL sued purchased their peace with a license to HPL's patents.

In late 2009, HPL shifted its focus away from the wireless handset manufacturers and launched an extensive campaign to obtain licensing fees from companies whose purportedly "infringing" activities consist of communicating with customers by sending SMS text messages or posting content on Twitter or Facebook (social media sites that HPL contends sends out SMS text messages).  To date, literally hundreds of companies in the U.S. have received settlement/license demands from HPL.  A typical letter from HPL to a company that uses SMS text messaging or has a Twitter or Facebook presence threatens litigation if the recipient does not capitulate to its settlement/license demand.  As HPL proudly announced in its Second Amended Complaint, twenty companies have "purchased" a license in this short period of time.

The New York Times received a demand from HPL on December 28, 2009.  The New York Times communicated its belief that it did not infringe HPL's patents and provided other defenses.  Undeterred, on July 14, 2010, HPL filed the above-referenced lawsuit when The New York Times did not take a license.  Since that time, HPL has made settlement/license demands to numerous other entities.  Presently, The New York Times is the only so-called content provider that HPL has sued.  But given HPL's admissions in its recent filings, there is no doubt that HPL is planning an all-out-assault against potential infringers in this Court.  *See, e.g.*, Dkt. No. 51 at 4 ("HPL should be told who they are now, so that HPL has the opportunity to either add them as parties, ***or sue them individually*** and [attempt to] consolidate the cases….) (emphasis added).

---

[1] *See, e.g., Helferich Patent Licensing, L.L.C. v. Huawei Tech. Co.*, No. 10 C 7387; *Helferich Patent Licensing, L.L.C. v. Palm, Inc.*, No. 10 C 2411; *Helferich Patent Licensing, L.L.C. v. Hewlett-Packard Co.*, No. 10 C 1905; *Helferich Patent Licensing, L.L.C. v. Sanyo Electric Co.*, No. 9 C 7053; *Helferich Patent Licensing, L.L.C. v. NEC Corp.*, No. 9 C 3558; *Helferich Patent Licensing, L.L.C. v. Panasonic Corp.*, No. 9 C 3557; *Helferich Patent Licensing, L.L.C. v. Asustek Computer Inc.*, No. 8 C 5605; *Helferich Patent Licensing, L.L.C. v. ZTE Corp.*, No. 8 C 5191; *Helferich Patent Licensing, L.L.C. v. I-Mate P.L.C.*, No. 8 C 5190; *Helferich Patent Licensing, L.L.C. v. Asustek Computer Inc.*, No. 8 C 5189; *see also* Dkt. No. 56 at 6.

Indeed, HPL recently responded to a question from Magistrate Judge Gilbert about why it was not enforcing their rights against other third parties with a promise that it intended to do so very shortly. *See* Dkt. No. 62, Ex. 7 at 13:16-24 ("we have in fact taken to heart your comments at the last hearing that if we wanted to pursue whether we have claims against other parties other than The New York Times, there are other ways we should go about doing that and we have in fact begun communications with those entities…."). Taking it one step further, just days ago, when HPL sought The New York Times' position on whether it would oppose a motion by HPL to add numerous parties to this case, The New York Times said it was not likely to object.

### B. This Litigation

HPL filed its original Complaint on July 14, 2010 (Dkt. No. 1), by vaguely alleging infringement of its patents, without identifying which of 1,158 patent claims it was specifically asserting. *See* Dkt. No. 24 at 3. The New York Times promptly moved to dismiss HPL's original Complaint on September 7, 2010 for failing to state a claim with sufficient specificity. *See* Dkt. Nos. 23-24. The Court granted The New York Times' motion on September 21, 2010. *See* Dkt. No. 30.

HPL filed its Amended Complaint on September 24, 2010, alleging infringement of only specific claims from U.S. Patent Nos. 7,280,838 (the "'838 patent") and 7,499,716 (the "'716 patent"), namely claims 9, 10, 12, 13, 15-18, and 20 of the '838 patent and claims 15, 17, 18, 21, 24, and 27 of the '716 patent. *See* Dkt. No. 31 at 6-9. The New York Times answered HPL's Amended Complaint on October 25, 2010 and counterclaimed against HPL. *See* Dkt. No. 36.

