**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **HELFERICH PATENT LICENSING, LLC,** | |
| **v.** | Case No. 1:10-cv-04387 |
| **THE NEW YORK TIMES COMPANY**, | |
| **HELFERICH PATENT LICENSING, LLC,** | |
| **v.** | Case No. 1:11-cv-06914 |
| **BEST BUY CO., INC.,** | |
| **HELFERICH PATENT LICENSING, LLC,** | |
| **v.** | Case No. 1:11-cv-07189 |
| **THE BON-TON STORES, INC.,** | |
| **HELFERICH PATENT LICENSING, LLC,** | |
| **v.** | Case No. 1:11-cv-07395 |
| **G4 MEDIA, LLC,** | |
| **HELFERICH PATENT LICENSING, LLC,** | |
| **v.** | Case No. 1:11-cv-07607 |
| **CBS CORPORATION,** | |
| **HELFERICH PATENT LICENSING, LLC,** | |
| **v.** | Case No. 1:11-cv-07647 |
| **BRAVO MEDIA, LLC** | |

**COMBINED OPPOSITION OF THE NEW YORK TIMES COMPANY TO PLAINTIFF'S MOTION TO LIFT STAY AND REPLY OF CBS CORPORATION, THE BON-TON STORES, INC., BRAVO MEDIA, LLC, G4 MEDIA, LLC AND BEST BUY CO., INC. IN SUPPORT OF THEIR MOTION TO STAY THIS LITIGATION PENDING REEXAMINATIONS OF ALL ASSERTED PATENTS**

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 5

    I.    Reexamination of Asserted Patents .......................................................................... 5

    II.   This Litigation ......................................................................................................... 7

ARGUMENT ...................................................................................................................... 8

    I.    HPL Will Not Be Prejudiced or Tactically Disadvantaged by a Stay .......................... 9

    II.   The *Inter Partes* Reexaminations Will Eliminate HPL's Patent Claims or at a Minimum, Simplify the Issues and Streamline the Case ............................................ 12

    III.  The *Inter Partes* Reexaminations Will Reduce the Burden of Litigation on the Parties and the Court ............................................................................................. 14

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Arrivalstar, S.S. v. Canadian Nat'l Ry. Co.*,
  No. 08-1086, 2008 WL 2940807 (N.D. Ill. July 25, 2008) .......................................... 9, 13, 15

*AT&T Intellectual Prop. I v. Tivo, Inc.*,
  774 F. Supp. 2d 1049 (N.D. Cal. 2011) ................................................................. 13

*Cooper Notification, Inc. v. Twitter, Inc.*,
  No. 09-865, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ......................................... 11, 13, 15

*Dura Global Techs., LLC v. Magna Int'l Inc.*,
  No. 11-10551, 2011 WL 5039883 (E.D. Mich. Oct. 24, 2011) ................................... 15

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
  849 F.2d 1430 (Fed. Cir. 1988) ................................................................. 12, 14

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*,
  No. 85-7565, 1987 WL 6314 (N.D. Ill. Feb. 2, 1987) ................................................. 9

*Fellowes, Inc. v. Aurora Corp. of Am.*,
  No. 07-7237, 2009 U.S. Dist. LEXIS 9595 (N.D. Ill. Feb. 10, 2009) ............................... 12, 14

*Genzyme Corp. v. Cobrek Pharms., Inc.*,
  No. 10-00112, 2011 WL 686807 (N.D. Ill. Feb. 17, 2011) ................................. 9, 10, 11, 14, 15

*Gould v. Control Laser Corp.*,
  705 F.2d 1340 (Fed. Cir. 1983) ................................................................. 12

*In re Cygnus Telecomm. Techn., LLC Patent Litig.*,
  385 F. Supp. 2d 1022 (N.D. Cal. 2005) ................................................. 11, 12, 13, 14

*In re Phoenix Licensing LLC, Patent Litig.*,
  No. 08-1910, 2009 WL 464993 (D. Ariz. Feb. 24, 2009) ............................................. 5, 13, 15

*JAB Distributors, LLC v. London Luxury, LLC*,
  No. 09-5831, 2010 WL 1882010 (N.D. Ill. 2010) ................................... 9, 12, 13, 14, 15

*Ohio Willow Wood Co. v. Alps South Corp.*,
  No. 04-1223, 2008 WL 4683222 (Oct. 21, 2008) .................................................... 10

*Pegasus Dev. Corp. v. Directv, Inc.*,
  No. 00-1020, 2003 WL 21105073 (D. Del. May 14, 2003) .......................................... 11

*Pfizer Inc. v. Apotex Inc.*,
  640 F. Supp. 2d 1006 (N.D. Ill. 2009) ................................................................. 8

*Sorensen v. Digital Networks N. Am. Inc.*,
   No. 07-05568, 2008 WL 152179 (N.D. Cal. Jan. 16, 2008) ...................................................... 9

*SP Techs., LLC v. HTC Corp.*,
   No. 08-3706, 2009 WL 1285933 (N.D. Ill. May 6, 2009) ................................................ 4, 9, 15

**Rules**

Local Patent Rule ................................................................................................................. 10

M.P.E.P. § 2686.04(1) ......................................................................................................... 11

## INTRODUCTION

This Court should deny Plaintiff Helferich Patent Licensing, LLC's ("HPL") motion to lift the stay entered in its case against The New York Times Company ("NYT"). The Court should likewise grant a stay in the new litigations against CBS Corporation ("CBS"), The Bon-Ton Stores, Inc. ("Bon-Ton"), Bravo Media, LLC ("Bravo"), G4 Media, LLC ("G4") and Best Buy Co., Inc. ("Best Buy") (collectively the "New Defendants"). NYT and the New Defendants (collectively "Defendants") submit this combined brief as the Court requested.

