# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| | ) | |
| v. | ) | Case No. 1:10-CV-4387 |
| | ) | |
| THE NEW YORK TIMES COMPANY. | ) | |
| HELFERICH PATENT LICENSING, LLC, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-CV-7395 |
| | ) | |
| G4 MEDIA, LLC. | ) | |
| HELFERICH PATENT LICENSING, LLC, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-CV-7607 |
| | ) | |
| CBS CORPORATION. | ) | |
| HELFERICH PATENT LICENSING, LLC, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-CV-7647 |
| | ) | |
| BRAVO MEDIA, LLC. | ) | |
| HELFERICH PATENT LICENSING, LLC, | ) | |
| | ) | |
| v. | ) | Case No. 1:11-CV-9143 |
| | ) | |
| J.C. PENNEY CORPORATION, INC. | ) | |

**DEFENDANTS' CONSOLIDATED REPLY IN SUPPORT OF
THEIR MOTIONS FOR EXPEDITED EXHAUSTION BRIEFING**

Defendants, The New York Times Company ("New York Times"), G4 Media, LLC ("G4 Media"), CBS Corporation ("CBS"), Bravo Media, LLC ("Bravo Media"), and J.C. Penney Corporation, Inc. ("J.C. Penney"), file this joint reply in support of J.C. Penney's Motion for Expedited Exhaustion Briefing, and the other Defendants' various joinder motions (collectively

the "Motions").[1]  The Defendants propose that the parties and the Court focus their time and resources upon a single case-dispositive issue -- patent exhaustion.

## INTRODUCTION

Defendants' proposal offers the swiftest possible resolution of this case, while streamlining the process to arrive at a resolution.  Patent exhaustion is a threshold issue that will drastically limit the time, resources, and costs to the Court and the parties, if decided early.  A patent is "exhausted" where a patent-holder, like Helferich Patent Licensing, LLC ("HPL"), has previously licensed products or services that "substantially embody" the patents-in-suit.  A product or service embodies the licensed patents where it includes "all of the inventive aspects" of the licensed patents.  Here, HPL does not dispute -- rather it boasts -- that it has license agreements with "nearly the entire handset industry."  The simple legal question is thus whether HPL's licensing of the patents-in-suit exhausts its patent rights against the Defendants.  This question will be ripe for summary judgment with limited discovery related only to HPL's license agreements.

HPL musters only three arguments in opposition to Defendants' Motions, each of which falls short.  First, HPL's argument that any decision regarding patent exhaustion allegedly requires claim construction is incorrect; patent exhaustion focuses on a broader analysis of what the patent as a whole encompasses rather than any one claim.  Second, HPL's argument that the question of exhaustion is reserved for a jury is incorrect; patent exhaustion focuses on contract interpretation – a question of law that the Court can and often does decide on summary judgment.  And third, HPL's argument that Defendants' proposal is nothing more than an attempt to create a *de facto* stay of proceedings is incorrect; unlike HPL's proposed multi-phased

---

[1] Defendants Motions are:  Dkt. No. 57 in Case No. 1:11-CV-9143 (J.C. Penney);  Dkt. No. 62 in Case No. 1:11-CV-7607 (CBS);  Dkt. No. 65 in Case No. 1:11-CV-7647 (Bravo Media);  Dkt. No. 68 in Case No. 1:11-CV-7395 (G4 Media); and Dkt. No. 161 in Case No. 1:10-CV-4387 (New York Times).

#11520369_v1

proposal, a decision regarding patent exhaustion could entirely resolve this case, and would thus provide the most efficient use of the Court and the parties' resources.

