**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, L.L.C., | ) | |
| an Illinois Limited Liability Company, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:10-cv-04387 |
| | ) | |
| THE NEW YORK TIMES COMPANY, | ) | |
| a New York Corporation, | ) | Hon. John W. Darrah |
| Defendant. | ) | |
| | ) | |

**MOTION FOR SANCTIONS AND TO COMPEL PRODUCTION**

Plaintiff Helferich Patent Licensing, LLC ("Helferich") files this motion for sanctions against The New York Times Company ("NYT") based on its production of a wholly inadequate privilege log following this Court's order requiring NYT to produce a privilege log. In addition, Helferich asks the Court to compel production of documents wrongfully withheld by NYT based on improper assertions of a common interest privilege, as well as communications with third parties regarding Helferich and the asserted patents.

## I. FACTUAL BACKGROUND

### A. The Court's Prior Order

Helferich previously filed two motions to compel, presenting the Court with disputes over NYT's assertion of a common interest privilege, and the extent to which it had to identify those with whom it claimed such a privilege. *See* Dkts. 51 and 66. While the Court found that the full identities of NYT's defense group members did not need to be revealed, NYT was required to provide Helferich with enough information by way of a privilege log, pursuant to Rule 26(b)(5), FRCP, to make at least a preliminary determination whether the common interest

privilege was properly asserted. Specifically, this Court required that NYT provide plaintiff with a privilege log:

> Defendant New York Times shall produce a privilege log listing documents it is withholding on a claim of privilege. Defendant is not required, at this time, to identify by proper name the authors and recipients of the documents being withheld but it shall describe in its privilege log as fulsomely as possible (as discussed in open court) such authors and recipients in an effort to establish the existence of the claimed privilege consistent with Federal Rule of Civil Procedure 26(b)(5).

Minute Entry (Dkt. 71), March 22, 2011.

After the entry of this order, the case was stayed pending the first and second round of reexamination proceedings filed by NYT. *See* Minute Entry (Dkt. 75). After the reexamination proceedings were terminated favorably to Helferich, the stay of these proceedings was lifted. *See* Minute Entry (Dkt. 149). Helferich thereafter insisted that NYT finally comply with the Court's order entered in connection with the prior motion to compel and produce a privilege log.

### B. NYT's Privilege Log

NYT provided Helferich with a privilege log entitled "Privilege Log for New York Times Company Subjec [sic] to Common Interest Privilege" which does not comply with the Court's order.[1] This log vaguely (i.e., not "as fulsomely as possible") lists communications with entities identified as Companies A-K for the period ending nearly three years ago with the filing of suit herein. NYT has flatly refused to identify any withheld communications that occurred after July 14, 2010. NYT also refuses to provide the additional information ordered by the Court that "as fulsomely as possible" describes the authors and recipients.

---

[1] The Privilege Log is marked "Highly Confidential," and is therefore not filed with this motion. *See* Local Rule 26.2; Local Patent Rule 1.4 and Appendix B, ¶ 7. Should the Court wish to review the log in connection with this motion, Helferich will provide it to the Court under seal.

Helferich moves for sanctions on two issues in connection with this log:  1) NYT's arbitrary cut off of the filing of the suit which fails to provide Helferich with necessary information under Rule 26(b)(5) regarding NYT's assertion of the common interest privilege;[2] and 2) NYT's description of Companies A-K fails to establish any common legal interest. Moreover, Helferich moves to compel production of all communications with Companies A-K (i.e., the 23 items logged and any subsequent communications with those companies) because no privilege appears to protect those materials.

## II. ARGUMENT

### A.  NYT's Arbitrary Cut Off Date Prejudices Helferich

NYT's self-selected cut-off date of July 2010, the filing date of the suit, deprives Helferich of basic information needed for Helferich to judge whether the common interest privilege is being properly invoked, which was the basis for the Court's prior order requiring NYT to provide a log. For example, the log lists only one draft of a common interest agreement (Entry No. 2) and no final agreement at all.  Counsel for NYT had informed the Court that there were *two groups, each with its own written agreement.   See* Transcript of Hearing, January 25, 2011 at 3 ("the New York Times is a party to two separate common interest agreements with different sets of third parties," and 26 (confirming that there were formal agreements).

When queried regarding the apparent discrepancy during the meet and confer process preceding this motion, NYT's counsel explained that both the finalization of the one agreement, and the formation of the second group and creation of its written agreement, fell after NYT's

---

[2] Helferich notes that it has stated repeatedly to NYT that it is prepared to provide NYT with a log of all privileged communications both with its clients and with third parties (persons not members of the legal team, i.e., attorneys for Helferich and consulting experts) up to the date of the most recent production of documents.

