IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HELFERICH PATENT LICENSING, L.L.C. an Illinois Limited Liability Company,<br>    *Plaintiff,*<br><br>v.<br><br>THE NEW YORK TIMES COMPANY, a New York Corporation,<br>    *Defendant.* | No. 1:10-cv-04387<br><br>Hon. John W. Darrah<br>Hon. Jeffrey T. Gilbert |

**DEFENDANT THE NEW YORK TIMES COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AND TO COMPEL PRODUCTION**

**<u>INTRODUCTION</u>**

Plaintiff Helferich Patent Licensing, LLC's ("HPL") Motion for Sanctions and to Compel Production is entirely without merit. First, Plaintiff's request for sanctions fails because Defendant The New York Times Company ("NYT") provided sufficient detail in its privilege log to confirm that the common interest group members have a common interest, consistent with this Court's order. Framed this time as a motion for sanctions, HPL continues to revisit this Court's prior ruling in hopes of forcing NYT to reveal common interest communications not to advance this case, but rather in an attempt to break apart a legitimate common interest group that has enabled NYT to reduce the burden and expense of this litigation. Second, HPL's complaint about the privilege log cut-off date could not warrant sanctions because this Court affirmatively declined to rule on that issue in its previous order. Cutting off the privilege log on the date of the filing of this lawsuit is the right answer in patent litigation as has long been the practice in this and other courts. Finally, HPL's request for NYT's communications with the press is another

sideshow; the information sought has no relevance to any matter at issue in this case. The request is also not warranted or supported by any case HPL cites. HPL's motion should be denied.

## RELEVANT FACTUAL BACKGROUND

On December 28, 2010, HPL filed a motion to compel "The New York Times Company to produce the names of all entities participating with it in any joint defense group, defense organization, or defense coalition." Dkt. 51, at 1. The Court denied Plaintiff's motion, Dkt. 61, finding at the hearings on this issue that there was no legal basis to HPL's assertion that it was entitled to this information, *see* Ex. A, at 4-5; Ex. B, at 5-6.

HPL then filed a second motion, asking the Court to compel NYT to produce a privilege log that discloses the identities of the members of the joint defense group. Dkt. 66. The Court then ordered the production of a privilege log setting forth "the authors and recipients of [privileged] documents without proper names." Ex. C, at 6. The intention for requiring this information was "to allow Helferich to then be able to tell [the Court] why those descriptions are inadequate for purposes of determining whether documents are properly in a privilege log and subject to a common interest agreement." *Id.* As the parties represented that they had agreed for most purposes to an end date of the filing of the litigation, the Court did not give a cut-off date that should be used in the parties' privilege logs, stating that it would do so only if the parties were unable to resolve the issue and raised it at a future date. *Id.* at 8-9. Soon after the entry of this Order, this case was stayed pending reexamination proceedings. Dkt. 75.

After the stay of these proceedings was lifted, the parties exchanged privilege logs.[1] HPL raised concerns about various issues in NYT's privilege log, Ex. G, which NYT addressed through a letter, Ex. H. Rather than raising this issue through a motion to compel, HPL is asking for the extraordinary relief of sanctions in its motion.

**ARGUMENT**

**A.  A Privilege Log Cut-Off Date of the Start of the Action Was Contemplated by the Parties and Is Consistent with HPL's Own Practice and this Court's Orders**

HPL argues that NYT "self-selected" the cut-off date of July 2010, which coincides with the filing date of the suit, arguing that there is "no justification" for this "arbitrary limitation of the filing date of the suit." Dkt. 179, at 3-4. However, not only is a privilege log cut-off date of the start of litigation standard practice, but the parties' prior discussions, both individually and before this Court, support this cut-off date. Furthermore, NYT could not possibly have violated the Court's order by selecting this privilege log cut-off date, as the Court expressly stated that it was not ruling on the issue. Finally, HPL's own privilege log supports a cut-off date of the start of litigation.

