**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, L.L.C., | ) | |
| an Illinois Limited Liability Company, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:10-cv-04387 |
| | ) | |
| THE NEW YORK TIMES COMPANY, | ) | |
| a New York Corporation, | ) | Hon. John W. Darrah |
| Defendant. | ) | |
| | ) | |

**REPLY IN SUPPORT OF MOTION FOR SANCTIONS AND TO COMPEL**
**PRODUCTION**

Helferich Patent Licensing, LLC ("Helferich") files this reply in support of its motion for sanctions and to compel production. The New York Times Company ("NYT") fails to establish the existence of a common interest, to justify its unilateral cut off for its third party privilege log, or to excuse its refusal to produce discovery regarding contacts with non-parties, particularly members of the press. The motion should be granted.

**A. No Common Interest Has Been Established**

Contrary to the tenor of NYT's response, NYT has not established a common interest privilege. The withheld documents listed on its "Common Interest" privilege log should be produced, as should any other documents withheld based on the assertion of such a privilege. "The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements." *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003); *United States v. Duke Energy Corp.*, 214 F.R.D. 383, 391 (M.D.N.C. 2003)(re assertion of common interest privilege: "It was incumbent upon Duke Energy to come forward with specific facts showing these matters.

Conclusory statements and ambiguous evidence will not satisfy that burden"). That showing must be made with regard to each member of the "common interest group," as well, as the inclusion of any member not within the privilege will constitute a waiver of any communications with that member.

"[T]he scope of the common interest doctrine is limited to a common *legal* interest to which the parties formed a common strategy." *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 (7th Cir. 2007)(emphasis original). The common legal interest must be identical, not merely similar. *In re Regents of University of California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996)(applying 7th Circuit law). A common business or financial interest is not sufficient. *See Kilopass Technology, Inc. v. Sidense Corp.*, 2012 WL 1534065 *1 (N.D. Cal. 2012); *Beneficial Franchise Co. v. Bank One, N.A.*, 205 F.R.D. 212, 216 (N.D. Ill. 2001). Most importantly, "a shared desire to see the same outcome in a legal matter is insufficient to bring a communication between two parties within this exception." *In re Pacific Pictures Corp.*, 679 F.3d 1121, 1129 (9th Cir. 2012).

NYT has presented ***no evidence*** to support its claim that a common legal interest supports application of the asserted privilege to the withheld documents. Rather, it has provided a constantly shifting kaleidoscope of explanations regarding the parties to the Joint Defense Agreement. At the initial hearing before the Court relating to the common interest privilege, counsel for NYT represented regarding both of its two joint defense groups:

> whether I can say that each and every one has received a letter, I'm not a hundred percent sure. ***If they have not received a letter, they believe that they will receive a letter because they have similar systems that have been accused of infringement***. So that was the threshold understanding that we started with was that anybody who has been accused of infringement or believe they will be accused of infringement has a common interest in having these patents at a minimum declared invalid or that their similar systems be found not to infringe.

2

Transcript of Proceedings, Jan. 25, 2011, NYT's Ex. A at 20-21.  Then, on NYT's privilege log, Companies A-M were represented as a combination of companies aligned with the handset industry (e.g., Company A is a trade association for the mobile device industry) and companies that provide services to content providers (e.g., Company H is a mobile marketing services provider).  Now, in its Opposition, NYT vaguely characterizes the group as "a trade association and members of that trade association that provide text-messaging service offerings" and "companies that provide services in that industry"  whose "customers and potential customers [may] face infringement allegations that might lead to indemnification demands."  Opposition, Dkt. 191, at 7.

It is clear that Companies A-M are not in fact "content providers," who Helferich has or likely will accuse of infringement.  Helferich asserts infringement against content providers; namely, those that create and own the content, store the content, identify the content, and cause the content to be sent to those who request it.  Companies A-M are purportedly a trade association of vendors to content providers (or perhaps even vendors to vendors).  Thus, "vendors" to the content providers or "trade group members" (i.e., those that do ***not*** create, store, identify and cause content to be sent) share no actual ***legal interest*** with NYT or other infringers regarding Helferich's patents.  Indeed, the NYT's carefully worded privilege assertion – "might lead to indemnification" – indicates that NYT has included on its privilege log communications with vendors (or vendors to vendors) that have no indemnity obligations.