Subject to an agreement with The New York Times (*see* Dkt. No. 39), HPL again amended its complaint on November 30, 2010. *See* Dkt. No. 43. This Second Amended Complaint added allegations that The New York Times infringes claims 2-13, 15-17, 19 and 20

of a third patent, U.S. Patent No. 7,835,757 (the "'757 patent"), which had recently issued on November 16, 2010.  *See id.* at 11.

The parties exchanged Initial Disclosures on November 8, 2010.  HPL served its Initial Infringement Contentions on November 22, 2010.  The New York Times provided its Initial Non-Infringement, Invalidity, and Unenforceability Contentions on December 27, 2010.  Since that time, HPL has taken two Rule 30(b)(6) depositions of The New York Times and discovery has otherwise proceeded according to the Court's Scheduling Order.  The parties are not scheduled to serve Final Contentions pursuant to LPR 3.2 until May 16, 2011.

### C.     The New York Times' Reexamination Requests

The New York Times has identified certain prior art that (1) the United States Patent and Trademark Office ("PTO") had not considered when it granted the three patents in suit and (2) anticipates or renders obvious all of the claims in all three patents.

The New York Times promptly began preparing formal requests to be filed with the U.S. PTO to request reexamination of all three patents.  While HPL has only asserted a small number of claims of the three patents-in-suit, The New York Times nevertheless prepared extensive reexamination requests seeking reexamination of every single claim.  Those formal requests, totaling over 800 pages in all, were filed on February 25, 2011.  *See* Exs. A-C.  The New York Times sought reexamination of claims 1-96 of the '838 patent (*see, e.g.*, Ex. A at A12), claims 1-18 and 21-69 of the '716 patent (*see, e.g.*, Ex. B at B12), and claims 1-20 of the '757 patent (*see, e.g.*, Ex. C at C12).[2]

---

[2] The PTO received the reexamination requests, found the paperwork to be proper and assigned reexamination "control numbers" for each of the three reexamination requests: the '838 patent has reexamination control number 90/009,883 (see Ex. D); the '716 patent has reexamination control number 90/009,880 (see Ex. E); and the '757 patent has reexamination control number 90/009,882 (see Ex. F).

The reexamination request for the '838 patent relies on thirteen references to raise "substantial new questions of patentability." *See* Ex. A at A21-A22. When examining the '838 patent application, the PTO Examiner did not consider or discuss on the record any of these thirteen references. *Id*. at A23-A41. Importantly, HPL failed to cite several of the key pieces of prior art, including the Tso patent, Rover reference and Rover Mosaic reference in the '838 patent application record. *Id*. at A23-A36.

The reexamination request for the '716 patent relies on five references to raise substantial new questions of patentability. *See* Ex. B at B22-B23. Again, HPL failed to cite several key pieces of prior art, including the Tso patent, the *Always On* article, the Bjorndahl patent, the Rover reference, and the Rover Mosaic reference in the '716 patent application record. *Id*. at B22.

The reexamination request for the '757 patent relies on six references to raise substantial new questions of patentability. *See* Ex. C at C23-C26. Of those references, the Bjorndahl, Lu, and Masters patents were before the PTO Examiner when the '757 patent application was being examined. *Id*. at C24. The Rover reference, the Rover Mosaic reference and the Tso patent were cited in information disclosure statements (IDSs) at the very end of the examination process and only after the '757 patent application had been "allowed" and the PTO's issue fee had been paid. According to PTO rules, if a patent applicant wants the PTO to consider a reference after the application has been allowed and the issue fee paid, it must file a request to withdraw the application from issuance - something HPL failed to do. Effectively, then, the examiner never made a substantive determination as to whether the Rover references or the Tso patent invalidated any of the claims of the '757 patent. The New York Times' reexamination request will enable the PTO to make that determination. In fact, although the Tso patent was discussed

by the Applicant in a submission to the examiner called an IDS, the PTO examiner found this IDS to be filed too late, because HPL did not file the IDS until after payment of the issue fee. *Id.* According the Manual of Patent Examining Procedure, non-compliant IDSs "will be placed in the application file, ***but none of the information will be considered*** by the Examiner." M.P.E.P. § 609.5(a) (emphasis added).

Under 37 C.F.R. § 1.515(a), "[w]ithin three months following the filing date of a request for an *ex parte* reexamination, an examiner will consider the request and determine whether or not a substantial new question of patentability affecting any claim of the patent is raised by the request and the prior art cited therein…."

Therefore, the PTO will decide by no later than May 25, 2011 whether a substantial new question of patentability affecting any claim of the patent is raised by The New York Times' *ex parte* reexamination requests.