HPL fails to show that a stay is no longer appropriate under the factors this Court applies. HPL is not being unduly prejudiced or tactically disadvantaged (since HPL would only be entitled to damages and not an injunction if liability is proven). A continuing stay will likely simplify the issues before this Court and reduces the burden on the Court and the parties. There is no prejudice to HPL in continuing to allow the U.S. Patent and Trademark Office ("PTO"), the subject matter experts on this matter, to continue to assess, through the reexamination process, the extent to which HPL's patent claims are invalid in light of the prior art.

Together, Defendants are all real parties in interest seeking the *inter partes* reexamination of HPL's patents by the PTO. Defendants' efforts have met with significant success. Just weeks ago, the PTO (1) found that Defendants have shown a reasonable likelihood of success of prevailing in challenging all of the claims of two of HPL's asserted patents—U.S. Patent No. 7,499,716 (the "'716 patent") and U.S. Patent No. 7,155,241 (the "'241 patent") and (2) rejected *all* of the challenged claims in a first official action. Plus, in the year since this Court stayed HPL's litigation against NYT, HPL's patent claims changed significantly: *every* claim asserted against NYT has been amended or narrowed through arguments HPL made to the PTO.

Defendants elected to challenge the validity of all of HPL's patents-in-suit in the PTO and spent substantial resources doing so. The reexamination requests are detailed and voluminous—the '716 reexamination request is over 1,000 pages long—and will enable the PTO

to analyze HPL's claims in light of a wealth of relevant and important prior art. In addition to their successful effort in showing the PTO that they have a reasonable likelihood of success in their challenge of the '716 and '241 patent claims, Defendants also will request reexamination of HPL's U.S. Patent No. 7,835,757 (the "'757 patent") as soon as the PTO issues a reexamination certificate for that patent and for U.S. Patent No. 7,280,838 (the "'838 patent") shortly. Defendants also intend to request reexamination of the three purportedly new patents HPL just added to this case last week based on significant prior art relevant to those patents' invalidity.

Defendants' election of *inter partes* reexamination comes with a consequence. Once an *inter partes* reexamination of a given patent concludes, Defendants will be estopped in accordance with 35 U.S.C. § 315(c) from alleging invalidity of that patent based on prior art they raised or could have raised in the reexamination. Thus, even if HPL's patents survive *inter partes* reexamination—which Defendants contend is highly unlikely—a stay pending the resolution of these reexaminations will substantially limit the scope of any discovery, motions practice or trial. Defendants urge this Court to permit the PTO to complete its detailed, substantive evaluation as to whether these patent claims are invalid before litigation proceeds in earnest in this Court.

HPL's arguments opposing the stay fall short or a number of reasons:

**The Three Patents-in-Suit That Have Been Subject to *Ex Parte* Reexamination Have Been Substantially Amended**

First, HPL did not "win the reexaminations" because some claims in three of its patents survived NYT's earlier *ex parte* reexamination. Of the three patents that the PTO reexamined in the more limited *ex parte* reexamination process, only a very small number of the *original claims* of those patents actually survived. HPL consciously chose to amend the majority of its claims, and also to add 128 new claims. With over 95% of its original patent claims changed, its "surviving" patents are essentially new patents. Defendants' only procedural vehicle to challenge these substantially modified patents is through the *inter partes* reexamination process, which was quickly initiated.

### Four Patents-in-Suit Have Never Been Reexamined

Second, HPL fails to note that four of its patents-in-suit (the '241,[1] U.S. Patent No. 8,107,601 (the "'601 patent"), U.S. Patent No. 8,116,741 (the "'741 patent"), and U.S. Patent No. 8,134,450 (the "'450 patent")) have *never* before been subject to any reexamination. Rather, Defendants are addressing the questionable validity of each HPL patent as it becomes ripe for challenge. For example, shortly after the '241patent was added to a complaint against CBS and Bravo, Defendants proceeded to prepare a detailed request for reexamination on that patent. In the last month, the PTO determined that there is a reasonable likelihood that Defendants will succeed in challenging all the claims of the '241 patent and rejected all of the challenged claims in a first official action. With regard to the other three HPL patents-in-suit (the '601, '741, and '450 patents), each of these patents is *newly issued* and was just added to the case last week.