Likewise, even if the Court denies Defendants' request to expedite the patent exhaustion issue, there are compelling reasons for the Court to deny HPL's request for an early claim construction hearing. Despite HPL's suggestion to the contrary, no other court has entered an order for an early claim construction hearing concerning the HPL patents. In fact, just over a week ago the court in the District of Arizona rejected HPL's request for an early claim construction hearing.[2] Even more importantly, HPL's infringement case is massive -- last Friday, September 7, HPL served hundreds of pages of infringement contentions against each Defendant, asserting infringement of hundreds of claims.[3] Unless and until HPL is required to narrow its case to a reasonable number of claims, as the Federal Circuit agreed was appropriate in *In Re Katz*, 639 F.3d 1303, 1309, 1311 (Fed. Cir. 2011), this case may prove unmanageable even under a normal schedule, let alone the substantially accelerated schedule that HPL now seeks.

---

[2] In denying a request for an early claim construction hearing, the Arizona district court stated, "opposing counsel succeeded in persuading me to do exactly what I'm telling you now to never do again, which is having claim construction without any facts of the case. … and by the way, I have since discussed this with other judges, and they all tell me that my intuition is right, don't undertake to do claim construction without real evidence in the case." *See, e.g.,* Trans. of Aug. 31, 2012 Hearing, attached in relevant part as Exhibit A.

[3] For example, HPL asserted 228 claims against each of Defendants CBS, G4 Media, and Bravo, with infringement claims charts totaling 924 pages, 641 pages, and 737 pages respectively, with many more hundreds of pages of exhibits. HPL asserted 172 claims against J.C. Penney, on patents that do not entirely overlap with those asserted against CBS, G4 Media, and Bravo, with claims charts totaling 745 pages, again with hundreds of additional pages of exhibits. HPL asserted 172 claims against New York Times with over one thousand pages of claim charts and hundreds of exhibits. Defendants anticipate having many thousands of pages of invalidity claims charts.

**ARGUMENT**

HPL makes every attempt in its Response to frame the question of patent exhaustion as complex, requiring claim construction and a jury. In fact, neither is necessary, and the legal arguments proposed by the Defendants are simple and straightforward.

**A.  Patent Exhaustion Does Not Require Claim Construction.**

Despite HPL's insistence to the contrary, patent exhaustion is based upon a patent-by-patent analysis. *See, e.g.*, *Quanta Computer, Inc. v. LG Elec., Inc.,* 553 U.S. 617, 628 (2008) ("[T]he traditional bar on patent restrictions following the sale of an item applies when the item sufficiently embodies ***the patent***—even if it does not completely practice ***the patent***—such that its only and intended use is to be finished under the terms of ***the patent***.") (emphasis added). In fact, the jury instructions in *Apple v. Samsung*, cited by HPL in its Response (p. 6-7), show that exhaustion is a patent-by-patent analysis, not claim-by-claim:

> Third, that, if the accused products infringe, it is because the baseband chips substantially embody ***the '516 and/or '941 patents***. The baseband chips embody ***the relevant patent*** if they include all of the inventive aspects of the ***patented devices***.

*See* Dkt. No. 1893, Final Jury Instr., at 48, *Apple, Inc. v. Samsung Elec. Co.*, No. 5:11-CV-1846 (N.D. Cal. Aug. 21, 2012) (emphasis added).[4]

Defendants' argument is straightforward when the question of patent exhaustion is viewed properly, on a patent-by-patent basis. HPL's patents-in-suit are virtually identical to one another. As CBS explained in its Notice of Joinder, all of the patents-in-suit claim systems and methods for delivery of electronic content to wireless devices. *See* Dkt. No. 62, at 4, in Case No. 1:11-CV-7607. Five of the six patents-in-suit against JC Penney and The New York Times, and

---

[4]  Notably, the jury in *Apple v. Samsung* found in favor of Apple, accepting in relevant part Apple's defenses against Samsung's counterclaims of infringement. *See, e.g.,* Dkt. No. 1931, Amend. Jury Verdict, at 17, *Apple, Inc. v. Samsung Elec. Co.*, No. 5:11-CV-1846 (N.D. Cal. Aug. 24, 2012).

4

six of the seven patents-in-suit against CBS, Bravo, and G4, share the same specification. The sixth patent (the '601 patent) is identical to the others, but adds some new material. While the precise language of the claims of HPL's patents differ, as they must in order for the PTO to allow a claim to issue, the patents themselves disclose substantially the same inventions.