3

asserted cut-off date and therefore were not logged. Thus, not only is Helferich unable to ascertain whether *any signed agreement exists* based on this log, it is provided *no information whatsoever* regarding the members of the second group with whom NYT asserts a common interest privilege.

There is no justification for NYT imposing this arbitrary limitation of the filing date of the suit. While parties often agree on a closing date for privilege logs, there is no basis for one absent agreement in Rule 26(b)(5), which requires a party to log any information otherwise discoverable but withheld on a claim of privilege. Here, the cut off has the effect of preventing Helferich from making any judgment regarding the propriety of the assertion of privilege, particularly with regard to the second group.

NYT's privilege log does not comply either with this Court's order or Rule 26(b)(5). Given the Court's prior order, sanctions are appropriate under Rule 37(b)(2)(A). Helferich requests that NYT be required to produce a "fulsome" log to the current date promptly, and that it further be required to pay the costs of this motion. *See* Rule 37(b)(2)(C).

### B. Companies A-K Do Not Present a Protectable Common Interest

The common interest privilege is an expansion of the attorney client privilege to communications with third parties in limited circumstances. "[T]he common interest doctrine will only apply where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815-16 (7th Cir. 2007). A common business interest is not sufficient – the doctrine requires a common legal interest in current or potential litigation. *See Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001); *Kilopass Technology Inc. v. Sidense Corp.*, 2012 WL 1534065 *1 (N.D.

4

Cal. 2012).

Here, NYT describes Companies A-K as entities that share ***no common legal interest*** or ongoing enterprise with NYT. They are clearly not defendants in any suit by Helferich. At least two of the companies are connected with the handset industry: Company A is described as a trade group and Company B as related to software. While Helferich's portfolio includes handset claims, it has licensed every major manufacturer of handsets – a fact NYT trumpets in arguing for its defense of patent exhaustion. Moreover, by the date Helferich filed suit against NYT – the close of NYT's log, Helferich had already licensed 26 of 29 handset companies (only Palm/HP, Huawei and Nokia signed later). NYT's log fails to demonstrate that Companies A and B share or shared a legal interest with NYT regarding the Helferich portfolio.

The remaining companies are even further removed from sharing a legal interest with NYT. They are neither defendants in any suit, nor even recipients of notice letters from Helferich. Helferich is in litigation with, and in licensing discussions with, content providers – entities that use SMS messaging with embedded links to provide access to content available on the internet. Companies C through K are described as companies that *provide services to such content providers*, not companies that themselves are content providers and therefore share any interest with NYT. NYT's assertion that such companies have "expressed an interest in invalidating the HPL patents" does not give them an actual common legal interest sufficient to support the assertion of a privilege. *See Evans*, 113 F.3d at 1468 ("Holden's interest in the Evans' proceeding is far too attenuated to support application of the common interest rule. As noted above, the attorney-client privilege is in derogation of the search for truth and its scope must therefore not be expansively construed"); *Kilopass*, 2012 WL 1534065 at * 1 (no common interest privilege between alleged infringer and its customers where no showing working

5

together to defend suit).

In addition, Helferich is entitled to discover the identities of those entities with whom NYT is in privity in pursuing the reexaminations and particularly the *inter partes* review proceedings filed by its Defense Group before the United States Patent and Trademark Office ("PTO"). In addition to the three rounds of reexaminations, NYT (and its Defense Group) has filed an *inter partes* review proceeding under 35 U.S.C. § 311 against the '241 patent (which is not in suit herein, but is at issue in related actions against other members of the Defense Group, including CBS and Bravo). Under § 315(e), following a final decision in favor of the patentee, the "petitioner . . . or the real party in interest or privy of the petitioner, may not assert . . . in a civil action . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review." The PTO has not made any provision for discovery of real parties in interest or privies, indicating that such discovery would be undertaken in related court proceedings – such as this litigation. Helferich is entitled to discover who is in privity with NYT, to be able to raise estoppel in future, where appropriate.

NYT refuses to either provide additional information regarding Companies A-K to support its assertion of privilege, or to produce its communications with this group because they are not, in fact, shielded by a common interest privilege. NYT needs to do one or the other. The descriptions provided, to date, demonstrate that no privilege applies to justify withholding documents from production.

### C. Communications with Other Third Parties Should Also be Produced

Helferich also has served requests requiring production of documents that consist of or refer to communications with third parties regarding the subject patents and the related infringement, validity, willfulness and damage issues. For example, Request No. 32 states:

>All documents Concerning any communication (written or oral) by or on behalf of the NYT with any third party or person not employed by the NYT and Concerning in any way HPL or an Asserted Patent.[3]

Helferich has also sought a deposition pursuant to Rule 30(b)(6) on regarding such communications. These communications are clearly relevant not only on the underlying merits, but more importantly, on whether any such later communications constitute a waiver of any privilege that NYT asserts. It is axiomatic that a claim to attorney client privilege can be waived either intentionally or unintentionally through later communications.