It is standard practice for parties to stop logging privileged documents at the commencement of the lawsuit. *See* James W. Quinn et al., *Document Discovery*, *in* 2 BUSINESS AND COMMERCIAL LITIGATION IN FEDERAL COURTS § 21:41 (Robert L. Haig ed., 2d ed. 2008) ("[I]n most litigations, counsel will agree to omit from the privilege log documents created by outside or in-house counsel after the litigation has commenced."); *see also, e.g.*, *Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 51 (S.D.N.Y. 2009) (Due to practical considerations and the associated burden, "the court will not require [the parties] to record on [their] privilege log[s] any attorney-client communications or work product documents created

---

[1]  HPL has yet to produce a log of licensing files. *See* Email from Victoria Curtin, Sept. 1, 2011, Ex. E; *see also* Email from Steven Lisa, Oct. 5, 2012, Ex. D.

after the date the [suit] was filed."); *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 381 (S.D. Ind. 2009) (referring to a "'local custom' exempting post-filing-of-lawsuit documents from being . . . logged").

The parties' prior discussions and the Court's ruling also support the cut-off date used by NYT, making HPL's call for sanctions baseless. The parties were operating under the understanding that the logging of privileged communications would stop at the case filing date and had multiple communications to that effect. Indeed, at the hearing held March 22, 2011, HPL's counsel stated that the parties "have agreed for most purposes to an end date of the filing date of this litigation." Ex. C, at 8. Counsel for NYT also agreed to "the date of the litigation" as a cut-off date for "all privileged communications," objecting to using separate cut-off dates for separate categories of privileged communications. *Id.* at 9. In response to the parties' assertions, the Court stated that it ***would not rule on the issue at that time***, but would deal with it at a later date if raised by the parties. *Id.* at 8-9. Given that the Court did not rule that NYT had to log entries after the filing date of this litigation, HPL cannot cite to an order that NYT failed to satisfy. Thus, there is no basis for "sanctions" when there is not even an order with which NYT allegedly failed to comply.

The dates used in HPL's own privilege logs further indicate that the parties contemplated using a cut-off date on or around the filing of this suit. HPL's "Foreign File Privilege Log" does not log any communications after August 13, 2010—less than one month after this suit was filed. Helferich Foreign Files Privilege Log (Sept. 1, 2012), Ex. F, at 26. Counsel for HPL also seems to be applying an even earlier date to other privilege logs. On October 5, 2012, Steven Lisa indicated that HPL was "prepared to exchange an additional privilege log covering the licensing files through January 2010." Ex. D, at 1. Although HPL has still not produced this additional

4

privilege log, Mr. Lisa's email suggests a cut-off date more than six months prior to the start of this action.

In light of the parties' previous assertions before the Court, the Court's express statement that it was not yet ruling on the issue, and HPL's own privilege logs, NYT clearly did not violate any of this Court's orders when it used the start of litigation as a privilege log cut-off date. Logging communications after the filing of the case would be unduly burdensome and is not "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). HPL's motion for sanctions is absolutely meritless.

B.  **There Is No Legal Basis for Requiring a Separate Cut-Off Date for Privileged Communications with a Joint Defense Group**

As set forth above, HPL's own statements and the privilege logs it has produced support a cut-off date for attorney-client communications of the start of litigation. Presumably, HPL is not seeking to change this date, as it has at no time raised this issue with NYT prior to filing the instant motion. Therefore, although not stated in HPL's motion, it seems that HPL is requesting that the Court impose a one-sided rule imposing a separate cut-off date for all communications between members of joint defense groups. This distinction is both prejudicial and contrary to law.

As this Court has stated: "The common interest doctrine is not an independent source of confidentiality. Rather, it simply extends the protection afforded by other doctrines, such as the attorney/client privilege and the word product rule." *McNally Tunneling Corp. v. City of Evanston*, No. 00-C-6979, 2001 WL 1246630, at *2 (N.D. Ill. Oct. 18, 2001) (citations omitted). Because the privilege that applies to communications with joint defense group members is no different than any other privilege asserted in this action, there is no justification for a separate rule for these documents. Importantly, "in the context of the common interest doctrine . . . all

5

parties to the common interest personally share in the attorney-client relationship during the period of that common interest." *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 278 (N.D. Ill. 2004).