The issue of vendor liability was recently addressed by Hon. Neil V. Wake in the related Arizona actions, in the context of denying a motion to add the social media providers (Twitter, Facebook and Google+) as third party defendants.  Judge Wake explained:

In order to be liable for direct patent infringement, a defendant "must commit all the acts necessary to infringe the patent, either personally or vicariously." *Akamai Tech., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012) (en banc) (citing *Cross med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.* 424 F.3d 1293, 1311 (Fed. Cir 2005)). Because neither Helferich nor Nissan alleges that the social media companies have committed all the acts necessary to complete the alleged infringement, the social media companies could not be liable on a theory of direct infringement. Thus, Nissan's argument that the alleged infringement requires action by the social media companies, and that Nissan does not control the acts of those companies, is best understood as Nissan's defense against Helferich's allegation of direct infringement rather than as an argument for impleader on those claims. The social media companies simply could not be liable to Nissan for direct infringement of Helferich's patents.

Helferich has also alleged that Nissan may be liable for inducing infringement based on the collective activities of Nissan and the social media providers. Under this allegation, Nissan's theory of relief against the social media companies is that those companies would be liable to Nissan as joint tortfeasors for any induced infringement of Helferich's patent claims. A defendant "held liable under the federal statute has a right to indemnification or contribution from another only if such right arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law." *Zero Tolerance*, F.R.D. at 126 (quoting *Doherty v. Wireless Broad. Sys. Of Sacramento, Inc.*, 151 F.3d 1129, 1130-31 (9th Cir. 1998)). And the well-settled rule has been that, apart from the statutory cause of action for induced infringement under the Patent Act, 35 U.S.C. § 271(b), there is no right of contribution for joint infringers under the Patent Act or the federal common law. *Motorola, Inc. v. Varo, Inc.*, 656 F. Supp. 716, 717 (N.D. Tex. 1986).

*Helferich Patent Licensing, LLC v. Suns Legacy Partners, LLC,* No. CV-11-2304 (D. Ariz. Jan. 7, 2013, Dkt. 151 at 6-7; courtesy copy attached as Exhibit 1).

Here, as in the *Suns* case, NYT has wholly failed to articulate any explanation of a "common legal interest" on the part of Companies A-M, which has to be based on a risk of liability for infringement of Helferich's patents. The Federal Circuit has made clear that mere dislike of a patent does not constitute a "legal interest":

Simply disagreeing with the existence of a patent on isolated DNA sequences or even suffering an attenuated, non-proximate, effect from the existence of a patent does not meet the Supreme Court's requirement for an adverse legal controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. The various organizational plaintiffs in this suit in particular were not the target of any enforcement action or offered license agreements by Myriad and had made no preparation to undertake potentially infringing activities. They accordingly suffered no injury and thus

4

lack standing to bring this action.

*Association for Molecular Pathology*, 689 F.3d 1303, 1323 (Fed. Cir. 2012), *cert. granted on other gds*, 133 S.Ct. 694 (2012) (citations omitted)(discussing standing for a declaratory judgment action); *see also Microchip Technology Inc. v. Chamberlain Group, Inc.*, 441 F.3d 936, (Fed. Cir. 2006)(party lacked sufficient legal interest in patents to file declaratory judgment action: "At most, Microchip had only an economic interest in clarifying its customers' rights under Chamberlain's patents, which may have facilitated sale of Microchip's products"). Thus, "anti-troll" or even anti-Helferich sentiment on the part of Companies A-M is clearly not sufficient to form the necessary legal interest.

Similarly, NYT cannot fulfill its obligation to demonstrate the existence of a privilege by its passing reference to possible indemnity demands. Opposition at 7. While indemnification agreements may establish the requisite common legal interest, there must be actual, demonstrated obligations. *See, e.g., Dura Global Technologies, Inc. v. Magna Donnelly Corp.*, 2008 WL 2217682 *3 (E.D. Mich. 2008)("The indemnification agreement . . .shows that the disclosure of the attorney opinion letters was due to a common legal interest – avoiding any liability for Defendant's window infringing upon either of the patents of Plaintiffs"); *B.E. Meyers & Co. v. United States*, 41 Fed. Cl. 729, 734 (Ct. Cls. 1998) (common interest found with supplier of "the very products alleged to be infringing," existence of indemnity agreement "most important"). A mere subjective belief that a common interest exists, or that a privilege applies, is insufficient. *Domanus v. Lewicki*, 2012 WL 6568227 *5 (N.D. Ill. 2012).