Based on the PTO's most recent statistics regarding *ex parte* reexamination requests, ninety-two percent (92%) of the requests filed are granted (*i.e.*, the PTO determines that the request raises a substantial new question of patentability). *See Ex Parte* Reexamination Filing Data - December 31, 2010 at 1 (Attached as Exhibit G). During *ex parte* reexamination, the claims are changed in sixty-five percent (65%) of the cases and all claims are canceled in twelve percent (12%) of the cases. *See id* at 2. That means there is a seventy-seven percent (77%) chance that the claims will be altered in some fashion during *ex parte* reexamination.

To put it plainly, there is a significant chance that this entire litigation will be resolved by the PTO and a very high probability that the nature of HPL's patent rights will be drastically changed. Waiting until the PTO finally resolves exactly whether HPL should have any patent rights, and if so, what they really are will benefit all parties involved.

## III.    LEGAL AUTHORITIES

District courts have the power to stay a case pending the completion of a reexamination

by the PTO.  *See, e.g., eSoft, Inc. v. Blue Coat Sys, Inc.*, 505 F. Supp. 2d 784, 787 (D. Colo.

2007) (citing *Broadcast Innovation, LLC v. Charter Commc'ns, Inc.*, No. 03 C 2223, 2006 WL

1897165, at *4 (D. Colo. July 11, 2006) (Attached as Exhibit H)); *see also JAB Distributors,*

*LLC v. London Luxury LLC*, No. 09 C 5831, 2010 WL 1882010, at *5 (N.D. Ill. May 11, 2010)

(Attached as Exhibit I).  This ability comes from "the power inherent in every court to control

the disposition of the causes on its docket with economy of time and effort for itself, for counsel,

and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).  The Court has broad

discretion in exercising this authority.  *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d

624, 629 (7th Cir. 1995).

In considering a stay, the following factors are relevant: (1) "whether a stay will unduly

prejudice or tactically disadvantage the non-moving party," (2) "whether a stay will simply the

issues in question and streamline the trial," and (3) "whether a stay will reduce the burden of

litigation on the parties and on the court." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007

(N.D. Ill. 2009).

Staying proceedings in the district court pending the resolution of a PTO reexamination

benefits the parties and the court.  *See Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co., Ltd.*, No. 85

C 7565, 1987 WL 6314, at *2 (N.D. Ill. February 2, 1987) (enumerating benefits of staying

litigation pending PTO reexamination) (Attached as Exhibit J). The benefits include streamlining

the case and simplifying the remaining issues, promoting settlement, and reducing the length and

expense of litigation.  *Id.*  These benefits are maximized when the stay is sought early in the

litigation, and consequently courts "frequently issue stays pending reexamination when the

litigation is at an early stage .”  *Arrivalstar S.S. v. Canadian Nat'l Ry. Co.*, No. 08 C 1086, 2008

WL 2940807, at *2 (N.D. Ill. July 25, 2008) (Attached as Exhibit K).

Staying a case while a reexamination request is pending further benefits the parties.  *See*

Order, *E-Z-GO v. Club Car, Inc.*, No. 09 C 119, 12 (S.D. Ga. January 12, 2010) (attached as Ex.

L); *see also Constellation IP, LLC v. The Allstate Corp.*, No. 07 C 132, 2008 WL 4787625, at *4

(E.D. Tex. May 21, 2008) (granting a stay before a PTO decision on whether to reexamine)

(Attached as Exhibit M); *Pactool Int'l Ltd. v. DeWalt Indus. Tool. Co.*, No 06 C 5367, 2008 WL

312677, at *2 (W.D. Wash. Feb. 1, 2008) (same) (Attached as Exhibit N).  In *E-Z-GO*, the Court

was "not persuaded that the motion should be denied merely because the PTO had not yet

accepted Club Car's application for reexamination." *Id.* (relying on fact that ninety-five percent

of reexamination requests have been granted).  Indeed, this Court has "assume[d] for purposes of

[a] motion [where the request was not yet granted] that the reexaminations will take place."

*Baxter Int'l, Inc. v. Fresenius Med. Care Holdings, Inc.*, No. 08 C 2389, 2008 WL 4395854, at

*4 (N.D. Ill. Sept. 25, 2008) (relying on statistics from PTO indicating that few requests are

rejected) (Attached as Exhibit O).