### Defendants Have Efficiently Used the Reexamination Process

Third, HPL wrongly argues that Defendants are somehow drawing out the reexamination process to cause delay. HPL attempts to point to unsuccessful *inter partes* reexamination requests for the '716, '757, and '838 patents filed in September 2011. The reality, however, is that Defendants' September 2011 *inter partes* requests were considered premature and cumulative in light of where the then-still-pending *ex parte* requests were in the stage of examination. At that point, the PTO had already rejected dozens of HPL's patent claims, and HPL was in the process of amending claims and adding new claims.

Since those amended and new claims could not procedurally be challenged in the September 2011 reexaminations because they had not yet issued, Defendants consciously chose not to have the PTO reconsider whether to accept the September 2011 reexamination requests. Rather, Defendants are waiting until each patent is ripe for a proper *inter partes* reexamination proceeding, which occurs only after the related *ex parte* reexamination is complete. In the case of the '716 patent, the latest reexamination request was filed shortly after completion of the '716

---

[1] The '241 patent has not been asserted against NYT, Best Buy, Bon-Ton or G4.

reexamination; Defendants intend to file *inter partes* reexamination requests for the '757 shortly after the *ex parte* reexamination certificate issues for that patent, and for the '838 patent in the next several weeks. Nothing whatsoever was delayed by the September 2011 requests.

The success of Defendants' new reexamination request for the '716 patent, which the PTO just granted, should put HPL's arguments concerning "delay" based on the September 2011 requests to rest. Due to a change in the law, the recently granted '716 reexamination request was subject to a higher and more exacting standard than were Defendants' September 2011 requests. The fact that the PTO granted the new request earlier this month under the heightened standard of scrutiny underscores the fact that Defendants' September 2011 requests were not a delaying tactic.

### *Inter Partes* Reexamination Proceedings Are Judicially Efficient

Fourth, HPL's protests about potential future delays are based on incomplete PTO statistics, as explained below. What is more, HPL does not point to any actual prejudice that would result from potential delay. Nor can it. HPL is a patent holding company seeking monetary damages in a series of suits in their infancy: awarded interest compensates it for any delay. *SP Techs., LLC v. HTC Corp.*, No. 08-3706, 2009 WL 1285933, *2-3 (N.D. Ill. May 6, 2009) (granting stay for *inter partes* reexamination).

Reexamination is likely to result in additional changes to or further cancellation of some or all of the asserted claims. HPL's patents have already been changed significantly as a result of *ex parte* reexamination. After *inter partes* reexamination (a much more thorough review by the PTO, which also allows Defendants to directly participate), HPL's patents are likely to be eliminated or at least materially altered in ways that preclude HPL from asserting infringement by Defendants.

### HPL Is Attempting to Improperly Shift the Standard for a Stay

Finally, HPL's arguments are flawed because it is trying to shift the standard for a stay, arguing that this Court should lift the stay for NYT (and refuse to enter a stay for the New Defendants) unless the PTO *cancels all* of the asserted claims. But even authority cited by HPL

recognizes that "the appropriateness of a stay does not depend on whether the stay can resolve the entire case." *In re Phoenix Licensing LLC, Patent Litig.*, No. 08-1910, 2009 WL 464993, at *2-3 (D. Ariz. Feb. 24, 2009). Staying patent litigation pending *inter partes* reexamination is appropriate and common, especially where the patentee continues to amend his claims causing the scope of the invention to be a moving target. There is no reason to treat this case any differently.

## BACKGROUND

Since this Court entered a stay about one year ago, three material events took place:

First, the asserted claims have undergone significant change. The PTO rejected the majority of the original patent claims in HPL's '716 and '757 patents. Of the six claims of the '716 patent and 17 claims of the '757 patent asserted by HPL against NYT (Case No. 1:10-cv-04387, Dkt. No. 43), 19 (over 82%) were found invalid.

Second, HPL has increased the complexity of its patent litigation strategy. Since October 2011, HPL has sued multiple other companies for patent infringement, including CBS, Bravo, G4, Bon-Ton, and Best Buy. Those defendants filed a motion for stay pending reexamination in January 2012. That was their first motion for stay. The cases against them are still in their infancy; discovery relating to the New Defendants has not commenced. Further, on March 20, 2012, HPL asserted three new patents against Defendants *for the very first time*.

Third, in the time since the parties last appeared before the Court, the PTO has rejected ***every original, amended, and new claim*** of the '716 patent. The PTO has also rejected every claim of the '241 patent, which HPL alleges against CBS and Bravo. Defendants will be seeking *inter partes* reexamination of all of HPL's patents-in-suit within days or weeks.

I.     **Reexamination of Asserted Patents**

In its second amended complaint against NYT, HPL asserted 27 claims of three patents (the '838, '716 and '757 patents). Dkt. No. 43. HPL asserted many of these claims against the New Defendants. It also asserted the '241 patent against CBS and Bravo. NYT requested *ex*

*parte* reexamination of the '838, '757 and '716 patents on February 25, 2011. Dkt. No. 72, Exs. A-C.