This point is brought into sharper focus by HPL's own infringement contentions. For example, in each of the infringement claims charts for the six patents asserted against J.C. Penney, HPL uses screen shots from Facebook and Twitter to support its allegations. *See, e.g.,* Claim 15 from the '716 Patent Claim Chart at p. 7, attached as Exhibit B. The scenario that these screen shots depict -- which is at the heart of HPL's contentions -- is an unaffiliated third party consumer accessing an unaffiliated third party website (Facebook/Twitter) and instructing the unaffiliated third party website (Facebook/Twitter) to direct communications via text message to the third party consumer's licensed mobile device any time a Defendant, here J.C. Penney, updates its status on Facebook or "tweets." *Id.* In other words, HPL concedes that it has licensed its patents to handset manufacturers in such a way that allows the handset manufacturers to make and sell devices capable of sending and receiving messages - largely via SMS - that may or may not contain URLs. Despite that concession, HPL asserts that if a consumer who has purchased a licensed handset directs a third party, such as Facebook or Twitter, to send messages to the consumer's handset, and such messages include any content from a Defendant posted to the internet, that Defendant has infringed HPL's patent.

Nor has HPL pointed to any specific terms in the claims of any of the patents-in-suit that would require construction by the Court in order to determine whether the patents are substantially embodied by the handsets. Instead, HPL wrongly points to *other* patents in its portfolio -- patents not at issue in any of its pending lawsuits -- to argue that the patents are

5

#11520369_v1

different.  *See, e.g.,* HPL Response at 10.  HPL misses the point.  The fact that HPL also has licensed other patents, which HPL does not accuse Defendants of infringing in this lawsuit, is immaterial to the question of whether the patents-in-suit in this case are exhausted.

### B. Patent Exhaustion May Be Decided on Summary Judgment.

Patent exhaustion may be decided by this Court as a matter of law.  *See, e.g., Rembrandt Data Tech., L.P. v. AOL, LLC, et al.*, 641 F.3d 1331, 1336-1338 (Fed. Cir. 2011).  Courts regularly decide matters on summary judgment where there are no disputed material facts, including questions of patent exhaustion.  *Id*.  In *Rembrandt Data Tech.*, for example, the Federal Circuit affirmed summary judgment of exhaustion in favor of two defendants over the arguments of a plaintiff that the patent license and assignment agreements in question did not properly extend to the parties or technologies/products as claimed.  *See, e.g., Id.* at 1332, 1335-38. Initially, the *Rembrandt* court interpreted numerous assignment and license agreements, determining that a particular manufacturer held a license to manufacture modem chips with the allegedly infringing characteristics.  *Id.* at 1336 ("The district court properly held as a matter of law that New Rockwell could further sublicense the patents-in-suit to Conexant").  Second, the court decided as a matter of law that one of the sub-license agreements in question applied to all products within the scope of the patents-in-suit, not merely the enumerated product models argued by the plaintiff.  *Id.* at 1338.  HPL's numerous agreements may make the analysis more cumbersome, but the legal issue is no different.  In fact, to decide the issue of exhaustion on summary judgment, the Court must resolve three discreet issues.

First, does the doctrine of patent exhaustion apply on a patent-by-patent basis, as Defendants' assert, or a claim-by-claim basis, as HPL asserts?  Certainly, the application of a legal doctrine is a question of law for the Court, and the Supreme Court has already provided

clear guidance. *See, e.g., Quanta Computer, Inc.*, 553 U.S. at 628 ("[T]he traditional bar on patent restrictions following the sale of an item applies when the item sufficiently embodies ***the patent***—even if it does not completely practice ***the patent***—such that its only and intended use is to be finished under the terms of ***the patent***.") (emphasis added).