In particular, NYT (and its media Defense Group members) have used journalists and commentators who do not work directly for the NYT (and therefore may give the appearance of impartiality) to adversely report on Helferich, this litigation, related lawsuits, and the parallel reexamination proceedings. For example, Ryan Nakashima wrote an article which was disseminated by the Associated Press on or about August 28, 2012, "NYTimes Leads Group Defense in Mobile Patent Suit." That article contained comments from Brian Buroker and Kenneth Richieri, both counsel of record in this case:

>The Times is fighting the case on two fronts: at the U.S. Patent and Trademark Office and in the courts. Beginning late last year, it filed a number of complaints with the patent office on grounds that the government issued the patents incorrectly. The Times' legal team notes, for instance, that Intel Corp. received a similar patent in February 1996, some 18 months before Helferich got his. A few of the complaints have initially been found in the Times' favor, according to the newspaper company's outside counsel, Brian Buroker, although HPL is appealing. The process could take 18 months to complete.

Disturbingly, the article's reporting is at the very least badly misleading, if simply incorrect. The reexaminations ("complaints") filed in the PTO in 2011 (the first and second rounds) were not "initially found in the Times' favor;" rather, the PTO confirmed claims in

---

[3] Helferich served Request No. 32 prior to the stay; however, Helferich recently served a new request asking for an updated production regarding information responsive to Request No. 32.

Helferich's favor. The current third round of reexaminations pending before the PTO by the parties; they have neither been "found in the Times' favor" nor are they in a position for any party to "appeal." Still further, the Intel patent issued in February in 1996 can only refer to the Tso reference, which was the primary reference addressed and *successfully distinguished* by Helferich in the *ex parte* reexams (i.e., "found" in Helferich's favor). It is used only as a secondary reference in a few (not all) of the third round reexaminations.

Unfortunately, this is not the only adverse news report in the recent press regarding these proceedings from sources that Helferich at least suspects may be tied to NYT. NYT has used these articles, which it may have had a hand in creating, as "evidence" against Helferich's claims of commercial success for its patents (secondary indicia of non-obviousness) before the PTO, filing the articles as exhibits to an expert declaration. *See* Comments by Third Party Requestors in Inter Partes Reexamination 95/001,864 (September 28, 2012).

Faced with a similar situation recently, press coverage of an ongoing proceeding apparently influenced by the participants, the court in the *Google v. Samsung* case issued the following order:

> This Court is concerned that the parties and/or counsel herein may have retained or paid print or interest authors, journalists, commentators or bloggers who have and/or may publish comments on the issues in this case. Although proceedings in this matter are almost over, they are not fully over yet and, in any event, the disclosure required by this order would be of use on appeal or on any remand to make clear whether any treatise, article, commentary or analysis on the issues posed by this case are possibly influenced by financial relationships to the parties or counsel. Therefore, each side and its counsel shall file a statement herein clear identifying all authors, journalists, commentators or bloggers who have reported or commented on any issues in this case and who have received money (other than normal subscription fees) from the party or its counsel during the pendency of this action.

*Oracle America, Inc. v. Google Inc.*, No. C 10-03561 (N.D. Cal.) August 7, 2012 (Dkt. 1229).

Here, Helferich seeks similar information through its document requests and 30(b)(6) notice. NYT has objected that such information is not directly relevant to any claim or defense. However, Helferich notes that Rule 26 expressly provides: "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Helferich hereby seeks disclosure of information clearly relevant to the subject matter of the action – NYT's control over press coverage of this litigation.

As noted above, third party communications, including comments to the press, may also indicate a waiver of privileges – attorney client, work product or common interest. *See, e.g., E.I. DuPont de Nemours & Co. v. Kolon Industries, Inc.*, 269 F.R.D. 600, 605 (E.D. Va. 2010) (press release waived privilege). Here, lawyers for NYT have communicated with third parties outside of its "defense group" regarding the Helferich patents, potential liability, infringement and PTO proceedings. Those communications may or may not lead to a waiver of NYT's claim of privilege. However, Helferich is entitled to explore that possibility in discovery.