HPL has previously referred to communications with joint defense group members as "communications with third parties." *Cf.* Dkt. 179, at 3 n.2. This label is misleading and is contrary to the actual legal relationship between members of a joint defense group. Correspondence between attorneys independently retained by members of a joint defense group about a common legal interest is an extension of communications between the attorneys for each individual party and their clients because "parties to the common interest personally share in the attorney-client relationship."[2] *Dexia Credit Local*, 231 F.R.D. at 278. Therefore, HPL's attempt to characterize communications between common interest group members as "third-party communications" is wrong for the same reason it would be wrong to say that a communication between two of HPL's counsel is a third-party communication just because HPL is not involved in the conversation. Because communications between members of a joint defense group and their counsel are privileged attorney-client communications, subjecting them to more stringent requirements is nonsensical, prejudicial and, as evident by HPL's failure to point to a legal basis for such a structure, unsupported by law.

**C.  Communications Between NYT and Companies A-M Present a Protectable Common Interest as Stated in the Privilege Log, Because NYT and Companies A-M Share a Common Interest in Seeing the HPL Patents Invalidated**

Because Companies A-M share a common interest privilege with NYT, HPL's motion should be denied. "While often arising in the context of a joint defense, the common interest

---

[2] Communications can even be privileged when the substance of an attorney-client communication is shared, without attorney involvement, between employees of two separate companies that share a common interest. *See, e.g., In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 435 (N.D. Ill. 2006).

6

doctrine more generally applies to any parties who have a 'common interest' in current or potential litigation, either as actual *or potential* plaintiffs or defendants." *Dexia Credit Local*, 231 F.R.D. at 273 (emphasis added). HPL's argument that no common interest exists in this case between NYT and Companies A-M is based on the false premise that common interest members must be defendants. The common-interest doctrine is not limited to common defendants. There is no requirement that common-interest members must even be sued by the same plaintiff for the privilege to apply. Indeed, "[i]n order for the joint defense theory to apply, there need not be actual litigation." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (citing *Union Carbide v. Dow Chem.*, 619 F. Supp. 1036, 1047 (D. Del. 1985)).

Companies A-M comprise a trade association and members of that trade association that provide text-messaging service offerings—the very kind of offerings HPL has accused of infringement through hundreds of letters that HPL proudly admits have resulted in many companies taking a license. HPL's infringement allegations have targeted just about every type of industry that uses mobile technology and text messaging, causing companies that provide services in that industry to rightfully form a common interest group in an effort to invalidate HPL's patents. Thus, Companies A-M share, along with NYT, a legal interest in seeing the HPL patents invalidated so that their customers and potential customers will not face infringement allegations that might lead to indemnification demands from Companies A-M or their business partners.

HPL's argument that it has not sent notice letters to some of Companies A-M entirely misses the point. HPL has sent notice letters to hundreds of companies over the last several years; companies whose accused text-messaging programs were designed, built, or operated by Companies A-M. HPL notably does not represent to this Court that it would never sue a

7

customer of Companies A-M. To the contrary, as HPL's counsel stated at the hearing held January 25, 2011, the reason they have not already sued the members of the joint defense groups is "because [they] don't know who they are yet." Ex. A, at 6. HPL cannot argue with a straight face that the members of the joint defense groups have not been sued, and therefore do not share a common legal interest, but that NYT must disclose their identities so that HPL can bring suit against them. The instant motion seems to be yet another attempt by HPL to discover the names of the members of the joint defense groups so that HPL can create a chilling effect among the many companies it has targeted in its widespread litigation and licensing campaign. If HPL is allowed to discover these names, companies that have a legitimate reason to cooperate under the common interest doctrine may choose to avoid doing so for fear of being the next defendant on HPL's list. However, this Court has already stated that it finds HPL's assertion that it is entitled to this information to lack legal authority. Ex. A, at 4-5; *cf.* Ex. C, at 14 (the Court is "not going back at all on the rulings . . . on issues that were fully briefed [before the prior hearing]").