### B. There Is No Basis For NYT's Arbitrary Cut Off Date

NYT's total failure of proof on the existence of any privilege is exacerbated by its arbitrary limitation of its logging of third party communications. As noted in the Motion, NYT

arbitrarily chose to end its log as of the filing date of the original Complaint (July 14, 2010). NYT's self-selected and strategic cut-off date was a deliberate end-run around the Court's Minute Entry expressly compelling NYT to produce a privilege log "in an effort to establish the existence of the claimed privilege consistent with Federal Rule of Civil Procedure 26(b)(5)." Dkt. 71. Because of this arbitrary limitation, no signed copy of either of the two Joint Defense Agreements has been logged. Helferich is left in the dark as to when the A-M "common interest group" reached a decision that a common interest existed (and thus the privilege arguably began to apply) or even which of Companies A-M are parties so such an agreement.[1] Worse, Helferich has ***absolutely no information*** about the second "common interest group," not even the sketchy descriptions provided in the A-M log, and thus no factual basis on which to either acquiesce in the assertion of privilege, or challenge it.

There is no question that the parties can ***agree*** to establish limits on the obligation for logging materials claimed to be privileged. Here, the parties have agreed, for example, to exclude communications purely within the legal teams, and to cut off logging of client communications as of the date of the litigation. That is, the parties agreed to limit logging where the existence and extent of any privilege was not subject to serious challenge. What was not agreed was to so limit logging communications with third parties. Helferich was appropriately concerned that the asserted common interest privileges might not exist.

NYT's argument that there should be no distinction between logs of third party communications and any other communications rings hollow – NYT itself produced two logs, one of communications with between counsel and client (NYT) and one with "common interest"

---

[1] If not all of Companies A-M signed the Joint Defense Agreement, there may be no privilege as to communications including the non-signatories.

third parties.  Obviously, NYT sees a distinction between these categories.  Nor is NYT aided by its discussion of Helferich's logs.  The "Foreign Files" log ends in August 2010 because it is a log of a particular set of files, the files of former patent counsel Martin Zoltick and his firms, which end at that time.[2]  Helferich's general log ends at the filing of this litigation because NYT so ended its log; Helferich is fully prepared to produce a log of communications with third parties up to the cut off for its last production of documents to NYT.

Without an agreement, there is no basis for unilaterally imposing an arbitrary limit on logging.  *See* Rule 26(b)(5), F.R.Civ.P.  This Court acknowledged as much in the March 22, 2011 hearing when it asked the parties to negotiate an end date for the logs.  NYT Ex. C at 9. What the Court did order, however, was that NYT produce a log that gives Helferich the basis for reviewing the asserted common interest privileges.  *See* Minute Entry, Dkt. 71.  NYT's arbitrary cut off eviscerated that requirement. Without a full log, Helferich is handicapped in challenging the assertion of privilege.  Helferich lacks information regarding any signed joint defense agreement; Helferich has no information about the second "common interest group;" and, further, Helferich does not know if communications with other third parties, such as journalists, are also being withheld based on assertion of some privilege.  Moreover, both Helferich and the Court are left in the dark as to the extent of the documents improperly shielded.

### C.  Helferich Is Entitled To Discovery Of Communications With Third Parties, Including Journalists.

NYT's argument that communications with other third parties, including journalists, is irrelevant is simply not sustainable.  What NYT and its counsel have said to third parties

---

[2] Helferich has now provided NYT with three logs: one for Mr. Zoltick's files; one for the "conception" documents; and one general log, which include materials from Helferich's licensing files.  In total, these logs run over 500 pages.

7

regarding Helferich and its patent portfolio may constitute admissions, or may waive privilege. Discovery of such communications is virtually certain to relate to "any party's claim or defense," or be "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), F.R.Civ.P.

Nor do communications with journalists or other media figures fall into some special category. In fact, as the cases cited by Helferich in its motion demonstrate, the Court has a particular obligation to prevent a party from using the press to try its case to the public, as opposed to in a courtroom.

Contrary to NYT's argument, Helferich is not obligated to be satisfied with brief snippets of quotes that actually make it into print; as with any other communication, Helferich is entitled to discovery of the entire communication, to ascertain the scope of any admissions or waiver. Courts have repeatedly found that statements to the press can waive the privilege:

- "by making the statement at issue in the press release, DuPont has waived the work product protection respecting the factual basis for the statement in the press release," *E.I. Dupont de Nemours & Co. v. Kolon Industries, Inc.*, 269 F.R.D. 600, 607 (E.D.Va. 2010));

- "It is a fairness issue that Kintera should not be allowed to shield their work product from discovery but at the same time use it as a "sword" by touting the essence of the work product on their website," *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 511-12 (S.D.Cal. 2003);

- "A sophisticated, well-counseled party who intentionally discloses an important part of an otherwise privileged communication acts in a manner that is thoroughly inconsistent with preserving the confidentiality of that communication," *Electro*

*Scientific Ind., Inc. v. General Scanning, Inc.*, 175 F.R.D. 539, 543 (N.D. Cal. 1997) (finding waiver from news release that "it has been advised by legal counsel that the referenced patents are invalid");

- "any claim to privilege is waived based on the press release and the subsequent article in the *Wichita Eagle*. . . A party can't selectively choose which portions of a document to release to the public and which portions it wishes to assert a privilege," *Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33, 35 (D. Kan. 1996).