## IV.  ARGUMENT

All three relevant factors weigh in favor of granting a stay pending reexamination.  HPL

will not be prejudiced by a stay and it cannot deny the numerous benefits for the parties and the

Court that will result from the stay.

### A.  HPL Will Not Be Prejudiced Or Tactically Disadvantaged

HPL cannot point to any prejudice or disadvantage it will suffer by having the case

stayed.  First, this case is in the early stages.  The Court has acknowledged that the benefits from

staying a case "are maximized when the stay is sought early in the litigation, and consequently,

courts 'frequently issue stays pending reexamination when the litigation is at an early stage."

*JAB*, 2010 WL 1882010, at *3 (citations omitted).  The Court's new Local Patent Rules recognize that this case is in an early stage.  LPR 3.5 states that "[a]bsent exceptional circumstances, no party may file a motion to stay the lawsuit pending reexamination in the U.S. Patent Office after the due date for service of the Final Contentions pursuant to LPR 3.2."  In this case, Final Contentions pursuant to LPR 3.2 are not due for service until May 16, 2011.

Additionally, the posture of this case is similar to numerous other cases where this Court has entered a stay.  For example, in *JAB*, the Court stayed a case pending reexamination where the parties had not taken depositions, filed dispositive motions, briefed claim construction issues, or requested a trial date.  *See JAB*, 2010 WL 1882010, at *4.  In *Emhart*, the Court granted a stay where "substantially no trial preparations have been carried out…."  *Emhart,* 1987 WL 6314, at *3.  Here, the parties exchanged written responses to opening discovery requests, document production has begun on a rolling basis, and HPL has taken two Rule 30(b)(6) depositions of The New York Times.  The New York Times has not yet deposed any HPL witnesses, no dispositive motions have been filed, claim construction has not been briefed, and certainly no trial preparations have been carried out.

Second, the time it will take for the *ex parte* reexaminations to transpire will not unduly prejudice HPL or provide The New York Times with a tactical advantage.  *See JAB*, 2010 WL 1882010, at *3 (granting stay in part because 25.4 month pendency during *ex parte* reexamination is not prejudicial).  According to the PTO's most recent statistics regarding *ex parte* reexamination, the average pendency for an *ex parte* reexamination is 25.6 months.  *See* Ex. G at 2.  Like the 25.4 months considered by the Court in *JAB*, the current 25.6 month pendency is not prejudicial to HPL.

Also, as acknowledged by the Court in *JAB*, "there is a statutory mandate for the PTO to proceed diligently" because "'*all* reexamination procedures *will* be conducted with *special dispatch*.'" *JAB*, 2010 WL 1882010, at *3 (quoting *Ethicon, Inc. v. Quigg*, 849 F.3d 1422, 1426 (Fed. Cir. 1988) (emphasis in original)). Additionally, "[a] separate PTO internal rule provides that where 'litigation is stayed for the purpose of reexamination, all aspects of the proceeding will be expedited to the extent possible.'" *JAB*, 2010 WL 1882010, at *3 (quoting M.P.E.P. § 2686.04(1)); *see also Rockwood Pigments, NA, Inc. v. Interstate Materials, Inc.*, No. 02 C 2178, 2002 WL 1160170 at *1 (N.D. Ill. May 29, 2002) (Attached as Exhibit P). These procedural mechanisms, which also apply in this case, protect HPL from being prejudiced by the stay.

Third, HPL will not be prejudiced because its relief is protected. Any claim by HPL that it will be prejudiced "is undermined by the fact that its complaint seeks monetary damages and does not seek preliminary injunctive relief." *JAB*, 2010 WL 1882010, at *3; *see also Emhart*, 1987 WL 6214 at *2. Furthermore, HPL will not be prejudiced by incurring monetary losses during the stay because interest will accrue in its favor if the Court determines that it is entitled to monetary relief. *See JAB*, 2010 WL 1882010, at *3; *see also Arrivalstar*, 2008 WL 2940807, at *2.

Because HPL will not be able to point to any prejudice or disadvantage it will suffer by having the case stayed, this factor favors a stay of the proceedings.