**'716 Patent:** In December 2011, the PTO rejected all of the asserted claims of the '716 patent, but confirmed 14 unasserted claims and permitted HPL to amend and add 65 new claims. *Helferich Patent Licensing, LLC v. CBS Corp.*, Case No. 1:11-cv-07607, Dkt. No. 30, Markman Decl. Exs. 8 & 9. Shortly after the *ex parte* reexamination certificate issued for the '716 patent, NYT and the New Defendants filed an *inter partes* reexamination request attacking all of the claims of the '716 patent—original, amended, and new—demonstrating that the prior art discloses the allegedly patentable aspects of those claims. Case No. 1:11-cv-07607, Dkt. No. 30, Markman Decl. Ex. 6. The PTO granted that request in late February (*see* Order Granting Request for *Inter Partes* Reexamination dated February 27, 2012, attached hereto as Exhibit 1), and initially ***rejected all claims of the '716 patent***. *See Inter Partes* Reexamination Communication dated February 27, 2012, attached hereto as Exhibit 2.

**'757 Patent:** In December 2011, the PTO confirmed only six of the original 20 '757 patent claims. HPL narrowed the other 14 claims by amendment and added 49 new, narrower claims. Case No. 1:11-cv-07607, Dkt. No. 30, Markman Decl. Exs. 10 & 11. The scope of *every* asserted claim of the '757 patent was changed. A reexamination certificate, a prerequisite to Defendants being permitted to seek *inter partes* reexamination, has not yet issued.

**'838 Patent:** For this patent, the PTO initially rejected all 96 claims in the *ex parte* reexamination. Case No. 1:11-cv-07607, Dkt. No. 30, Markman Decl. Ex. 1. HPL then made scope-limiting arguments about the issued claims and added 14 new narrowed claims in an attempt to avoid invalidity. Case No. 1:11-cv-07607, Dkt. No. 30, at 4. The reexamination certificate just issued yesterday.

**'241 Patent (Asserted Only against CBS and Bravo):** NYT and the New Defendants filed an *inter partes* reexamination request for the '241 patent at the end of December. Case No. 1:11-cv-07607, Dkt. No. 30, Markman Decl. Ex. 5. That request was granted on March 12, 2012 (*see* Order Granting Request for *Inter Partes* Reexamination dated March 12, 2012, attached

hereto as Exhibit 3) and the PTO *rejected all claims*. *See Inter Partes* Reexamination Communication dated March 12, 2012, attached hereto as Exhibit 4.

Prior *Inter Partes* **Requests:** In September 2011, before the *ex parte* reexaminations of the '716, '757 and '838 patents concluded, NYT and the New Defendants filed *inter partes* reexamination requests, which were denied on procedural grounds. *See* Dkt. No. 97, at 7. Since the September 2011 requests only addressed original patent claims that had already been rejected by the PTO and/or were being amended by HPL in the *ex parte* reexaminations, the PTO declined the September 2011 requests as cumulative.

Upcoming *Inter Partes* **Requests:** As with the '716 patent, NYT and the New Defendants will file *inter partes* reexamination requests regarding all of the claims of the '757 after the *ex parte* reexamination certificate issues. Defendants will also file *inter partes* reexamination request for the '838 patent (now that its reexamination certificate has issued) as well as the three purportedly new patents HPL just added to this case last week based on prior art that demonstrates that the narrowing amendments on which HPL relied to attempt to avoid invalidation are also not patentable.

**Summary:** All told, every claim asserted against NYT (many of which also are asserted against the New Defendants) has been narrowed through amendment or arguments HPL has made in an attempt to avoid invalidity; and the two patents asserted that have been subject to both types of reexamination have seen all their claims rejected in *inter partes* reexamination as invalid, even after prior confirmation and amendment of some claims in *ex parte* reexamination.

## II.     This Litigation

Since this Court entered a stay, nothing significant has changed regarding the situation of the parties. HPL is still a patent holding company only entitled to money damages *if* it can prove infringement of a valid patent claim. And, each of the pending litigations is still in its infancy.

HPL filed its original complaint in the NYT case in July 2010. Dkt. No. 1. After NYT prevailed on a motion to dismiss, Dkt. No. 30, HPL filed a first amended complaint in September

2010, Dkt. No. 31, and a second amended complaint in late November 2010, Dkt. No. 43. The parties exchanged initial disclosures in November and December 2010, and HPL took two Rule 30(b)(6) depositions. No additional discovery occurred. A month after it filed *ex parte* reexamination requests, Dkt. No. 72, Exs. A-C, NYT moved for a stay, which was granted in early April 2011, Dkt. No. 72; Dkt. No. 75.

In October 2011, HPL brought additional patent infringement suits against the New Defendants, presumably because they had joined NYT in seeking *inter partes* reexamination. This Court then granted the New Defendants' unopposed motion to reassign their cases to this Court. Dkt. No. 89. Those cases are in their earliest stages; the New Defendants filed answers but deadlines relating to initial disclosures have been postponed by stipulation. *E.g.*, Case No. 1:11-cv-07607, Dkt. No. 29. The New Defendants promptly moved for a stay. *E.g.*, Case No. 1:11-cv-07607, Dkt. No. 30.

Before the *ex parte* reexamination certificates issued for two of the asserted patents (the '838 and '757 patents), and two months after NYT and the New Defendants filed *inter partes* reexamination requests for the third patent originally asserted against NYT (the '716 patent) and an additional patent asserted against CBS and Bravo (the '241 patent), HPL moved to lift the stay in the NYT case and opposed the New Defendants' motion for a stay in their respective cases. *E.g.*, Dkt. No. 118.