Second, can HPL contract around the application of the doctrine of exhaustion? There is no dispute that HPL licensed the patents-in-suit. In filings before the Court and the U.S. Patent and Trademark Office ("PTO"), HPL repeatedly boasts that it has licensed the U.S. wireless handset industry. One recent example is found in a sworn declaration filed by HPL's principal, Leonard Palevsky, with the PTO. He declared, "[i]n approximately four years, all 28 of the major handset manufacturers (comprising, to my understanding, nearly the entire handset industry) acquired licenses under the Helferich portfolio." *See, e.g.,* 12/29/2012 Declaration of Leonard I. Palevsky, Managing Member of HPL, p. 3, ¶ 12 , attached hereto as Exhibit C.

With regard to HPL's attempts to contract around exhaustion, while a patentee may place conditions on the sale of a patented item that will affect the application of the doctrine of patent exhaustion in cases where a sale is made in contravention of the condition, *see Princo Corp. v. ITC*, 616 F.3d 1318, 1328 (Fed. Cir. 2010)*,* a patentee's failure to condition the sales of a licensed product to a licensee's customers cannot escape the application of the exhaustion doctrine. *See, e.g., Minebea Co., Ltd. v. Papst*, 374 F.Supp. 2d 202, 211-212 (D.D.C. 2005) ("The Court has no doubt, given the language of the contract, that Papst fully intended to preserve to itself the right to sue customers of Minebea in connection with their infringement of these patents, and the Court is hard-pressed to see how Minebea could not have been aware of Papst's intent. Given the doctrine of patent exhaustion, however, because Papst failed to condition Minebea's sales of motors to its customers, the Court cannot conclude that the sale of

7

those motors could not exhaust the Papst Drive Patents despite language evidencing a contrary intent."); *see also Minebea Co., Ltd. v. Papst*, 444 F.Supp.2d 68, 159 (D.D.C. 2006) (quoting *LG Elecs., Inc. v. Asustek Computer, Inc*., 248 F.Supp.2d 912, 917 (N.D.Cal. 2003) *rev'd in part on other grounds*) ("The district court found Intel's sales to its customers to have been unconditional despite the contractual language disclaiming sublicenses to Intel customers, because 'Defendants' purchase of microprocessors and chipsets from Intel was in no way conditioned on their agreement not to combine the Intel microprocessors and chipsets with other non-Intel parts and then sell the resultant products.' The court further stated that Intel's post-sale notice to its customers that they had no rights under LGE's patents 'does not demonstrate that Defendants agreed as a condition of sale not to combine the microprocessors and chipsets purchased from Intel with non-Intel parts and not to sell the resultant products.'"). Similarly, when a patentee's "contractual conditions violate public policy," such as in cases where the application of the conditions would restrict trade, "the underlying patents become unenforceable, and the patentee loses its right to sue for infringement or breach of contract." *Princo Corp.*, 616 F.3d at 1328.

To the extent review of HPL's license agreements is required, contract interpretation is a question of law. *Quality Oil, Inc. v. Kelley Partners, Inc.*, 657 F.3d 609, 612 (7th Cir. 2011) ("This case requires us to interpret a written contract, which is a question of law subject to de novo review"). "Even when a contract is ambiguous, as long as the extrinsic evidence bearing on the interpretation is undisputed and leads to only one reasonable interpretation, [a court] can decide the matter on summary judgment." *Citadel Group Ltd. v. Washington Reg'l Med. Ctr.*, No. 11-3124, 2012 WL 3517577 at *5 (7th Cir. Aug. 15, 2012). Because the question of patent exhaustion turns on the interpretation of HPL's handset license agreements, this Court may

8

resolve the issue as a matter of law on summary judgment. In fact, the Federal Circuit has recently affirmed a grant of summary judgment of exhaustion based upon the interpretation of a contract as a matter of law. *See Rembrandt Data Tech.,* 641 F.3d at 1336-1338.

Third, are the patents-in-suit, which are entitled for example ""System and Method for Delivering Information to a Transmitting and Receiving Device" and "Paging Transceivers and Methods for Selectively Retrieving Messages," substantially embodied in licensed cellular phone and smart phone devices, which enable those devices to send and receive licensed methods, or do the patents-in-suit actually relate to posting of content on Facebook and Twitter?