Moreover, the Court has the power to require such information as part of its inherent authority to control these proceedings. The parties and their counsel are subject to this Court, and reasonable requirements may be imposed to ensure the fairness of the litigation. *See Sheppard v. Maxwell*, 384 U.S. 333, 361 (1966) (in a homicide case, with regard to information provided the press by counsel, the Court found: "Effective control of these sources – concededly within the court's power—might well have prevented the divulgence of inaccurate information, rumors, and accusations that made up much of the inflammatory publicity"). *See also Pennekamp v. Florida*, 328 U.S. 331, 347 (1946)("Courts must have the power to protect the interests of . . . litigants before them from unseemly efforts to pervert judicial action"); *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 248 (7th Cir. 1975).

9

Nor does "freedom of the press" trump the Court's ability to address the pernicious spread of falsehoods by counsel regarding this litigation. "Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper." *Bridges v. California*, 314 U.S. 252, 271 (1941); *see also Cox v. Louisiana*, 379 U.S. 559, 562 (1965) (government is entitled to "adopt safeguards necessary and appropriate to assure that the administration of justice at all stages is free from outside control and influence"). Rather, the imposition of some steadying influence is required only because counsel, and their media client, are abusing that very freedom. "In plain English, freedom carries with it responsibility even for the press; freedom of the press is not a freedom for responsibility for its exercise." *Pennekamp*, 328 U.S. at 356 (Frankfurter, J., concurring).

Without the requested disclosure, Helferich is engaged in a bizarre game of blind man's buff, where Helferich is subject to attack by members of the press controlled by the NYT, while the nature of that control is shielded from view. While this litigation may not rise to the level of public or press interest in the *Google v. Samsung* case, the role of counsel in influencing the press is equally insidious given the apparent financial relationships with reporters. Helferich suggests, moreover, that an early intervention by the Court, even of the limited nature sought herein, may remind counsel to be more circumspect in addressing the press, so that the truth of statements to the press is not allowed "to become a protracted 'side show' [which] will benefit no one in this litigation." *Delta Frangible* at 3.

## III.    CERTIFICATION UNDER LOCAL RULE 37.2

The parties have conferred by telephonic conference on more than one occasion, as well as exchanged significant correspondence, in good faith efforts to resolve the discovery issues

raised herein.  For example, these issues (and others) were discussed on October 19, 2012, in a call participated in by Brian Buroker, Steven G. Lisa and Victoria Curtin.

## IV.    CONCLUSION

NYT's privilege log is inadequate, particularly in its arbitrary cut off of the date this suit was filed.  This Court previously ordered NYT to provide a privilege log pursuant to Rule 26(b)(5).  It has failed to do so, and sanctions are appropriate.

In addition, because NYT has failed to demonstrate that Companies A-K share the necessary legal interest, the common interest doctrine does not protect communications between these entities and NYT.  Communications between those entities and NYT that are responsive to Helferich's document requests, such as those contained on NYT's log, must be produced.

Finally, NYT should be required to produce documents and a witness regarding communications with other third parties, including contacts with the media.  Helferich should not be required to defend itself blindfolded.

Date: December 13, 2012

VICTORIA GRUVER CURTIN, P.L.C.

By:*/s/  Victoria Curtin*
Victoria Curtin (NDIL ID #010897)
Victoria Gruver Curtin, P.L.C.
14555 N. Scottsdale Rd., Ste. 160
Scottsdale, Arizona  85254
Tel.:  (480) 998-3547
Fax:  (480) 596-7956

Steven G. Lisa (Ill. State Bar # 6187348)
Jon E. Kappes (Ill. State Bar # 6291678)
Timothy Sperling (Ill. State Bar # 6283854)
Law Offices of Steven G. Lisa, Ltd.
55 West Monroe Street, Suite 3210
Chicago, Illinois 60603
Tel. & Fax: (312) 752-4357

11

Gerald D. Hosier (Ill. State Bar #7059)
Law Offices of Gerald D. Hosier, Ltd.
PO Box 12354
Aspen, CO  81612
(970) 920-3475

Attorneys for Plaintiff/Counterdefendant

## CERTIFICATE OF SERVICE

I Laura Keller certify that on December 13, 2012, I personally caused to be served, by

CM/ECF filing, a true and correct copy of "Motion for Sanctions and to Compel Production" to:


Michael R. Weiner
(mweiner@marshallip.com)
Julianne M. Hartzell
(jhartzell@marshallip.com)
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Sears Tower
Chicago, IL  60606

Brian M. Buroker
bburoker@gibsondunn.com
David R. Chiang
Gibson, Dunn & Crutcher
1050 Connecticut Avenue, N.W.
Washington, DC  20006

Kenneth Richieri
(richierk@nytimes.com)
The New York Times Company
620 Eighth Avenue, 17th Floor
New York, New York 10018


*/s/ Laura Keller*
Laura Keller