The case law cited by HPL is also inapposite. In *United States v. Evans*, the court found that a criminal defendant's friend did not share a sufficient common interest in proving the defendant's innocence to invoke the joint defense doctrine. 113 F.3d 1457, 1467 (7th Cir. 1997). Aside from discussing a common interest, this case bears almost no similarity to the present action.

*Kilopass Technology Inc. v. Sidense Corp.* also discusses an entirely different subject. *Kilopass*, No. C-10-02066-SI, 2012 WL 1534065, at *1 (N.D. Cal. May 1, 2012). There, the court held that an individual group of documents, which were not prepared, sent, or received by an attorney and did not contain an attorney-client communication, were not subject to a common interest privilege as they were mere "marketing materials." *Id.* However, it is notable that the

8

*Kilopass* court determined whether privilege existed through *in camera* review, *id.*, as this Court and countless others have done previously. *See, e.g., Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 219 (N.D. Ill. 2001) (*in camera* review of a joint defense agreement to determine whether a common interest privilege existed); *United States v. Zolin*, 491 U.S. 554, 565 (1989) (*in camera* review of allegedly privileged documents is allowed to determine the applicability of the crime-fraud exception); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 425 (N.D. Ill. 2006) (*in camera* review of redacted material to determine whether it is privileged).

Finally, HPL is not entitled to learn the names of the members of the joint defense group in order to "discover the identities of those entities with whom NYT is in privity in pursing the reexamination and particularly the *inter partes* review." Dkt. 179, at 6. That information is not relevant in ***this case.*** In patent matters, if a party elects to pursue an *inter partes* reexamination or an *inter partes* review as a "real party in interest," it and those in privity with it may later be restricted in the invalidity defenses they each may present. In this case, HPL already knows that NYT participated in all of the reexamination filings directly as a real party in interest. NYT clearly identified itself as a real party in interest when it filed its *inter partes* reexamination requests and its *inter partes* review request with the Patent and Trademark Office ("PTO"). HPL can already make its arguments as to how NYT may be statutorily impacted in this litigation based on that admitted fact. It does not need to know who was in privity with NYT to make its arguments, so HPL's latest argument for trying to discover the names of the common interest group is just as flawed as its previous ones.

D. **Communications with Other Third Parties Are Irrelevant to this Action and Therefore Fall Outside the Scope of Discovery**

Finally, as a separate and unrelated issue to the privilege logs, HPL requests that the Court compel production of communications between NYT and "journalists and commentators." These communications are plainly not relevant, and worse, are a sideshow—the proverbial litigation within a litigation. In addition to its own right to communicate with the press about its positions in this case, HPL has full access to the story that they reference and can determine what, if anything, counsel for NYT communicated to the media from those reports.

In support of its motion, HPL proffers—with no supporting evidence—that reporters for the Associated Press are "controlled by the NYT" and that there is an "apparent financial relationships" between NYT and these reporters. *Id.* at 10. HPL's completely unsubstantiated allegations are not evidence—they are pure conjecture. HPL also fails to provide any legal authority for its assertion that the Court should compel production of communications with third-party journalists. In *Oracle America, Inc. v. Google Inc.*, rather than ordering the production of communications with journalists, the Court ordered only that the parties identify "the authors, journalists, commentators or bloggers who [had] reported or commented on any issues in [the] case ***and*** who have received money (other than normal subscription fees) from the party or its counsel during the pendency of this action." *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561, at *1 (N.D. Cal. Aug. 7, 2012) (Dkt. 1229) (emphasis added). *Oracle* is further distinguished from the present action in that *Oracle* was a high-profile case in which the court had independent cause for concern regarding the payment of journalists by counsel in an attempt to influence sitting jurors.