Moreover, the court in *Electro Scientific* found the scope of waiver to be significantly affected by whether the press release had been used in the litigation. *See* 175 F.R.D. at 543. Here, as noted in the Motion, NYT has made statements to the press *about this case* and NYT purported defenses. ("The Times is fighting the case on two fronts: at the U.S. Patent and Trademark Office and in the Court," Nakashima article.) Moreover, it has cited such articles as evidence that the patents lack value in the reexamination proceedings before the PTO. *See* Comments by Third Party Requestors in Inter Partes Reexamination 95/001,864 (September 28, 2012).

NYT's argument that its press activity is somehow "irrelevant" is further undercut by the fact that it has now been used as a "sword" by at least one other party in litigation with Helferich. Recently, in opposition to a motion to dismiss a declaratory judgment action for lack of personal jurisdiction, JetBlue cited a similar article which also quotes Mr. Richieri (general counsel for NYT and attorney of record herein) to demonstrate that Helferich is "a patent troll." *See*

Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss or Transfer at 2 n.1, *JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, No. 1:12-CV-05847 (E.D.N.Y., Dkt. 11).[3]

NYT and its counsel broadcast such aspersions for a reason –to poison the well of public opinion. "Attorneys' statements are often the source of prejudicial publicity, especially since their views and comments are usually accepted by the public on the basis that they come from a wellspring of reliable information." *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 250 (7th Cir. 1975)(footnote omitted). "In securing freedom of speech, the Constitution hardly meant to create the right to influence judges or juries. That is no more freedom of speech than stuffing a ballot box is an exercise of the right to vote." *Pennekamp v. Florida*, 328 U.S. 331, 366 (1946). To buy NYT's argument that statements made by its counsel of record herein (or any other representative) to the press regarding the facts and arguments at issue herein are "irrelevant" is to close one's eyes to the purpose for making them.

### D. Conclusion

NYT in its privilege log and its Opposition has wholly failed to demonstrate the common legal interest necessary for invocation of a common interest privilege. As a consequence, all communications with Companies A-M, as requested in Helferich's Request for Production 32 and related topic under Rule 30(b)(6), should be produced.[4] In addition, NYT has intentionally evaded the Court's requirement that it provide Helferich with sufficient information to evaluate NYT's assertions of privilege, particularly with regard to its "second" joint defense group, by

---

[3] NYT's argument that Helferich has not proven any financial relationship with reporters is equally unavailing: exploring whether such possibilities are correct is one of the purposes of discovery.

[4] Because no privilege attaches with regard to Companies A-M, and the documents and communications are subject to production, there is no need to address NYT's arguments that the identities of Companies A-M should remain shielded.

strategically selecting a logging cut-off date. NYT should produce a log of communications with third parties that continue to be withheld, sufficient for Helferich to adjudge the applicability of any claimed privilege in accordance with this Court's prior order, not subject to any arbitrary, unilateral cut off or other limitation. Finally, NYT should be ordered to provide its non-privileged communications with third parties regarding Helferich and its portfolio, including journalists and commentators.

Date: January 24, 2013

VICTORIA GRUVER CURTIN, P.L.C.

By: /s/ Victoria Curtin
Victoria Curtin (NDIL ID #010897)
Victoria Gruver Curtin, P.L.C.
14555 N. Scottsdale Rd., Ste. 160
Scottsdale, Arizona 85254
Tel.: (480) 998-3547
Fax: (480) 596-7956

Steven G. Lisa (Ill. State Bar # 6187348)
Jon E. Kappes (Ill. State Bar # 6291678)
Timothy Sperling (Ill. State Bar # 6283854)
Law Offices of Steven G. Lisa, Ltd.
55 West Monroe Street, Suite 3210
Chicago, Illinois 60603
Tel. & Fax: (312) 752-4357