### B.     The Reexaminations Will Simplify The Issues And Streamline The Case

A stay will appropriately allocate the parties' resources and simplify the issues before the Court. *See Arrivalstar*, 2008 WL 2940807, at *2 (preventing the patent owner from waging a two-front battle before both the PTO and the Court and allowing it to concentrate solely on proceedings before the subject matter experts at the PTO). The most obvious simplification arising from a stay is that the reexamination process is likely to result in a cancellation or at least

change of at least the asserted claims (and likely many of the unasserted claims) of the patents-in-suit. "Courts have rejected Plaintiff's blanket claim that the reexamination will not benefit the judicial proceedings." *JAB*, 2010 WL 1882010, at *4. Indeed, "the PTO's expert analysis of prior art may simplify and/or facilitate resolution of the case whether or not [the PTO is persuaded] to amend or invalidate some or all of the claims or patents at issue." *Id* (quoting *Arrivalstar*, 2008 WL 2940807, at *2).

Here, The New York Times seeks reexamination of all of the asserted claims. During *ex parte* reexamination, the claims are changed in sixty-five percent (65%) of the cases and all claims are canceled in twelve percent (12%) of the cases. *See* Ex. G at 2. The Federal Circuit stated that "[o]ne purpose of the reexamination procedure is to eliminate trial of [an] issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives reexamination proceedings). *Gould v. Control Laser Group*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). Based on statistics alone, there is no doubt that the reexaminations will simplify the issues and streamline the trial, which favors a stay of the proceedings.

The Court need not rely on the statistics alone to know that these reexaminations will simplify the issues. The strength of the prior art relied upon in The New York Times' reexamination requests confirms that the reexaminations will simplify – and likely resolve – this case. U.S. Patent No. 6,047,327 to Tso et al. ("Tso"), which was not considered by the Examiner reviewing any of the three patents-in-suit, clearly invalidates all of the asserted claims from those three asserted patents. *See, e.g.,* Ex. A at A45-A360; Ex. B at B38-B221; Ex. C at C40-C105.

The patents-in-suit relate to "selective paging." Using this so-called "selective paging," a paging system notifies a paging transceiver that a message has been received but does not

initially transmit the associated message. *See, e.g.*, Ex. A at A19. The user, upon being notified

of the message, can then download the entire message at a time convenient to the user. *Id.*

Tso disclosed this so-called "selective paging" more than eighteen months before Richard

Helferich applied for his first patent relating to this concept. Notably, Tso discloses a server that

may send a message including a resource identifier, or "InfoBite," to a user. *See, e.g.*, Ex. A. at

A23. If the user wishes to obtain the full content corresponding to the InfoBite, the user may

send a message containing the resource identifier back to the server, which may then serve the

detailed content to the user. *Id.* Each of the reexamination requests of the patents-in-suit provide

copious details regarding how Tso invalidates HPL's patent claims. *See, e.g.,* Ex. A at A45-

A360; Ex. B at B38-B221; Ex. C at C40-C105. The Court can be reasonably certain that the

application of Tso to the asserted claims during reexamination will result in either cancellation of

or amendments to the asserted patent claims.

Even in the unlikely event that the claims of the patents-in-suit survive the

reexamination process unchanged – which they will not – the reexamination process nevertheless

will streamline this litigation. For example, characterizations of the claims made by HPL during

the reexamination process become part of the prosecution history, a source of intrinsic evidence

that must be considered during claim construction. *See E.I. du Pont de Nemours & Co. v.

Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988). Granting a stay would allow this

Court, when later conducting its own claim construction analysis, to benefit from HPL's

clarifications as to the scope of its claims during reexamination. *See, e.g.*, *In re Cygnus

Telecomm. Tech., LLC, Patent Litig.*, 385 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (granting a

stay pending reexamination in part due to the benefits of a "richer prosecution history upon

which to base necessary claim construction determinations"). Finally, a stay pending

12

reexamination would allow the Court in later proceedings to benefit from the expertise of the PTO as brought to bear in the reexamination. *See, e.g.*, *Pass & Seymour, Inc. v. Hubbell Inc.*, 532 F. Supp. 2d 418, 436 (N.D.N.Y. 2007) ("An important factor figuring into the stay question is the desirability of drawing upon the expertise of the PTO regarding the complex areas of patentability implicated in this action… [T]he parties and the court could benefit immensely from the expertise of the PTO.").