## ARGUMENT

Courts consider three factors in determining whether to enter a stay pending reexamination: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). HPL has failed to show that any of these factors has changed since this Court entered a stay. Rather, all factors continue to favor the stay.

## I.   HPL Will Not Be Prejudiced or Tactically Disadvantaged by a Stay

HPL did not establish harm or prejudice from continuance of the stay in the NYT case and the imposition of a stay in the cases of the New Defendants.  This and other courts have repeatedly recognized that a stay of early-stage patent litigation over money damages due to reexamination engenders neither prejudice nor disadvantage.  *Genzyme Corp. v. Cobrek Pharms., Inc.*, No. 10-00112, 2011 WL 686807, *3 (N.D. Ill. Feb. 17, 2011) ("Any delay that inheres in the reexamination process does not by itself constitute undue prejudice."); *Sorensen v. Digital Networks N. Am. Inc.*, No. 07-05568, 2008 WL 152179, *2 (N.D. Cal. Jan. 16, 2008) (same).  Consequently, courts routinely grant a stay when a party moves early in an action for a stay pending *inter partes* reexamination.  *E.g.*, *JAB Distributors, LLC v. London Luxury, LLC*, No. 09-5831, 2010 WL 1882010, *3 (N.D. Ill. 2010) (granting stay because litigation was in its "infancy"); *SP Techs., LLC v. HTC Corp.*, No. 08-3706, 2009 WL 1285933, *2-3 (N.D. Ill. May 6, 2009) (granting stay in a case that "is still early in the proceedings"); *Arrivalstar, S.S. v. Canadian Nat'l Ry. Co.*, No. 08-1086, 2008 WL 2940807, *2 (N.D. Ill. July 25, 2008) ("Plaintiffs have not cited a case in which a court has denied a request to stay court proceedings" when the request was made during the early stages of the litigation); *see also Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, No. 85-7565, 1987 WL 6314, *3-4 (N.D. Ill. Feb. 2, 1987) (granting stay even though "significant, costly discovery has already taken place").

Any claim that potential delay will result in prejudice is especially "undermined" when a "complaint seeks monetary damages and does not seek preliminary injunctive relief."  *JAB*, 2010 WL 1882010, at *3.  As this Court has repeatedly stated, a patentee that is "nothing more than a patent holding company" has little claim that it will suffer harm from potential delay, because "interest will accrue in [its] favor if [it] is determined to be entitled to monetary relief."  *SP Techs.*, 2009 WL 1285933, at *3; *Arrivalstar*, 2008 WL 2940807, at *2; *see also JAB*, 2010 WL 1882010, at *3; *Emhart*, 1987 WL 6314, at *2.  Where monetary damages are the requested relief, it simply is not the case that "justice delayed is justice denied," as HPL admonishes.  *See* Dkt. No. 118, at 6 [hereinafter "HPL Motion"].

9

No discovery has been taken in the cases involving the New Defendants. And the NYT case is in its infancy since only limited discovery has occurred and there have been no dispositive motions, claim constructions, or trial preparations. *See* Local Patent Rule 3.5.[2]

Defendants have not delayed in requesting reexaminations or seeking a stay. The New Defendants have sought reexamination of all of the patents asserted against them at the earliest procedural opportunity, and have moved for a stay within three months after being sued. *E.g.*, Case No. 1:11-cv-07607, Dkt. No. 30. Similarly, NYT did not delay in seeking the original *ex parte* reexaminations, and sought a stay within months after HPL amended its complaint in November 2010. Dkt. No. 72, Exs. A-C.

Against this well-established case law and these uncontroverted facts that support a stay of this early-stage patent litigation seeking monetary damages, HPL interposes that *inter partes* reexamination takes time. That fact "does not by itself constitute undue prejudice." *Genzyme*, 2011 WL 686807, *3. And, HPL cites nothing more on that point. Of course, without a stay, it will fall to the Court to take the time and to expend the massive effort to adjudicate the invalidity issues that the PTO is now already handling.

HPL also makes too much of the statistics regarding *inter partes* reexamination. HPL Motion at 4-6 (estimating reexamination to take "5 or more years," "over six years," or "about 7 years."). The average time for *inter partes* reexaminations is only slightly longer than for *ex parte* reexaminations—not twice as long, as HPL suggests.[3]

Here, the *ex parte* reexaminations related to HPL's patents only took about a year—half as long as the average, and the PTO has already moved expeditiously on the '716 and '241 patent

---

[2] *Ohio Willow Wood Co. v. Alps South Corp.*, No. 04-1223, 2008 WL 4683222 (S.D. Ohio Oct. 21, 2008), cited by HPL, involved direct competitors and the plaintiff had agreed to dismiss the patent undergoing reexamination. In contrast, here, HPL has not offered to dismiss the '716 and '241 patents despite those patents having all claims rejected in reexamination.