The plain language of the patents-in-suit, and of the handset license agreements, demonstrate that the patents-in-suit were licensed to the wireless handset companies to enable receipt and transmission of text messages that include links. Every text message with a link that is received by and transmitted from a licensed wireless handset, is by default, a licensed message. The accused systems—for example, Twitter, Facebook and Defendants' text messaging platforms—do nothing more than transmit messages to *licensed wireless phones*, which are licensed to receive such messages, and which then send *licensed wireless messages* back to the accused systems. The accused systems simply send content to the *licensed wireless phones*, which are licensed to receive them. No claims need to be construed to understand that very basic and fundamental analysis.[5]

---

[5] As HPL states in its Response, "[t]he Supreme Court in *Quanta* made clear that exhaustion is invoked where the allegedly infringing operations ***are merely common processes using generic components, and are not themselves unique or inventive***." Resp. Br. at 6 (emphasis added). Despite this recitation of the law, HPL alleges infringement on the theory that Defendants send SMS messages and/or tweets, because those messages are accessible via the internet and/or travel over third party cellular networks to licensed devices that have requested to receive licensed messages.

#11520369_v1

### C. Expedited Exhaustion Briefing Would Streamline the Case.

Defendants' proposal to streamline the case and focus on case dispositive issues at an early juncture is not an attempt to seek a "*de facto* stay of proceedings." Defendants are simply proposing to phase discovery in order to help the Court adjudicate a specific legal issue that may foreclose the need for further proceedings. Defendants' proposal would require minimal discovery regarding the handset license agreements, including the licensees, and *is case-dispositive*.

### D. The Court Should Not Expedite Claim Construction.

HPL proposes that, instead of phasing discovery so that the Court can rapidly adjudicate patent exhaustion, the Court should expedite the dates for claim construction proceedings by approximately six months. Rather than a claim construction hearing date of June 24, 2013, HPL proposes moving the claim construction to January 2013 (which at this stage of proceedings, would require briefing of these issues to occur on a compressed schedule over the holidays on a massive number of claims). The Court should reject HPL's proposal for at least three reasons.

First, contrary to HPL's repeated suggestions to the contrary, no other Court has ever actually agreed to HPL's request to expedite claim construction proceedings. In fact, on August 31, 2012, the Court in the District of Arizona, presiding over parallel litigation involving the same patents-in-suit, roundly rejected HPL's demands for an early claim construction hearing. There, in fact, the Court explained that it would hear claim construction issues at the same time as dispositive motions (with the exception of patent exhaustion, which the Defendants could brief at an earlier date). The Court explained that an early claim construction hearing would be, in its view, inefficient.

Second, HPL's proposal that the Court proceed from an early claim construction hearing to an adjudication of invalidity of the HPL patents would not serve judicial economy or aid the

parties. Setting aside the merits, which Defendants vigorously question, HPL's infringement case is nothing short of massive. Last Friday, September 7, HPL served its infringement contentions on Defendants. HPL is asserting 172 claims against J.C. Penney, 172 claims against The New York Times, 228 claims against CBS, 228 claims against G4 Media, and 228 claims against Bravo.[6] HPL's contentions total 745 pages for J.C. Penney, 1,310 pages for The New York Times, 924 pages for CBS, 641 pages for G4 Media, and 737 pages for Bravo. Adjudicating issues in this case on a normal schedule will be next to impossible unless and until HPL cuts its case back to something reasonable -- as in *In Re Katz*, twenty or so representative claims might be a reasonable number for the parties to adjudicate. *See, e.g., In re Katz Interactive Call Processing Patent Lit.*, 639 F.3d 1303 (Fed. Cir. 2011). Absent the Court imposing real limits on HPL's infringement claims or Defendants' proposal for expediting the exhaustion analysis, there appears to be no reasonable way consistent with due process for the Court to adjudicate the case on the significantly expedited basis proposed by HPL.