Additional case law cited by HPL is equally inapposite, referring generally to the court's authority to control proceedings (1) by holding individuals in contempt of court, *Bridges v.*

*California*, 314 U.S. 252, 271 (1941), and (2) through specific, case-by-case rules intended to give fair trials to defendants in homicide cases. *See Sheppard v. Maxwell*, 384 U.S. 333, 334 (1966). In one case cited by Plaintiff, the Seventh Circuit specifically found rules prohibiting attorneys from communicating with the press to be unconstitutional, stating that it "recognize[s] the great benefits derived from allowing uninhibited comment by knowledgeable attorneys involved in civil litigation." *Chic. Council of Lawyers v. Bauer*, 522 F.2d 242, 259 (7th Cir. 1975); *see also Pennekamp v. Florida*, 328 U.S. 331, 334 (1946) (overturning prohibitions on speech as violative of the right of free expression in the press).

## CONCLUSION

As set forth above, HPL's motion for sanctions and to compel production is entirely without merit. In effect, HPL is asking the Court to sanction Defendant NYT for conduct that is entirely consistent with the parties' agreement, the Court's orders, and the Federal Rules of Civil Procedure. HPL also asks the Court to compel NYT to produce documents that are both privileged and wholly irrelevant to the present action. Therefore, NYT requests that the Court deny Plaintiff's motion.

Dated: January 11, 2013                                     Respectfully submitted,

                                                            /s/ Michael R. Weiner
                                                            Brian M. Buroker
                                                            Matthew F. Chandler
                                                            **GIBSON, DUNN & CRUTCHER LLP**
                                                            1050 Connecticut Avenue Northwest
                                                            Washington, D.C. 20036
                                                            202-955-8541

                                                            Michael R. Weiner (Ill. Bar No. 06217025)
                                                            Julianne Marie Hartzell (Ill. Bar No. 06270593)
                                                            **MARSHALL, GERSTEIN & BORUN LLP**
                                                            233 South Wacker Drive

6300 Sears Tower
Chicago, Illinois 60606-6357
312-474-6300
mweiner@marshallip.com
jhartzell@marshallip.com

Kenneth Richieri, Esq. (Of Counsel)
The New York Times Company
620 Eighth Avenue, 17th Floor
New York, New York 10018
212-556-1995
richierk@nytimes.com

***Counsel for Defendant and Counterclaim Plaintiff The New York Times Company***

## **CERTIFICATE OF SERVICE**

I, Michael R. Weiner, hereby certify, under penalty of perjury pursuant to 28 U.S.C. § 1746, that on this 11th day of January, 2013, I caused to be served this DEFENDANT THE NEW YORK TIMES COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS AND COMPEL PRODUCTION, via the Court's CM/ECF system, and Exhibit F is being served via e-mail, upon the following counsel of record:

| | |
|---|---|
| Steven G. Lisa | Victoria Gruver Curtin |
| Donald J. Lisa | Victoria Gruver Curtin, PLC |
| James David Busch | 14555 North Scottsdale Road |
| Jon E. Kappes | Suite 160 |
| Justin Joseph Lesko | Scottsdale, AZ 85254 |
| Timothy Sperling | victoria@vcurtin.com |
| Law Offices of Steven G. Lisa, Ltd. | |
| 55 W. Monroe St., Suite 3210 | |
| Chicago, IL 60603 | Gerald Douglas Hosier |
| stevelisa@patentit.com | Law Offices of Gerald D. Hosier, Ltd. |
| donlisa@patentit.com | P.O. Box 12354 |
| jamesbusch@patentit.com | Aspen, CO 81612 |
| jonkappes@patentit.com | wizard@ozpd.com |
| justinlesko@patentit.com | |
| timsperling@patentit.com | |

                                                    /s/ Michael R. Weiner
                                                  Michael R. Weiner