Gerald D. Hosier (Ill. State Bar #7059)
Law Offices of Gerald D. Hosier, Ltd.
PO Box 12354
Aspen, CO 81612
(970) 920-3475

Attorneys for Plaintiff/Counterdefendant

11

## CERTIFICATE OF SERVICE

I Laura Keller certify that on January 24, 2013, I personally caused to be served, by

CM/ECF filing, a true and correct copy of "Reply in Support of Motion for Sanctions and to

Compel Production" to:

Michael R. Weiner
mweiner@marshallip.com
Julianne M. Hartzell
jhartzell@marshallip.com
Marshall, Gerstein & Borun LLP
233 South Wacker Drive
6300 Sears Tower
Chicago, IL  60606


Brian M. Buroker
bburoker@gibsondunn.com
Matthew F. Chandler
MChandler@gibsondunn.com
Gibson, Dunn & Crutcher
1050 Connecticut Avenue, N.W.
Washington, DC  20006


Kenneth Richieri
richierk@nytimes.com
The New York Times Company
620 Eighth Avenue, 17th Floor
New York, New York 10018


Michael M. Markman
mmarkman@cov.com
Robert Williams
rwilliams@cov.com
Covington & Burling, LLP
One Front Street
San Francisco, CA  94111

David M. Airan
dairan@leydig.com
John K. Winn
jwinn@leydig.com
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, Il 60601-6731


Daniel L. Farris
daniel.farris@hklaw.com
R. David Donoghue
david.donoghue@hklaw.com
Anthony J. Fuga
Holland & Knight LLP
131 S. Dearborn Street, 30th Floor
Chicago, IL 60603


J. Mitchell Herbert, Jr.
mitchell.herbert@hklaw.com
Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116


*/s/ Laura Keller*
Laura Keller

# Exhibit 1

**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helferich Patent Licensing, LLC, | Lead No. CV-11-2304-PHX-NVW |
| Plaintiff, | |
| vs. | **CONSOLIDATED WITH** |
| Suns Legacy Partners, LLC, | |
| Defendant. | |
| Helferich Patent Licensing, LLC, | No. CV-11-2476-PHX-NVW |
| Plaintiff, | |
| vs. | |
| Phoenix Newspapers, Inc., | |
| Defendant. | |
| Helferich Patent Licensing, LLC, | No. CV-12-0060-PHX-NVW |
| Plaintiff, | |
| vs. | |
| Nissan Motor Company, Ltd., et al., | |
| Defendants. | |
| Helferich Patent Licensing, LLC, | No. CV-12-0100-PHX-NVW |
| Plaintiff, | |
| vs. | **ORDER** |
| NBA Properties, Inc., et al., | |
| Defendants. | |

Before the Court is the Nissan Defendants'—Nissan North America, Inc., Nissan Motor Co., LTD, and Midway Holdings, Inc. (collectively, "Nissan")—Motion to File a Complaint to Add Third-Party Defendants (Doc. 129), the Memorandum in Support of the Motion (Doc. 130), Plaintiff Helferich Patent Licensing's ("Helferich") Response, and the Reply. For the following reasons, Nissan's Motion will be denied.

## I.   Background

This is a consolidated case consisting of four actions which collectively assert that Defendants have infringed a number of claims of Helferich's patents. Through those claims, Helferich has patented a method for content providers to deliver content to mobile communication devices. Helferich alleges that Nissan and the other Defendants have infringed these claims in a variety of ways, including using patented methods for: creating mobile content; storing the content; identifying the content so that it can be delivered to customers who request it; causing notifications of the content to be sent to subscribers; and delivering the content to subscribers that request it in response to the subscribers' requests. The infringement occurs, according to Helferich, when Defendants create and store mobile content that they then cause to be delivered to their customers' mobile devices using specific identifiers that are protected by Helferich's claims.

In its Motion, Nissan argues that the principle act that constitutes the alleged infringement is the posting of content to social media pages—websites that are hosted by Google+, Facebook, and Twitter ("the social media companies"). All content providers who operate a Google+, Facebook, or Twitter webpage would be liable under Helferich's theory of infringement, Nissan contends, only because content they post to those webpages can be accessed by customers via their cellular phones. According to Nissan, then, its alleged infringement would not be possible without the actions of the social media companies. Nissan contends that the social media companies therefore would have secondary liability to Nissan for any infringement of Helferich's claims. Because of that alleged secondary liability, Nissan argues that it should be allowed, as a third-party

1    plaintiff, to bring Google+, Facebook, and Twitter into this case as third-party

2    defendants.