### C.     A Stay Will Reduce The Burden of Litigation On The Parties And The Court

A stay will help ensure that the parties do not litigate duplicative issues twice, or in some instances litigate certain claims at all. The PTO reexamination statistics "suggest a very real possibility that if this litigation proceeds in tandem with the PTO reexamination proceedings, the parties will have wasted their resources litigating issues that ultimately may be mooted by the PTO's findings." *JAB*, 2010 WL 1882010, at *4 (quoting *Arrivalstar*, 2008 WL 2940807, at *3). This litigation is in its infancy. *See Arrivalstar*, 2008 WL 2940807, at *2. Both parties made initial document productions. HPL has taken two Rule 30(b)(6) depositions of The New York Times. But The New York Times has not taken any depositions of HPL. And the parties have not served final contentions, filed substantive motions or briefed claim construction issues. As a result, this case is "in its infancy," *id*, "which militates in favor of granting a stay." *JAB*, 2010 WL 1882010, at *4.

Also, a stay in this case will particularly reduce the burden of this and other litigations by HPL on the Court. As noted above, reexaminations eliminate trial of [an] issue (when the claim is canceled) or facilitates trial of that issue by providing the district court with the expert view of the PTO (when a claim survives reexamination proceedings). *Gould v. Control Laser Group*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). HPL's pattern of litigation against defendants who refuse to capitulate to its licensing demands and its admission that it intends to sue additional content

providers (likely also in this Court) further warrants a stay in this proceeding. Reexamination is appropriate here because it will likely eliminate or facilitate certain issues not just in this case but as to other parties HPL is threatening to include in this case or other cases filed in this district. If HPL cancels a claim during reexamination, it will not be able to assert that claim against The New York Times or any other parties in future cases. Similarly, if HPL narrows certain claims by amendment during reexamination, HPL's infringement positions may be weakened, thus perhaps preventing The New York Times and other parties from being subject to suit on these patents. The Court should therefore stay this case to reduce the burden caused by litigating the patents-in-suit.

## V.       CONCLUSION

All of the relevant factors favor a stay of this case until the ex parte reexaminations are completed. Accordingly, and for the foregoing reasons, The New York Times respectfully requests that this Court grant its motion to stay these proceedings.

Dated: March 23, 2011                    Respectfully submitted,

                                         The New York Times Company

                                         By:      /s/ Brian M. Buroker
                                               Michael R. Weiner
                                               Illinois Bar No. 06217025
                                               mweiner@marshallip.com
                                               Julianne M. Hartzell
                                               Illinois Bar No. 06275093
                                               jhartzell@marshallip.com

                                               **MARSHALL, GERSTEIN & BORUN LLP**
                                               233 South Wacker Drive
                                               6300 Sears Tower
                                               Chicago, IL 60606-6357
                                               312-474-6300

                                               Brian M. Buroker *(Pro Hac Vice)*
                                               Daniel G. Vivarelli *(Pro Hac Vice)*
                                               **HUNTON & WILLIAMS LLP**
                                               1900 K Street, NW
                                               Washington, DC   20006
                                               (202) 955-1500
                                               bburoker@hunton.com
                                               dvivarelli@hunton.com

                                               David A. Kelly *(Pro Hac Vice)*
                                               **HUNTON & WILLIAMS LLP**
                                               Bank of America Plaza, Suite 4100
                                               600 Peachtree Street, NE
                                               Atlanta, Georgia 30308
                                               (404) 888-4280
                                               dkelly@hunton.com

                                               Kenneth Richieri, Esq. (Of Counsel)
                                               The New York Times Company
                                               620 Eighth Avenue, (17th floor)
                                               New York, NY 10018
                                               212-556-1995
                                               richierk@nytimes.com

                                               **ATTORNEYS FOR DEFENDANT
                                               THE NEW YORK TIMES COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy on the 23rd day of March, 2011 the foregoing THE NEW YORK

TIMES COMPANY'S MOTION TO STAY PENDING REEXAMINATIONS OF ALL THREE

ASSERTED PATENTS was served via email on the following counsel of record:


Steven G. Lisa
Donald J. Lisa
James Busch
Jon Kappes
Mildred Park
Timothy Sperling
LAW OFFICES OF STEVEN G. LISA, LTD.
55 W. Monroe St. Suite 3210
Chicago, IL 60603
stevelisa@patentit.com
donlisa@patentit.com
jamesbusch@patentit.com
jonkappes@patentit.com
millypark@patentit.com
timsperling@patentit.com

Victoria Curtin
VICTORIA GRUVER CURTIN, PLC
14555 North Scottsdale Road
Suite 160
Scottsdale, AZ 85254
victoria@vcurtin.com


**By:**     /s/ Brian M. Buroker
             Brian M. Buroker

i