[3] *Inter Partes* Reexamination Filing Data – September 30, 2011 [PTO *Inter Partes* Data], available at http://www.uspto.gov/patents/IP_quarterly_report_September_2011.pdf) (36 months average with 32.9 month median) compared to *Ex Parte* Reexamination Filing Data –September 30, 2011, available at http://www.uspto.gov/patents/EP_quarterly_report_Sept_2011.pdf. (25 months average).

*inter partes* reexaminations because they are involved in litigation. *Id.*; *see* M.P.E.P. § 2686.04(1)). And, as this Court found, the PTO's calculation of a three-year average "includ[es] appeals to the Board of Patent Appeals and Interferences." *Genzyme*, 2011 WL 686807, at *3. Plus, adding four years to the PTO's average to account for appeals is "unrealistic." *In re Cygnus Telecomm. Techn., LLC Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005).

Also, unlike the case HPL cites for its "choice of forum" argument, this is not a direct competitor case; HPL is a patent holding company. HPL Motion at 6 (citing *Cooper Notification, Inc. v. Twitter, Inc.*, No. 09-865, 2010 WL 5149351, at *5 (D. Del. Dec. 13, 2010)) (emphasizing that decision was based on fact that "parties are direct competitors" that can suffer harm from delay). Courts have rejected this choice of forum theory because when a patent holder "affirmatively invokes the rights of the patent statute[, it] can hardly be heard now to complain of the rights afforded others by that same statutory framework." *Pegasus Dev. Corp. v. Directv, Inc.*, No. 00-1020, 2003 WL 21105073, *2 (D. Del. May 14, 2003).

The facts also belie HPL's complaint that the "NYT Defense Group" is intentionally staggering reexamination requests. HPL Motion at 7-8. *See supra* Background § I. Rather, NYT and the New Defendants are promptly filing reexamination requests as HPL shifts its patent claims. NYT quickly sought *ex parte* reexamination after HPL amended its complaint to identify the allegedly infringing claims of the '716, '757, and '838 patents. Then, in September 2011, NYT—joined by the New Defendants—filed *inter partes* reexamination requests for the original claims of the same patents. By the time the PTO reviewed those requests, however, it had allowed HPL to amend its original claims and add new claims in response to PTO rejections in the *ex parte* reexaminations. Because the requests were directed to the original claims, many of which had been changed, the PTO declined to consider the September 2011 requests on the merits, finding them cumulative of rejections of HPL's patents. HPL suffered no harm or delay.

In December 2011, only weeks after HPL sued CBS and Bravo on the '241 patent for the first time, Defendants requested reexamination of that patent. In January 2012, after the PTO

issued a reexamination certificate closing the *ex parte* reexamination of the '716 patent,

Defendants filed an *inter partes* reexamination request that attacked all claims of that patent—

including the few surviving original claims, and the many amended and new claims. And, in just

the past few days, the PTO agreed with Defendants by rejecting all claims of the '716 and '241

patents and finding that Defendants are reasonably likely to succeed in their invalidity challenge.

Moreover, Defendants could not seek reexamination of the brand new patents HPL just

added to this litigation because they did not exist until the past few weeks.

At bottom, the problem here lies with HPL. HPL has attempted to prevent its patents

from being invalidated by amending many of its original claims during the course of the *ex parte*

reexaminations. It also added new, narrower claims to its patents, which no one could attack

until after they issued from the PTO. Now, it is introducing three brand new patents to this

litigation. Defendants are not "staggering" their reexamination requests. They are seeking

reexamination almost as quickly as HPL amends its old claims, adds new claims, and adds

entirely new patents to the litigation.

II.     **The *Inter Partes* Reexaminations Will Eliminate HPL's Patent Claims or at a Minimum, Simplify the Issues and Streamline the Case**

It is well-established that reexamination simplifies issues and streamlines cases. *JAB*,

2010 WL 1882010, at *4 ("PTO's expert analysis of prior art may simplify and/or facilitate

resolution of the case whether or not the [PTO is persuaded] to amend or invalidate some or all

of the claims or patents at issue"). Indeed, that is the purpose of the reexamination process.

*Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). Even when claims are not

invalidated or amended, reexamination adds to the prosecution history to assist in the court's

eventual claim construction. *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d

1430, 1439 (Fed. Cir. 1988); *In re Cygnus*, 385 F. Supp. 2d at 1024 (granting stay for benefits of

"richer prosecution history" for claim construction); *Fellowes, Inc. v. Aurora Corp. of Am.*, No.

07-7237, 2009 U.S. Dist. LEXIS 9595, *4-5 (N.D. Ill. Feb. 10, 2009).

*Inter partes* reexaminations are more likely to result in cancellation or amendment of claims. Nearly 90% of patents exit *inter partes* reexamination with some or all claims canceled or changed; indeed, 44% of patents have all claims canceled. *See* PTO *Inter Partes* Data.[4] Here, where HPL responded to the PTO's rejections in *ex parte* reexaminations of the '716, '757 and '838 patents by narrowing its claims through amendment and argument, the likelihood of more narrowing amendments in *inter partes* reexamination is very high. Indeed, the *inter partes* reexamination requests related to the '716 and '241 patents satisfied the much higher new standard just implemented under the America Invents Act of September 2011 that required Defendants to show "that there is a reasonable likelihood that the requester would prevail with respect to at least 1 of the claims challenged in the request," rather than the old "substantial new question of patentability" standard. Faced with the mounting invalidity evidence, HPL at no point even attempts to profess that all claims it has asserted will be confirmed.