Third, the PTO continues its *inter partes* reexaminations of HPL's patents (despite repeated requests by HPL for extensions of time and extensions of page limits, which have operated to further delay the proceedings). The PTO has granted requests by all the defendants, excluding J.C. Penney, (the "Requesters") to reexamine the '757, '716, '601, '741, and '241 patents.[7] In doing so, the PTO determined that the Requesters were substantially likely to prevail. The PTO also entered office actions rejecting the claims. The reexamination requests, and the PTO's office actions granting those requests, number in the thousands of pages. HPL has represented that the reexamination requests are "voluminous" and "complex" -- containing thousands of pages of analysis and multiple different grounds for why the patent claims are

---

[6] Neither the asserted claims nor the asserted patents necessarily overlap between all defendants.

[7] Reexamination requests relating to the '838 and '450 patent are still pending.

invalid. *See, e.g.,* 5/16/2012 Request for Extension of Time, p. 3, ¶ 6, attached as Exhibit D.[8] Defendants' arguments concerning validity will overlap between the reexaminations and the litigation -- meaning that under HPL's proposal the burden of dealing with complex invalidity questions will fall on the Court on a significantly expedited pace. HPL noted to the PTO that expert declarations will be submitted there -- there is no question that experts will need to be retained and wade into the voluminous and complex questions of invalidity in the litigation (again on HPL's significantly expedited pace). And JC Penney, which did not request reexamination and is not participating in the reexaminations, should not be required to truncate -- ***or to rush*** -- litigation of any part of these proceedings because of events before the PTO.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Motions for Expedited Exhaustion Briefing, and enter a schedule consistent with that in J.C. Penney's opening brief.

Dated: September 13, 2012

Respectfully submitted,

J.C. PENNEY CORPORATION, INC.

/s/ Daniel L. Farris
R. David Donoghue
Daniel L. Farris
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th floor
Chicago, IL 60603
Tel: (312) 263-3600
Fax: (312) 578-6666
david.donoghue@hklaw.com
daniel.farris@hklaw.com

*Attorneys for Defendant J.C. Penney Corporation, Inc.*

---

[8] Similar requests for extensions of time were filed in the 95/001,991, 95/001,983, 95/001,984, and 95/001,864 reexamination proceedings.

12

#11520369_v1

/s/ Michael Markman
Michael M. Markman (N.D. Ill. ID No. 191388)
Robert Williams (N.D. Ill. ID No. 247428)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
T: (415) 591-6000
F: (415) 591-6091

David M. Airan
Leydig, Voit & Mayer, Ltd.
180 N. Stetson Avenue, Suite 4900
Chicago, IL 60601-6731
T: (312) 616-5600
F: (312) 616-5700

*Attorneys for Defendants G4 Media, LLC, CBS Corporation, and Bravo Media, LLC*

/s/ Brian M. Buroker
Brian M. Buroker
David R. Chiang (*Pro Hac Vice to be Filed*)
GIBSON, DUNN & CRUTCHER, LLP
1050 Connecticut Avenue Northwest
Washington, District of Columbia 20036
202-955-8541

Michael R. Weiner (Ill. Bar. No. 06217025)
Julianne Marie Hartzell (Ill. Bar No. 06270593
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Sears Tower
Chicago, Illinois 60606-6357
312-474-6300
mweiner@marshallip.com
jhartzell@marshallip.com

Kenneth Richieri, Esq. (Of Counsel)
The New York Times Company
620 Eighth Avenue, 17th Floor
New York, New York 10018
212-556-1995
richierk@nytimes.com

*Counsel for Defendant and Counterclaim Plaintiff The New York Times Company*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 13, 2012, I electronically filed the preceding **Defendants' Consolidated Reply in Support of Their Motions for Expedited Exhaustion Briefing** with the Clerk of the Court using the CM/ECF system, which will send notification of such filings to all counsel of record.

/s/ Daniel L. Farris