3    **II.**     **Legal Standard**

4         Under Federal Rule of Civil Procedure 14, a defendant may bring a third-party

5    complaint against "a nonparty who is or may be liable to it for all or part of the claim

6    against it" as a matter of right. Fed. R. Civ. P. 14(a)(1). Thus, a party can assert a third-

7    party claim where a third-party defendant's liability to the third-party plaintiff is

8    dependent on the outcome of the main claim and is secondary or derivative thereto.

9    *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988). If a defendant,

10   and would-be third-party plaintiff, files the third-party complaint more than 14 days after

11   serving its original answer, however, "the third-party plaintiff must, by motion, obtain the

12   court's leave." Fed. R. Civ. P. 14(a)(1). Here, Nissan has sought the Court's leave to

13   bring a third-party complaint nearly ten months after it served its original answer.

14   Whether to grant leave is thus within the "sound discretion of the trial court." *United*

15   *States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983).

16         The court's central purpose in granting leave to implead a third party is "to

17   promote judicial efficiency by eliminating the necessity for the defendant to bring a

18   separate action against a third individual who may be secondarily or derivatively liable to

19   the defendant for all or part of the plaintiff's original claim." *Sw. Adm'rs, Inc. v. Rozay's*

20   *Transfer*, 791 F.2d 769, 777 (9th Cir. 1986). In its discretion, the trial court should

21   consider the timeliness of the motion, whether the impleader is likely to delay the trial,

22   and whether the impleader will cause prejudice to the original plaintiff. *Irwin v. Mascott*,

23   94 F. Supp. 2d 1052, 1056 (N.D. Cal. 2000). The court should also consider whether the

24   impleader will "disadvantage the existing action" by, among other things, complicating

25   and lengthening the trial, or introducing extraneous questions. *Sw. Adm'rs*, 791 F.2d at

26   777. Finally, the trial court must also consider whether the proposed third-party

27   complaint alleges a cause of action for which relief may be granted. *Irwin*, 94 F. Supp.

28   2d at 1057. This factor is important because "[i]t makes no sense to permit such a

potentially prejudicial expansion of the case at the expense of Plaintiffs, if the third-party plaintiffs do not have a valid theory of relief against the third-party defendants." *Id.* at 1057-58.

### III. Analysis

Nissan moves for leave to add Google+, Facebook, and Twitter as third-party defendants in this action on the theory that those social media companies have secondary liability to Nissan for any alleged infringement. Each of the factors that the Court must consider forms an independently sufficient basis for denying leave to implead the social media defendants. As a result, within its sound discretion, the Court will deny leave to implead third-party defendants.

> #### A. The Motion was Untimely and Impleader is Likely to Cause Undue Delay

Rule 14(a) contemplates adding a third-party defendant within 14 days after serving the original answer. Fed. R. Civ. P. 14(a)(1). Nissan's Motion to add third-party defendants was filed on November 8, 2012, nearly ten months after it filed its original answer, on February 16, 2012. Further, Nissan did not file its Motion to implead until more than five months after Helferich filed its amended complaint, which should have erased any doubt that the activities of the social media companies were central to Helferich's allegations. Because Nissan has had notice of the nature of these claims—and of the role that the social media companies play in them—for many months and delayed in filing its Motion, the Motion is untimely. *See Zero Tolerance Entm't, Inc. v. Ferguson*, 254 F.R.D. 123, 127 (C.D. Cal. 2008).

In addition, the untimely Motion will prejudice the existing action by delaying trial. Because a date for trial has not yet been set, Nissan argues that any risk of delay to the trial is mere speculation. The Scheduling Order set a number of deadlines with which it will become impossible for the parties to comply if third-party defendants are added at this stage, which will necessarily delay the trial. This Court does not set a final trial date in the Scheduling Order, but only later when a trial becomes likely. That does not entitle

dilatory litigants to disregard the case-processing deadlines in the Scheduling Order. Those deadlines are themselves this Court's case management requirements. The November 1, 2012, deadline in the Scheduling Order for adding parties was an outside deadline for seeking leave to add parties, not an authorization in advance to add any party on any claim. Because the Motion was untimely, and because of the delay of the trial that would necessarily result from bringing in third-party defendants at this stage, leave to implead third-party defendants would be prejudicial and will be denied.