HPL also applies the wrong standard in arguing that reexamination is not likely to result in the "*cancellation* of *all* of the roughly 120 asserted claims in all 7 patents" in this case. HPL Motion at 9 (emphases added). A stay is warranted if reexamination is likely to cancel *or* "amend" *even "some"* of the asserted claims. *E.g.*, *Arrivalstar*, 2008 WL 2940807, at *2; *JAB*, 2008 WL 2940807, at *2; *see AT&T Intellectual Prop. I v. Tivo, Inc.*, 774 F. Supp. 2d 1049 (N.D. Cal. 2011) ("[I]f the reexamination proceeding should narrow *any* of the asserted claims . . . litigation may be significantly simplified.") (emphasis in original); *In re Cygnus*, 385 F. Supp. 2d at 1024 (same). Even the cases cited by HPL recognize that "the appropriateness of a stay does not depend on whether the stay can resolve the entire case." *In re Phoenix Licensing LLC, Patent Litig.*, No. 08-1910, 2009 WL 464993, at *2-3 (D. Ariz. Feb. 24, 2009) (stay is warranted even if reexamination might not "eliminate *all* of the issues in the action.") (HPL Motion at 10) (emphasis in original); *Cooper*, 2010 WL 5149351, at *3 ("If all or *some* of the asserted claims are canceled, this litigation would be simplified.") (HPL Motion at 6) (emphasis added). Given

---

[4] HPL misleadingly states that the percentage of cases in which claims are amended has dropped to 45%, HPL Motion at 13, omitting mention that another 44% of cases see all claims canceled.

the reexamination history in this case and PTO statistics, certainly "some" of HPL's asserted claims will change.

III.    **The *Inter Partes* Reexaminations Will Reduce the Burden of Litigation on the Parties and the Court**

It is well-recognized that reexamination reduces the burden of litigation on the parties and the court because if "litigation proceeds in tandem with the PTO reexamination proceedings, the parties will have wasted their resources litigating issues that ultimately may be mooted by the PTO's findings." *E.g.*, *JAB*, 2010 WL 1882010, at *4. Plus, the PTO's findings are often useful for any claim construction this Court must undertake. *E.I. du Pont de Nemours & Co.*, 849 F.2d at 1439; *In re Cygnus*, 385 F. Supp. 2d at 1024 (granting stay because of benefits of "richer prosecution history" for claim construction); *Fellowes*, 2009 U.S. Dist. LEXIS 9595, at *4-5.

This is no idle speculation: every single one of the original 27 claims asserted against the NYT has been cancelled, modified, or narrowed through HPL's arguments in an attempt to prevent its patents from being invalidated. Without a stay in this case, this Court would have presided over litigation involving claims that no longer exist at all or have a new meaning. The claims in this case will continue to be invalidated or substantially narrowed given that all claims of the '716 and '241 patents have already been rejected in *inter partes* reexamination.

In *Genzyme*, this Court granted a stay after the PTO had granted an *inter partes* reexamination request and rejected all of the claims:

> Even if the amendments that Plaintiff filed with the PTO succeed in overcoming some or all of the rejections, the form and substance of the [patent] are likely to change, perhaps significantly. In view of those considerations, there appears to be a strong likelihood that both the parties and the Court would be spared considerable time and expense by staying lengthy and complex parallel proceedings—including claim construction proceedings—during the reexamination process.

2011 WL 686807, at *4. The same reasoning applies to this case because the PTO has ***rejected all claims of the '716 and '241 patents***.

Instead of contesting these facts, HPL offers that this litigation will not "go away" after reexamination. HPL Motion at 9. But that is not the standard. Rather, as even the cases cited by

HPL recognize, the relevant consideration is whether some or much of the burden of litigation will be lifted by reexamination. *Cooper*, 2010 WL 5149351, at *3 ("If all or some of the asserted claims are modified, this could render much of the parties' and Court's resources wasted . . . ."); *In re Phoenix Licensing LLC, Patent Litig.*, No. 08-1910, 2009 WL 464993, at *2-3 (D. Ariz. Feb. 24, 2009) ("[T]he appropriateness of a stay does not depend on whether the stay can resolve the entire case."). Here, where all 27 of the original claims asserted against NYT were amended or narrowed through arguments, it is all but guaranteed that reexamination will lift some of that burden by cancelling, narrowing, or explicating some claims.

Moreover, once a given *inter partes* reexamination concludes, Defendants will be estopped in accordance with 35 U.S.C. § 315(c) from alleging invalidity of the applicable HPL patent based on prior art they raised or could have raised in the reexamination. Thus, even if some claims in HPL's patents survive *inter partes* reexamination—which Defendants contend is highly unlikely—a stay pending the resolutions of these reexaminations will substantially limit the scope of any discovery, motion practice, or trial.[5]

## CONCLUSION

For the foregoing reasons, HPL's motion to lift the stay in this case should be denied and the New Defendants' motion to impose a stay should be granted.