### B. Impleader will Complicate the Trial by Introducing Extraneous Issues

The likelihood that the trial would be delayed by impleader is further underscored by the complexity of the issues raised by Nissan's third-party claims. Nissan contends that adding the social media companies as third-party defendants would not disadvantage the existing action because the new issues the impleader would create relate only to the allocation of responsibility between Nissan and the social media companies. But as the briefing on this Motion demonstrates, the question of that allocation of responsibility would significantly complicate and lengthen the trial, and introduce questions that are extraneous to the central infringement claims. Most central is the question of whether the social media companies' terms of use would require Nissan and the other Defendants to indemnify the social media companies for any liability stemming from Defendants use of social media services. That question has already, before the social media companies have even weighed in, raised issues of contract interpretation, public policy, and unconscionability, all extraneous to the infringement claims. Indeed, the social media companies' terms of use, in which all users must agree that the companies will not be liable for any damages that arise from the use of social media services, may explain why no other Defendant has moved to implead the social media companies. The introduction of extraneous issues relating to the social media companies' contractual relationship with Nissan weighs heavily against granting leave to add those companies as third-party defendants, since these issues would unnecessarily complicate the trial. The substantial

- 5 -

complexity of these issues, which have no relationship to the claims of the existing Plaintiff, would cause prejudice to the existing action.

### C. Nissan does not State a Claim Against the Social Media Defendants

For the reasons described above, the Court would deny leave to add third-party defendants to this case even if Nissan had stated a claim upon which relief could be granted. But the expansion of this case is particularly inappropriate because Nissan has not presented a valid theory of relief against the social media companies, a third and independent ground for denying leave to add third party defendants.

Nissan's proposed complaint against the social media companies is for contribution and indemnity on a theory of induced infringement. (Doc. 143 at 7.) In this case, Helferich has alleged that there are two forms of infringement for which Nissan may be liable: direct and induced. The core of Nissan's argument is that the social media companies must take independent action to deliver content to customers' mobile devices Because either form of alleged infringement depends on the actions of the social media companies, Nissan contends, those companies should be liable to Nissan for any damages assessed if Helferich's claims against Nissan are successful.

In order to be liable for direct patent infringement, a defendant "must commit all the acts necessary to infringe the patent, either personally or vicariously." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012) (en banc) (citing *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311 (Fed. Cir. 2005)). Because neither Helferich nor Nissan alleges that the social media companies have committed all the acts necessary to complete the alleged infringement, the social media companies could not be liable on a theory of direct infringement. Thus, Nissan's argument that the alleged infringement requires action by the social media companies, and that Nissan does not control the acts of those companies, is best understood as Nissan's defense against Helferich's allegation of direct infringement rather than as an argument for impleader on those claims. The social media companies simply could not be liable to Nissan for direct infringement of Helferich's patents.

Helferich has also alleged that Nissan may be liable for inducing infringement based on the collective activities of Nissan and the social media providers. Under this allegation, Nissan's theory of relief against the social media companies is that those companies would be liable to Nissan as joint tortfeasors for any induced infringement of Helferich's patent claims. A defendant "held liable under a federal statute has a right to indemnification or contribution from another only if such right arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law." *Zero Tolerance*, 254 F.R.D. at 126 (quoting *Doherty v. Wireless Broad. Sys. of Sacramento, Inc.*, 151 F.3d 1129, 1130-31 (9th Cir. 1998)). And the well-settled rule has been that, apart from a statutory cause of action for induced infringement under the Patent Act, 35 U.S.C. § 271(b), there is no right of contribution for joint infringers under the Patent Act or the federal common law. *Motorola, Inc. v. Varo, Inc.*, 656 F. Supp. 716, 717 (N.D. Tex. 1986).

Nissan argues that this rule was abrogated by *Akamai*, a recent case in which the Federal Circuit, sitting en banc, clarified the standard by which a defendant may be held liable for induced infringement of a method patent under § 271(b). 692 F.3d at 1313. According to Nissan, the *Akamai* court held that joint tortfeasor liability exists where many parties are responsible for the collective infringement of method claims. Nissan contends that this joint liability creates a cause of action for both contribution and indemnity between parties that jointly infringe a patent. In framing the terms of potential joint liability so broadly, Nissan has significantly overstated the reach of the *Akamai* holding.