---

[5] HPL asks that any stay be limited to the current *inter partes* examinations, that the stay lift if the PTO confirms any asserted claim of any of the patents, and that Defendants waive invalidity defenses. These conditions are premature, inefficient and unnecessary. They are premature because HPL is asking this Court to adjudicate complicated factual matters (such as whether to proceed or maintain a stay on confirmed claims where other claims allegedly covering the same products or processes are still in reexamination) in a vacuum. They are inefficient because they would likely result in piecemeal and repetitive discovery, motion practice and adjudication of claims in this Court. They are also unnecessary because the patent statute already provides for estoppel in appropriate circumstances for *inter partes* reexaminations. Courts routinely grant stays without any conditions. *E.g., Genzyme*, 2011 WL 686807, at *6; *JAB*, 2010 WL 1882010, at *5; *Arrivalstar*, 2008 WL 2940807, at *3; *SP Techs.*, 2009 WL 1285933, at *3. HPL's citation does not establish otherwise. *E.g., Dura Global Techs., LLC v. Magna Int'l Inc.*, No. 11-10551, 2011 WL 5039883, at *8 (E.D. Mich. Oct. 24, 2011) (granting stay of case involving competitors and based on stipulation entered prior to the stay).

Dated:  March 28, 2012


Respectfully Submitted,


By:     /s/ Brian M. Buroker

Michael R. Weiner (Ill. Bar No. 06217025)
Julianne M. Hartzell (Ill. Bar No. 06275093)
**MARSHALL, GERSTEIN & BORUN LLP**
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
(312) 474-6300
mweiner@marshllip.com
jhartzell@marshallip.com


Brian M. Buroker (*admitted pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W., Suite 300
Washington, DC 20036
(202) 955-8500
bburoker@gibsondunn.com


Kenneth Richieri, Esq. (Of Counsel)
The New York Times Company
620 Eighth Avenue (17th floor)
New York, NY 10018
(212) 556-1995
richierk@nytimes.com


***Counsel for The New York Times Company***

By:     /s/ Michael M. Markman

Michael M. Markman (N.D. Ill. ID No.
191388)
Robert J. Williams (N.D. Ill. ID No. 247428)
**COVINGTON & BURLING LLP**
One Front Street
San Francisco, CA 94111
mmarkman@cov.com
rwilliams@cov.com


David M. Airan
John Know Winn
**LEYDIG, VOIT & MAYER, LTD.**
Two Prudential Plaza
180 N. Stetson Ave. #4900
Chicago, IL 60601-6780
dairan@leydig.com
jwinn@leydig.com


***Counsel for CBS Corporation, The Bon-
Ton Stores, Inc., Bravo Media, LLC, and
G4 Media, LLC***


By:   /s/ Christopher K. Larus

Christopher K. Larus (*admitted pro hac vice*)
Bryan J. Mechell (*admitted pro hac vice*)
**ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402-2015
(612) 349-8500
cklarus@rkmc.com
bjmechell@rkmc.com


**KATTEN MUCHIN ROSENMAN LLP**
Alexander S. Vesselinovitch (Ill. Bar No.

3122893)
Emily J. Prentice (Ill. Bar No. 6277643)
525 W. Monroe Street
Chicago, IL 60661-3693
(312) 902-5200
avesselinovitch@kattenlaw.com
emily.prentice@kattenlaw.com

***Counsel for Best Buy Co., Inc.***

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of March, 2012, a copy of the foregoing

COMBINED OPPOSITION OF THE NEW YORK TIMES COMPANY TO PLAINTIFF'S

MOTION TO LIFT STAY AND REPLY OF CBS CORPORATION, THE BON-TON

STORES, INC., BRAVO MEDIA, LLC, G4 MEDIA, LLC AND BEST BUY CO., INC. IN

SUPPORT OF THEIR MOTION TO STAY THIS LITIGATION PENDING

REEXAMINATIONS OF ALL ASSERTED PATENTS was served via email on the following

counsel of record:

Steven G. Lisa
Donald J. Lisa
James David Busch
Jon E. Kappes
Justin Joseph Lesko
Mildred Park
Timothy D. Sperling
LAW OFFICES OF STEVEN G. LISA, LTD.
55 W. Monroe St., Suite 3210
Chicago, IL 60603
stevelisa@patentit.com
donlisa@patentit.com
jamesbusch@patentit.com
jonkappes@patentit.com
justinlesko@patentit.com
millypark@patentit.com
timsperling@patentit.com

Victoria Gruver Curtin
VICTORIA GRUVER CURTIN, PLC
14555 North Scottsdale Road
Suite 160
Scottsdale, AZ 85254
victoria@vcurtin.com

Robert David Donoghue
Daniel Long Farris
HOLLAND & KNIGHT LLP
131 S. Dearborn Street
30th floor
Chicago, IL 60603
david.donoghue@hklaw.com
daniel.farris@hklaw.com

Gerald Douglas Hosier
LAW OFFICES OF GERALD D. HOSIER, LTD.
P.O. Box 12354
Aspen, CO 81612
wizard@ozpd.com

/s/  Brian M. Buroker
Brian M. Buroker