In *Akamai*, the Federal Circuit held, for the first time, that a defendant can be liable for inducing infringement in a case in which several parties have collectively committed the acts necessary to constitute direct infringement, but no single party has committed all of the required acts. *Id.* at 1313. *Akamai* did not, however, create a theory of joint liability in which any party who commits an act necessary for direct infringement is jointly liable. Rather, to be liable for induced infringement, a defendant must

knowingly induce infringement with specific intent to cause infringement; "[u]nlike direct infringement, induced infringement is not a strict liability tort." *Id*. at 1308 (citation omitted). The inducer must act with knowledge that the induced acts constitute patent infringement and cause, urge, encourage, or aid the infringing conduct. *Id*. As a result, when a defendant knowingly induces infringement, that defendant may be liable in the context of divided infringement even if the infringing acts are not performed by a single entity that would be liable for direct infringement. *Id*. at 1313. The *Akamai* court referred to common law principles of joint tortfeasance to support its conclusion that a defendant may be liable for inducing infringement "even if the person being induced is unaware that his act is injurious and is not liable for that reason." *Id*.

Thus, language in *Akamai* with respect to common law tort principles directly contradicts Nissan's argument that the social media companies are joint tortfeasors merely because Helferich could have no claim for infringement without their actions. The court's reliance on the principles of common law torts does not, as Nissan argues, create a cause of action for contribution and indemnity liability for patent infringement in every case in which infringement depends on the actions of a third party. Simply claiming that a third party is "essential to required steps of the claims" or is "integrally intertwined" with the alleged infringement, (Doc. 143 at 4), does not create contributory liability in the third party under *Akamai*.

Rather, liability for induced infringement depends on the alleged inducer's specific intent to cause infringement. *Akamai*, 692 F.3d at 1308. In order for both Nissan and the social media companies to be liable for infringement, such that Nissan would have a claim for contribution, the social media companies would have to be independently liable for induced infringement under the standard set forth in *Akamai*. As a result, in order to state a claim against the social media companies for induced infringement, Nissan must allege that: (1) the social media companies knew of Helferich's patents; (2) the social media companies induced Nissan's performance of the steps of the method claimed in those patents other than the steps the social media

1   companies themselves performed; (3) Nissan in fact performed the remaining steps of the

2   method patent. *Id*. at 1318. Nissan has not alleged facts sufficient to state a claim under

3   that standard in its proposed complaint (Doc. 130-1).

4          Further, the fact that Helferich is pursuing a theory of induced infringement

5   against Nissan for the collective actions of Nissan and the social media companies does

6   not render the social media companies liable for indemnification. Even if Helferich is

7   able to state successfully a claim for induced infringement against Nissan for the

8   collective actions of Nissan and a third party, the result would not necessarily be that

9   Nissan could state a claim for indemnification. The parties appear to agree that

10  California law would govern any indemnity claim by Nissan against the social media

11  companies. Under California law, there are two basic types of indemnity: "express

12  indemnity, which relies on an express contract term providing for indemnification, and

13  equitable indemnity, which embraces traditional equitable indemnity and implied

14  contractual indemnity." *Jocer Enterprises, Inc. v. Price*, 183 Cal. App. 4th 559, 573

15  (Cal. Ct. App. 2010) (citation and internal quotation marks omitted).

16         Nissan has not stated a viable claim for either type of indemnity. Nissan has not

17  alleged that the social media companies would have an express contractual obligation to

18  indemnify Nissan for any damages; indeed, the language of the agreements discussed

19  above suggests that Nissan may have a contractual obligation to indemnify the social

20  media companies. And equitable indemnity is not available "from an entity that has no

21  pertinent duty to the injured third party." *Id*. As a result, "there can be no indemnity

22  without liability, that is, the indemnitee and the indemnitor must share liability for the

23  injury." *Id*. (citation and internal quotation marks omitted). Therefore, in order to state a

24  claim for equitable indemnity, Nissan would have to establish that the social media

25  companies were liable for induced infringement. For the reasons stated above, Nissan

26  has not stated a claim for induced infringement under the *Akamai*; therefor, without a

27  viable claim that the social media companies are liable, there can be no claim for

28  indemnity.

Because *Akamai* did not create a federal cause of action for contribution and indemnity against all parties that jointly perform the steps of a method patent, and because equitable indemnity is not available without liability, Nissan has not stated a cause of action under federal law. The fact that Nissan does not have a valid theory of relief against the social media companies is an independently adequate basis for the Court to deny leave to implead the social media companies as third-party defendants. Weighed alongside the untimeliness of the Motion, and the delay to the trial and the unnecessary complication of the issues that would result from impleader, this factor firmly convinces the Court that adding the social media defendants as third-party defendants is inappropriate at this stage.

IT IS THEREFORE ORDERED that Nissan's Motion for Leave to File a Complaint to Add Third-Party Defendants (Doc. 129) is DENIED.

Dated this 7th day of January, 2013.

Neil V. Wake
United States District Judge