**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| | ) | |
| v. | ) | No. 1:10-cv-04387 |
| | ) | |
| THE NEW YORK TIMES COMPANY, | ) | |

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| | ) | |
| | ) | No. 1:11-cv-07395 |
| v. | ) | |
| | ) | |
| G4 MEDIA, LLC. | ) | |

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| | ) | |
| | ) | No. 1:11-cv-07607 |
| v. | ) | |
| | ) | |
| CBS CORPORATION, | ) | |

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| | ) | |
| | ) | No. 1:11-cv-07647 |
| v. | ) | |
| | ) | |
| BRAVO MEDIA, LLC | ) | |

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| | ) | |
| | ) | No. 1:11-cv-9143 |
| v. | ) | |
| | ) | |
| J.C. PENNEY CORPORATION, INC. | ) | |

**HPL'S RESPONSE TO "DEFENDANTS' JOINT STATEMENT OF UNDISPUTED**
**FACTS" AND STATEMENT OF ADDITIONAL FACTS**

Plaintiff and Counterdefendant Helferich Patent Licensing, LLC ("Helferich" or "HPL")

submits this response to "Defendants' Joint Statement of Undisputed Facts Material to Their

Joint Motion for Summary Judgment of Patent Exhaustion" and statement of additional facts that

require the denial of summary judgment, pursuant to Local Rule 56.1.  Defendants' numbered

paragraphs are hereinafter referred to as "Defs' #."

**Response to Defendants' Statement of Facts**

HPL submits these responses to each numbered paragraph in Defendants' Joint Statement

of Undisputed Facts, pursuant to Local Rule 56.1(b)(3)(A) and (B); HPL repeats Defendants'

paragraphs, omitting citations to the record including any alleged quotes therefrom:

1.   Plaintiff Helferich Patent Licensing, LLC ("HPL") is a limited liability company and

organized and existing under the laws of the state of Illinois, with its principal office and place of

business in Chicago, Illinois.  HPL is engaged in the business of obtaining royalties from its

patent portfolio.

Response:  HPL admits it is a limited liability company organized and existing under the

laws of the state of Illinois.  Except as so admitted, the remainder of Defs' 1 is denied.  HPL has

moved its principal office to Phoenix, Arizona. *See* Declaration of Victoria Curtin, Exhibit A

("Curtin Decl.") ¶ 12.  HPL also denies Defendants' characterization that HPL as "in the

business of obtaining royalties from its patent portfolio" as incomplete and misleading, and not

supported by the cited references (the current Complaints against Defendants).  Those references

do not characterize HPL's business, but merely state: "HPL is the exclusive licensee of thirty

(30) U.S. patents, six (6) pending U.S. patent applications, and over a dozen related foreign

patents and patent applications all relating to mobile wireless communication devices and the

provision of media and content to such devices (collectively the "HPL Portfolio")."   HPL is

responsible for identifying unlicensed infringers of the portfolio of patents of which it is the

exclusive licensee, all having Richard J. Helferich as the inventor, including defendants, and

2

negotiating and entering into licensing agreements with those companies that wish to practice the inventions claimed in the HPL Portfolio. *See* Curtin Decl. ¶ 13.

2. Defendant/counterclaimant The New York Times Company is a New York corporation with its principal place of business in New York, New York.

Response: Admitted.

3. Defendant/counterclaimant G4 Media, LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California.

Response: Admitted.

4. Defendant/counterclaimant CBS Corporation is a Delaware corporation with its principal place of business in New York, New York.

Response: Admitted.

5. Defendant/counterclaimant Bravo Media, LLC is a New York limited liability company with its principal place of business in New York, New York.

Response: Admitted.

6. Defendant/counterclaimant J.C. Penney Corporation, Inc., is a Delaware corporation with its principal place of business in Plano, Texas.

Response: Admitted.

7. HPL is the exclusive licensee of the patents-in-suit.

Response: Admitted.

8. In this action, HPL asserts a claim for patent infringement under Title 35 of the United States Code and the defendants seek declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* Thus, the court has subject matter jurisdiction of the claims presented pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2202.

Response: Admitted.

9.  The allegations of patent infringement and declaratory and injunctive relief asserted in connection therewith arise under the patent laws of the United States, namely 35 U.S.C. § 101 *et seq.* Thus, venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and 1400(b).

Response: Admitted.

10. HPL has entered into licenses to patents that include, at a minimum, each of the patents-in-suit, with at least the following entities: Apple, Samsung, Research in Motion, LG Electronics, Nokia, Microsoft, Motorola, HTC, Amazon.com, Sony, Kyocera, Hewlett-Packard/Palm, Panasonic, Sanyo, Dell, Toshiba, Acer, Sharp, Casio, i-mate, Wistron, Psion, Asustek, Huawei Technologies, NEC, ZTE, Pantech, and UTStarcom.

Response:  Denied, except that HPL admits that it has entered into limited licenses with each of the handset entities listed in Defs' 10 ("Handset Licenses" or "Handset Licensees").  In particular, HPL denies that each of the Handset Licenses includes "each of the patents-in-suit." Rather, all of HPL's Handset Licenses excluded entire Content Patents (and the "Content Claims" of other patents) from the Releases, Licenses and Covenants granted in the "Licensed Field" of "Mobile Wireless Communication Devices" (e.g., cell phones).  *See* Curtin Decl. ¶¶ 5, 6 and 10, and Exs. A2-A6, and A8; Defs' Exs. A-BB at §§ 2 and 3; Declaration of John R. Grindon, D.Sc., Exhibit B ("Grindon Decl.") ¶ 25 (certain patents have only Content Claims). *See also* ¶¶ 55-58, below.

11. In HPL's Request for Reconsideration After Non-Final Office Action Pursuant to 37 C.F.R. §§ 1.111 & 1.945 in Serial No. 95/001,864, dated December 29, 2011, HPL stated that it has licensed every patent-in-suit to "the ***entire*** cellular handset industry" in this country.

Response: Denied. In its Request for Reconsideration, HPL stated: "In about four years, the *entire* cellular handset industry-28 of the world's most aggressive companies-acquired licenses under the Helferich portfolio." *See* Defs' Ex. CC at 33-34. HPL did ***not*** state that it had licensed the handset industry to "every patent-in-suit," as the Handset Licenses were expressly limited. *See* ¶ 10, above. In its Request for Reconsideration, HPL expressly stated: "twenty one of the handset licenses were narrowly limited to only category (2) (i.e., handsets)." *See* Defs' Ex. CC at 34.

12. Every license HPL has granted to a handset manufacturer that sells products in the United States includes at least the following language: "HPL hereby releases," acquits and discharges Licensee's respective "direct and indirect past, present and future customers, retailers, wholesalers, distributors, dealers, resellers, users, OEMs, vendors and [ ] manufacturers from" "any and all infringement claims."

Response: Denied. HPL admits only that the quoted words individually appear somewhere in its handset licenses; however, the quotations have been deceptively cropped from HPL's license agreements to omit the express requirements, exceptions, and limitations placed on releases from HPL to Licensee's customers wholesalers, distributors, dealers, resellers, users, OEMs, vendors. In particular, and among other things, the release clauses of HPL's handset licenses are each expressly limited to activity within the Licensed Fields (generally, Mobile Wireless Communication Devices such as cell phones made, used or sold by the Licensee). *See* Curtin Decl. ¶¶ 5, 6, 10 and Exs. A2-A6 and A8; Defs' Exs. A-BB, Section 2. In addition, the license/covenant clauses of HPL's handset agreements are expressly subject to the paragraphs reserving and withholding all claims relating to separate inventions directed solely to systems

5

and methods of content provision. *See id.* Therefore, HPL has not released "any and all infringement claims."

13. Every license HPL has granted to a handset manufacturer that sells products in the United States provides that HPL will not "bring suit" against a "Third Party" or "a Consumer." A "Third Party" is defined as "a person or entity that is not HPL or Licensee."

Response: Denied. While every license HPL has granted to a handset manufacturer includes a definition for "Third Party" or "Consumer," none of HPL's Handset Licenses broadly provide that "HPL will not 'bring suit' against a 'Third Party' or 'a Consumer.'" Rather, Defendants have deceptively cropped HPL's license agreements to omit the express requirements, exceptions, and limitations placed on every license/covenant not sue granted by HPL to Third Parties or Consumers. Specifically, each such license/covenant not to sue is expressly limited to activity within the Licensed Fields (generally, Mobile Wireless Communication Devices such as cell phones made, used or sold by the Licensee), and are subject to the reservations in Section 3.e thereof. Section 3.e expressly reserves claims and causes of action against Third Parties and Consumers relating to infringement of separate and distinct inventions outside of the Licensed Field. *See* Curtin Decl. ¶¶ 5, 6, 10 and Exs. A2-A6, A8; Defs' Exs. A-BB, § 3(b).

14. Helferich admits that every patent claim asserted in this litigation requires an operation that must be performed on or by a wireless handset.

Response: Denied. HPL has never made such an admission. No *patent claim* asserted in this litigation has as an element, recites or requires an operation that must be performed on or by a wireless handset. The paragraphs of HPL's complaints cited by Defendants state, *inter alia*, "The content provider uses an interface with a notification system (such as various social media

sites or messaging services) to disseminate its messages to its customers', followers', and fans' mobile phones via SMS or MMS. Thereafter, the content provider receives a request for the content identified by the link and delivers the requested content to the user's mobile phone." Neither these statements in the Complaints nor the language of the claims in suit recite an operation performed on or by a wireless handset; rather, they require operations performed by a content provider *directed to* a wireless handset. *See* Grindon Decl. ¶¶17(b), 18-22 and 41(b).

15. To practice any asserted claim requires that content be created.

Response: Denied. Defs' 15 is not a statement of fact supported by cited references, *see* Local Rule 56.1, but rather constitutes an unsworn, conclusory and argumentative assertion of counsel that is an incorrect construction of the asserted claims. While any claim that references the term "content" presumes that some content, in fact, exists (i.e., that it was created, selected, obtain, or generated at some point), the act of creating such content is not recited as an element of or a requirement to practice the asserted claims. *See, e.g.,* Helferich Patent Nos. 8,134,450; 8,107,601; 8,116,741 (Defs' Exs. JJ, HH, II, respectively); *see also* Grindon Decl. ¶ 17(c), 41(b).

16. To practice any asserted claim requires that a text message containing an information identifier be delivered to a handset.

Response: Denied. Defs' 16 is not a statement of fact supported by cited references, *see* Local Rule 56.1, but rather constitutes an unsworn, conclusory and argumentative assertion of counsel that is an incorrect construction of the asserted claims. To infringe any asserted claim does not "require that a text message containing an information identifier be delivered to a handset." Further, no asserted claim recites "text messages" or that text messages "be delivered to a handset." Also, numerous asserted claims do not recite an "information identifier." *See* Grindon Decl. ¶ 41(b).

17. To practice any asserted claim requires that a handset render a link.

Response: Denied. Defs' 17 is not a statement of fact supported by cited references, *see* Local Rule 56.1, but rather constitutes an unsworn, conclusory and argumentative assertion of counsel that is an incorrect construction of the asserted claims. As demonstrated by the language of the claims quoted in Defs' 17, no asserted claim has as an element that "a handset render a link." Further, any processing that a handset may do upon receipt of defendants' messages and content is outside of the requirements recited in the asserted content claims. *See* Grindon Decl. ¶¶ 17(b), 18-22, and 41(b).

18. To practice any asserted claim requires that a user use the handset to click on the link.

Response: Denied. Defs' 18 is not a statement of fact supported by cited references, *see* Local Rule 56.1, but rather constitutes an unsworn, conclusory and argumentative assertion of counsel that is an incorrect construction of the asserted claims. As demonstrated by the language of the claims quoted in Defs' 18, no asserted claim has as an element that "a user use the handset to click on the link." Further, any processing that a handset may do upon receipt of Defendants' messages and content is outside of the requirements recited in the asserted Content Claims. *See* Grindon Decl. ¶¶ 17(b), 18-22, and 41(b).

19. To practice any asserted claim requires that a handset send a request for the content associated with the information identifier.

Response: Denied. Defs' 19 is not a statement of fact supported by cited references, *see* Local Rule 56.1, but rather constitutes an unsworn, conclusory and argumentative assertion of counsel that is an incorrect construction of the asserted claims. As demonstrated by the language of the claims quoted in Defs' 19, no asserted claim has as an element that "a handset send a request for the content associated with the information identifier." Further, any processing that a

handset may do upon receipt of Defendants' messages and content is outside of the requirements recited in the asserted Content Claims. *See* Grindon Decl. ¶¶ 17(b), 18-22, and 41(b).

20. To practice any asserted claim requires that content be delivered to the handset.

Response: Denied. Defs' 20 is not a statement of fact supported by cited references, *see* Local Rule 56.1, but rather constitutes an unsworn, conclusory and argumentative assertion of counsel that is an incorrect construction of the asserted claims. As demonstrated by the language of the claims quoted in Defs' 20, numerous asserted claims do not recite as an element that "content be delivered to" a handset. *See* Grindon Decl. ¶¶ 17(b), 18-22, and 41(b).

21. HPL has stated in its infringement allegations served on the New York Times that the following is an example of an SMS text message that would infringe Claim 9 of the '838 Patent if a handset user selected the http://bit.ly/b6nvFF portion of the message:


Exh. KK, at 20.

Response: Denied. While this message appears in HPL's infringement contentions, HPL did not state therein that this message "would infringe Claim 9 of the '838 Patent if a handset user selected the http://bit.ly/b6nvFF portion of the message." Rather, the referenced portion of the contention addresses one specific element of claim 9, "the content provider initiating communication of data intended for the wireless communication device," and states the following with regard thereto:

> With each of the programs and services shown and described above, NYT furnishes or supplies its content by initiating (e.g., beginning, originating or trigg[er]ing) communication of data (e.g., text characters or symbols) intended for mobile phones. For example, NYT transmits tweets, status updates, posts, or messages via the above-

referenced services that cause paging calls such as SMS notifications to be transmitted to mobile phones, as follows: [figure omitted].

More specifically, NYT causes or has caused transmission of SMS messages via its Twitter, Facebook, "Breaking News Alerts," "Severe Weather Alerts," "Sports Alerts," "Frugal Traveler Alerts," "Columnist Texting," "Section Texting," "Weather Reports," "Latest New Headlines," "Business News," "Arts & Entertainment News," "Sports Headlines," "Patriots News and Scores," "Red Sox News and Scores," "Celtics News and Scores," and "Bruins News and Scores," real estate ads, SMS based "send to phone" features to send links to NYT articles and About's mobile apps and nutritional information services, representative examples of which are shown below.

The block message shown in Defs' 21 is one of numerous "examples" shown after the above text. *See* Defs' Ex. KK at 18-19. Moreover, contrary to Defs' 21, an SMS text message itself does not infringe Claim 9 of the '838 patent, nor does that claim have as an element that a "handset user select" a portion of a message. *See* Grindon Decl. ¶ 22.

22. HPL has sent notice letters to at least 121 companies that have subsequently agreed to take a content license.

Response: Admitted.

23. HPL admitted to the PTO that it granted several handset manufacturers – at least Apple, RIM, Microsoft, Motorola, Amazon, HP/Palm, and Dell – content licenses as well.

Response: Admitted that HPL granted limited Content Licenses in the field of "Mobile Wireless Content Provision" to the identified handset companies. *See* Curtin Decl., ¶¶ 5, 9 and 10, and Exs. A2-A8.

24. Although HPL's licenses purport to "reserve" or "withhold" certain claims, many of the licenses do not specifically list the claims they purport to "reserve" or "withhold."

Response: Denied. All of HPL's licenses (both Handset and Content) reserve or withhold claims against third parties for direct infringement of claims not within the Licensed Fields. Curtin Decl. ¶¶ 5, 6, 8 and 10, and Exs. A2-A8. In addition, of HPL's 28 handset licenses, twenty reserve or withhold claims not infringed by the licensee within the Licensed

10

Fields (e.g., claims not directed to handsets), and identify examples of the reserved or withheld claims on an Exhibit E to the license. *See, e.g.,* Curtin Decl. ¶ 6, and Exs A3-A5; *see also* Defs' Exs. A, D, E, H-K, M, N, Q-BB, § 3.e. Seven of the handset licenses reserve or withhold claims not infringed by the licensee within the Licensed Fields (e.g., claims not directed to handsets) and do not identify examples of such reserved or withheld claims. *See, e.g.*, Curtin Decl. ¶ 6 and Ex. A6; Defs' Exs. B, C, F, G O and P at § 3.e. One license expressly identifies "withheld" claims. *See* Curtin Decl., Ex. A2; Defs' Ex. L, § 3.e.

25. HPL has asserted many more claims than it specifically "reserved" or "withheld" in any enumerated list in the handset licenses.

Response: Denied. All of the asserted Content Claims were "reserved" from the handset licenses, and the identification of reserved or withheld claims in Exhibit E was generally exemplary and non-exhaustive. *See* HPL Response to Defs' ¶ 24, above.

26. Defendants attach true and correct copies of Helferich's handset licenses as Exhibits A-BB.

Response: Admitted.

27. Attached hereto as Exhibit CC is a true and correct copy of HPL's Request for Reconsideration After Non-Final Office Action Pursuant to 37 §§ C.F.R. 1.111 & 1.945 in Serial No. 95/001,864, dated December 29, 2011.

Response: Admitted.

28. Defendants attach true and correct copies of the patents-in-suit.

Response: Admitted, with the proviso that the copies attached are of the patents as issued and certificates of correction, but do not reflect the reexaminations proceedings instituted by Defendants.

11

29. Attached hereto as Exhibit KK is a true and correct copy of Plaintiff's Preliminary Infringement Contentions for Claim 9 of U.S. Patent Number 7,280,838, served on Defendant The New York Times Company.

Response: Admitted.

30. Attached hereto as Exhibit LL is a chart that summarizes Undisputed Facts ¶¶ 16-20.

Response: Denied that Exhibit LL fairly summarizes or characterizes HPL's patent claims, or any elements thereof.  Defs' 30 and Exhibit LL are not statements of fact supported by cited references, *see* Local Rule 56.1, but rather constitute unsworn, conclusory and argumentative assertions of counsel.  In particular, Exhibit LL contains Defendants' incorrect construction of the claims and mischaracterizes the elements thereof.  *See* Grindon Decl. ¶¶ 17-22.

**Response to Unsupported "Facts" Stated in Defendants' Brief**

In Defendants' Joint Memorandum of Law ("Brief"), Defendants state, either without any citation to their Joint Statement of Undisputed Facts or to the record, or with a citation that does not support the statement, at least the following disputed "facts," contrary to the requirements of Local Rule 56.1(a)(3):

31. "HPL's operative complaints allege that Defendants infringe by causing a text message containing a web link to be sent to a wireless handset and then receiving a request for content when the user of the same wireless handset clicks on the link.  *See* Statement of Undisputed Facts ("SUF") ¶¶ 14-20, 30. The delivery of content cannot infringe without such a request from the handset."  Brief at 1.

Response:  Denied. Paragraph 31, notwithstanding Defendants' citation, is unsupported by their Joint Statement of Undisputed Facts, and constitutes an unsworn and conclusory

12

assertion of counsel, contrary to the requirements of Local Rule 56.1(a)(3). The allegations set forth in HPL's operative complaints differ from Defendant to Defendant; however, they do not contain the allegations recited by Defendants in Paragraph 31. Rather, HPL's operative complaints state, among other things, the following in connection with Defendants' activities that give rise to infringement:

> The '757, '716, '838, '601, '741 and '450 patents variously and in general relate to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones. The content provider stores its content (such as news, coupons, specials, media, etc.) on an internet accessible website and creates a short description of the content (of the type intended for placement into an SMS or MMS message). The content provider also selects and inserts a unique identifier of the content, such as a URL "link" in the message. The content provider uses an interface with a notification system (such as various social media sites or messaging services) to disseminate its messages to its customers', followers' and fans' mobile phones via SMS or MMS. Thereafter, the content provider receives a request for the content identified by the link and delivers the requested content to the user's mobile phone. The patents also variously relate to providing or using: (1) shortened URLs received from a link shortening service; (2) URLs that identify dynamic content such as changing product prices, promotions, events, reviews, or comments; (3) information to inform the recipient of the identifier of the time that the content is available such "24 hour sale" information; (4) a request for a delivery confirmation of an MMS message; (5) error status information when retrieving content, and/or (6) MMS messages from which users can request—and content providers receive—commands regarding the content such as commands to delete, reply to, or forward the content.

*See, e.g.,* Second Amended Complaint for Patent Infringement against J.C. Penney Corp., Dkt. 28 at ¶ 11. Moreover, none of the Content Claims recite "causing a text message containing a web link to be sent to a wireless handset and then receiving a request for content when the user of the same wireless handset clicks on the link." *See* HPL Responses to Defs' ¶¶ 14-20, 30, above. Defendants' assertion that "The delivery of content cannot infringe without such a request from the handset" is wrong, at the very least because many of the asserted Content Claims do not require that content "be delivered" and some of the claims do not refer to any "request from the handset." *See* Grindon Decl. ¶¶ 17(b), 18-22 and 41.

13

32. "HPL seeks to collect multiple royalties from everyone that creates content that might end up being displayed on any handset in the U.S. . . . In short, HPL believes it has the right to extract royalties from everyone who sends a text message or posts content to social media containing text strings representing web addresses that are interpreted by the social media application or a handset as clickable links."  Brief at 2.

Response:  Denied. Paragraph 32 is unsupported by Defendants' Joint Statement of Undisputed Facts, and constitutes an unsworn and conclusory assertion of counsel, contrary to the requirements of Local Rule 56.1(a)(3).  HPL does not seek royalties from anyone who does not infringe its duly issued claims.  Moreover, there are substantial non-infringing content delivery operations and uses of handsets that include "send[ing] a text message or post[ing] content to social media containing text strings representing web addresses that are interpreted by the social media application or a handset as clickable links."  Curtin Decl. ¶¶ 5, 6, 8 and 10; *see also* Grindon Decl. ¶ 24.

33.  "Indeed, HPL has been blanketing the country with letters to hundreds of companies that use social media services like Facebook and Twitter."  Brief at 2 (footnote omitted).

Response:  Denied. Paragraph 33 is unsupported by Defendants' Joint Statement of Undisputed Facts contrary to the requirements of Local Rule 56.1(a)(3).  HPL makes no claim of infringement against companies solely for using social media services like Facebook and Twitter.  Rather, Defendants infringe when they perform (or those they direct or control or induce) the variously-claimed elements of the asserted HPL claims as set forth in HPL's various Infringement Contentions.  *See, e.g.,* Preliminary Infringement Contentions for Claim 1 of 8,134,450 (Ex. B28), Claim 1 of 7,835,757 (Ex. B29), Claim 1 of 6,107,601 (Ex. B30), Claim 13 of 8,116,741 (Ex. B31), and Claim 9 of 7,280,838 (Ex. B32).

14

34. "Those companies infringe, according to HPL, because when any Twitter or Facebook user writes a post that has a web link in it, Twitter and Facebook might send that post to followers via a text message (with a string or strings of textual characters in it that the handset interprets to create a clickable link), and some users respond by clicking the link to get more content." Brief at 2.

Response: Denied. Paragraph 34 is unsupported by Defendants' Joint Statement of Undisputed Facts, and constitutes an unsworn and conclusory assertion of counsel, contrary to the requirements of Local Rule 56.1(a)(3). HPL does not assert that infringement occurs "when any Twitter or Facebook user writes a post that has a web link in it, Twitter and Facebook might send that post to followers via a text message (with a string or strings of textual characters in it that the handset interprets to create a clickable link), and some users respond by clicking the link to get more content." Rather, Defendants infringe when they perform (or those they direct or control or induce) the variously-claimed elements of the asserted HPL claims as set forth in HPL's various Infringement Contentions. *See, e.g.,* Preliminary Infringement Contentions for Claim 1 of 8,134,450 (Ex. B28), Claim 1 of 7,835,757 (Ex. B29), Claim 1 of 6,107,601 (Ex. B30), Claim 13 of 8,116,741 (Ex. B31), and Claim 9 of 7,280,838 (Ex. B32). Moreover, there are substantial non-infringing content delivery operations and uses of handsets that include "send[ing] a text message or post[ing] content to social media containing text strings representing web addresses that are interpreted by the social media application or a handset as clickable links." *See* Grindon Decl. ¶ 24.

35. "…HPL has already been compensated for all uses of handsets in the United States related to clicking on interpreted links in text messages or social media posts, regardless of who creates them, who sends them to the handsets, and what links handset users choose to click."

Brief at 2. "HPL's infringement allegations are directed to actions by the Defendants that constitute a use of the licensed handsets. . . ." Brief at 9.

Response: Denied. Paragraph 35 is unsupported by Defendants' Joint Statement of Undisputed Facts and constitutes an unsworn and conclusory assertion of counsel, contrary to the requirements of Local Rule 56.1(a)(3). HPL denies that the operations defined in the Content Claims constitute a content provider's "use" of handsets. *See* Grindon Decl. ¶ 17. Thus, to the extent Defendants argue that their "communicating with" or "operating in the environment with" handsets constitutes "defendants use" of handset, HPL has not been compensated for Defendants' separate infringement of the reserved Content Claims. HPL has been compensated only for the specific releases, covenants and licenses granted to the handset makers within the scope of the Licensed Fields, and subject to the reservations of Section 3.e, of the Handset Agreements. The Handset Licensees expressly agreed that they "paid a substantially reduced License Fee as set forth in Paragraph 5.a. in part because it has not compensated HPL to exhaust HPL's rights against Third Parties, or to obtain a license, release or covenant for Third Parties that actively Infringe the Reserved Claims as set for thin Section 3.e above." *See* Curtin Decl. ¶¶ 5, 6, 8 and 10.

36. "Every asserted method claim includes the following basic steps and every asserted system claim operates according to the following operations, as Defendants illustrate with the following flowchart" shown at Brief at 9.

Response: Denied. Paragraph 36 is unsupported by Defendants' Joint Statement of Undisputed Facts and constitutes an unsworn and conclusory assertion of counsel, contrary to the requirements of Local Rule 56.1(a)(3). None of the asserted claims include as basic steps (or structure that operates according to) the operations illustrated in the flowchart at page 9 of the

16

Brief. The flowchart at page 9 of Defendants' Brief is inaccurate. *See* Grindon Decl. ¶¶ 17-22, and 41.

37. "HPL's system claims asserted against the Defendants are similar. For example, Claim 26 of the '741 Patent recites "a notification system" that sends a notification with "an information identifier" to a "cell phone" (Steps 1-2), "a request" from "the cell phone" (Steps 3-5), and the content provider's "receipt" of that request (Step 6)." Brief at 10.

Response: Denied. Paragraph 37 is unsupported by Defendants' Joint Statement of Undisputed Facts and constitutes an unsworn and conclusory assertion of counsel, contrary to the requirements of Local Rule 56.1(a)(3). None of the asserted claims include as basic steps (or structure that operates according to) the operations illustrated in the flowchart at page 9 of the Brief. The flowchart at page 9 of Defendants' Brief is inaccurate. *See* Grindon Decl. ¶¶ 17-22, and 41. In addition, HPL's system claims are not the same scope as HPL's method claims. *Id*. ¶ 21.

38. "The functionality in those handsets for receiving messages and allowing a user to click on a link (thereby initiating a request for content based on the identifier in the message) is the "essential, or inventive, feature" of HPL's invention." Brief at 11. "The handsets, therefore, "embody[]" the patents "essential features."" Brief at 12.

Response: Denied. Paragraph 38 is unsupported by Defendants' Joint Statement of Undisputed Facts and constitutes an unsworn and conclusory assertion of counsel, contrary to the requirements of Local Rule 56.1(a)(3). The functionality in the handsets for receiving messages and allowing a user to click on a link (thereby initiating a request for content based on the identifier in the message) is ***not*** the "essential, or inventive, feature" of HPL's invention." *See* Grindon Decl. ¶¶ 18-22, and 41.

17

39. "[T]he claims also require the delivery of content—a step that is not "unique" or "central" to HPL's supposed invention of text-and-web integration but which is rather a "standard component[]" enabling the invention to be useful. . . ." Brief at 11.

Response: Denied. Paragraph 39 is unsupported by Defendants' Joint Statement of Undisputed Facts and constitutes an unsworn and conclusory assertion of counsel, contrary to the requirements of Local Rule 56.1(a)(3). As established above, not all asserted claims "require the delivery of content." *See* ¶ 20, above. Regardless, the content provider operations recited in the asserted claims are "unique" or "central" to HPL's invention and are not "standard components" or operations." *See* Grindon Decl. ¶¶ 41(c) and 42.

40. "[T]he relevant feature of the handsets sold here does not have any reasonable and intended noninfringing use (under HPL's broad infringement theory). . . .The question is whether the specific feature at issue—the ability to receive text messages with strings of text that the handset interprets as links and, when the user clicks on the text string to request content, the capability of downloading and displaying that content—has substantial noninfringing uses." Brief at 13.

Response: Denied. Paragraph 40 is unsupported by Defendants' Joint Statement of Undisputed Facts and constitutes an unsworn and conclusory assertion of counsel, contrary to the requirements of Local Rule 56.1(a)(3). The handsets are complete items with many reasonable and intended uses that do not infringe the asserted Content Claims. *See* Grindon Decl. ¶¶ 23-24 and 42(c).

### Helferich's Additional Material Facts

HPL submits these additional facts that require the denial of Defendants' Joint Motion for Summary Judgment of Patent Exhaustion, pursuant to Local Rule 56.1(b)(3)(C):

41. Defendants do not base Exhaustion on their purchase or acquisition of licensed handsets but, rather, rely on handsets purchased by others.  *See* Brief at 9-10.

**The Helferich Patent Portfolio**

42. To date, HPL has been issued more than fifty patents worldwide, including more than thirty patents in the United States, containing more than 1500 separate patent claims.  *See* Curtin Decl. ¶14.

43. HPL's patents describe and claim many separate "inventions" in distinct fields, including in the field of handsets ("Handset Claims") and in the field of mobile wireless content provision ("Content Claims").  *See* Grindon Decl. ¶¶ 27-34 and 42.

44. During prosecution of the Helferich Patents, the PTO issued at least 17 "restriction requirements" identifying at least 100 "independent and distinct" classes of inventions (not accounting for any potential redundancy or overlaps), and in the process, held various Content Claims to be patentably distinct from various Handset Claims.  *See* Grindon Decl. ¶¶ 27-29.

**The Content Claims**

45. The PTO issued many patents with hundreds of Content Claims that define important and distinct inventions required to be performed only by content providers, and enable content providers to, *inter alia*, store, identify, update and cause delivery of messages and related content to mobile phones.  *See* Grindon Decl. ¶¶ 18-22, 27-30, 32-34 and 42.

46. Five of the asserted Content Patents (Patent Nos. 8,134,450; 8,116,741; 8,107,601; 8,735,757; and 7,155,241) include only Content Claims that handsets do not infringe or contribute to the infringement of.   *See* Grindon Decl. ¶ 25.

47. The Content Claims do not recite novel or essential operations performed by handsets. Instead, they define inventions having novel and "essential features" all of which are performed by the content providers. *See* Grindon Decl. ¶¶ 17(c) and 42(b). A few examples are:

    a.   creating notifications of content that include a system identifier address code, where the content provider receives the system identifier from an identification service. *See, e.g.,* Claim 1, U.S. Pat. No. 7,835,757.

    b.   updating or changing content (e.g., "dynamic content") after causing a notification of the content to be sent. *See, e.g.,* Claim 1, U.S. Pat. No. 8,116,741.

    c.   using a page notification that indicates that the content is available for a specified time, and in some cases, where the content provider causes the content to become inaccessible after the specified time. *See, e.g.,* Claim 1, U.S. Pat. No. 8,134,450.

    d.   causing transmission of "error status information," and then causing transmission of content after receipt of a request based on error status information. *See, e.g.,* Claim 1, U.S. Pat. No. 8,107,601.

*See* Grindon Decl. ¶¶ 18-22.

48. The Content Claims describe novel operations relating to: storing the content, identifying the content, receiving identifiers from identification services creating the notification messages, causing the messages to be sent phones, updating the identified content, inserting time availability of content in the messages (and making the content inaccessible thereafter), receiving requests based on error status information. A handset user does not perform those actions, and does not require, dictate or direct where or how a content provider performs them. *See* Grindon Decl. ¶¶ 18-22.

20

49. With respect to the Content Claims, handsets are completed articles with substantial non-infringing uses and do not "embody" the inventions patented by the Content Claims. *See* Grindon Decl. ¶ 34. Some of HPL's asserted claims (e.g., '450 Patent, claims 1-8) do not even refer to "handsets." *See, e.g.,* Grindon Decl. ¶ 18(b).

50. A handset purchaser can receive text messages with links, render the links, click on links, and request, receive and browse content identified by the links without infringing the Content Claims. *See* Grindon Decl. ¶¶ 23-24.

51. Handset users do not control or direct the operations performed by the content providers (including, for example, storing content, updating the content, identifying content, limiting the time the content is available, or creating a notification of the content). *See* Grindon Decl. ¶¶ 18(c), 19(d), 20(d), 21(d), 22(d), and 42(c).

52. The content delivery operations recited in the Content Claims are not the addition of only "common processes" to handsets, nor do they "complete" or add "generic" or "common structure or operations" to "incomplete" handsets. *See* Grindon Decl. ¶¶ 18(d), 18(g), 19(c), 19(f)-(h), 20(c), 20(f)-(g), 21(c), 21(f)-(g) 22(c), 41(c) and 42.

**The Handset Claims**

53. The PTO issued to Helferich hundreds of Handset Claims defining important and distinct "inventions" embodied (i.e., practiced and infringed) only by handsets and not by content providers. *See* Grindon Decl. ¶¶ 26, 27, 28, 30, 31, 36-40, and 42(a). A few examples include claims for handsets (and methods of operating them) that:

   a. have special memory management features for erasing received information without erasing an identifier of the information. *See, e.g.,* Claim 110 of U.S. Patent No. 6,087,956.

21

b. include a user interface that provides two alerts to the user – one when a message is received and another when a user's command is completed. *See, e.g.,* Claim 7 of U.S. Patent No. 7,280,838.

c. provide a user with the option to turn on and off transmission of acknowledgments of received information. *See, e.g.,* Claim 1 of U.S. Patent No. 7,376,432.

d. enable a user to select and automatically access and play audio information audio information from the handset's memory or from a remote server. *See, e.g.,* Claim 1 of U.S. Patent No. 7,146,157.

*See* Grindon Decl. ¶¶ 37-40.

54. The Handset Claims are not practiced by content delivery operations. The handsets are "completed items" that practice or embody the patented inventions in the Handset Claims. *See* Grindon Decl. ¶¶ 36-40.

**The Helferich Licenses**

55. HPL licensed the different "patented inventions" of the Content and Handset claims only to the respective infringers in the distinct "fields of use."

a. HPL limited any rights granted under the handset fields to only the Handset Claims infringed by "Mobile Wireless Communication Devices" (i.e., "handsets").

b. HPL reserved from the handset "Licensed Field" of the Handset Licenses any rights under the distinct Content Claims.

*See* Curtin Decl. ¶¶ 5, 6, and 10.

56. HPL has to date licensed 160 companies to the Content Claims, in licenses that limited any rights granted to *only* the Content Claims infringed by "Mobile Wireless Content

22

Provision" (i.e., storing content, causing wireless transmission of content). The content licenses did *not* include (and instead reserved) from the content license grant the separate and distinct "patented inventions" defined in the Handset Claims, and the reduced license fee reflected this fact. *See* Curtin Decl. ¶¶ 7-8.

57. There are approximately 28 handset licenses, each having certain unique terms; however, the following are representative terms and conditions (*see* Curtin Decl. ¶ 5 and exhibits as noted):

> Section 1, Definitions:
>
> > "'Licensed Fields' means Mobile Wireless Communication Devices that are made, used imported, exported, offered for sale, sold or otherwise disposed of by Licensee, anywhere in the world." (See X2, X3 at §1.d; X4, X5, X6 at §1.e).
>
> Section 2, Releases:
>
> a. "Release of Licensee: Subject to the exceptions and limitations set forth in Sections 3.e . . . . HPL hereby releases, acquits and discharges licensee . . . . but only to the extent that such claim, demand, liability or right of action is based upon Licensee making, having made, using, selling offering for sale, importing or exporting a product or method within the scope of the Licensed Fields . . . ."
>
> b. "Release of Customers, Retailers, Wholesalers: Subject to the exceptions and limitations set forth in Sections 3.e . . . . HPL hereby releases, acquits and discharges Licensee respective direct and indirect past, present and future customers . . . . but only to the extent that such claim, demand, liability or right of action is based upon Licensee making, having made, using, selling offering for sale, importing or exporting a product or method within the scope of the Licensed Fields . . . ."
>
> (See X2, X3, X4, X5 and X6 at §2a and §2b)(emphases added).
>
> Section 3 Grant of License/Covenant Not to Sue:
>
> > 3.a. "License Grant: Subject to the exceptions and limitations set forth in Sections 3.e . . . . HPL hereby grants to Licensee a worldwide, non-exclusive and irrevocable license to practice only in the Licensed Fields . . . ."

3.b. "<u>Covenant Not to Sue</u>:  (1) Subject to the exceptions and limitations set forth in Sections 3.e . . . .  HPL hereby covenants and agrees with Licensee that neither HPL nor any person . . . controlled by it . . . will bring suit or otherwise assert any claim….

(i)  <u>against Licensee</u>, for Infringement  .  .  .  within the scope of the Licensed Fields…;

(ii) <u>against a Third Party</u>, . . . to the extent such cause of action is based on the Third Party making, having made, selling offering for sale, leasing, importing or exporting  .  .  .  any product or method that is within the scope of the Licensed Fields . . . .

(iii)<u>against a Consumer</u>, for Infringement where the claim or cause of action is based on the Consumer purchasing or using a product or method that is within the scope of the Licensed Fields . . . ."

(See X2, X3, X4, X5 and X6 at §3a and §3b)(emphases added)

3.e   <u>No Exhaustion or Implied Rights</u>:

(1) <u>Reserved Causes of Action Against Third Parties</u>:  This Section 3.e(1) reserves for HPL certain causes of action against Third Parties, and is not intended to provide HPL the right to assert claims or causes of action against Licensee for Infringement of the Licensed Patents and Applications for **activities within the scope of the Licensed Fields.**

(i)  **<u>Reserved Claims</u>:  There** are more than one thousand issued and pending claims in the Licensed Patents and Applications defining many distinct inventions. . . . not Infringed by Licensee because they expressly recite material additional operations that are carried out (or material additional structure that is added) by Third Parties, including . . . Wireless Content Provider[s]  . . . and/or are not substantially embodied in the products, services or methods within the scope of the Licensed Fields.  All such claims are hereinafter referred to as "Reserved Claims."  At least those claims identified on Exhibit E are Reserved Claims.

(ii) <u>No License or Right to Licensee under Reserved Claims</u>:  No provision of this Agreement (including the Covenant Not to Sue in 3.b) grants to

24

Licensee any express or implied license or any right to make, use, sell, offer for sale, import or export products or methods that Infringe a Reserved Claim . . . .

(iii)<u>No License or Right to Licensee under Reserved Claims</u>: Because no express or implied license . . . is granted to Licensee to practice the Reserved Claims, no license or right to the Reserved Claims (including through the doctrine of exhaustion) is granted to Third Parties (including . . . Wireless Content Providers) . . . .

(iv)<u>Reserved Causes of Action Against Third Parties</u>: Accordingly, notwithstanding any other clause of this Agreement . . . HPL expressly reserves the right to assert claims, file suit, or maintain causes of action (hereafter "Reserved Causes of Action") against . . . Wireless Content Provider[s] . . . for Infringement of any claim of any of the Licensed Patents and Applications due to material additional operations that are carried out or structure that is added by such Third Parties to any product, service, or method within the scope of the Licensed Fields.

(v) <u>HPL's Express Covenant for Reserved Causes of Action</u>. Such Reserved Causes of Action are subject to HPL's express covenant and agreement that HPL will not assert a claim against any Third Party…to the extent that any product . . . within the scope of the Licensed Fields is both involved in such assertion and would Infringe the asserted claim. As a result, HPL agrees that any allegation of Infringement in such Reserved Cause of Action will be based on the material additional operations carried out or structure added by the Third Party to the subject product … within the scope of the Licensed Field.

(See X2, X3, X4, X5 and X6 at §3e)(emphases added)

Section 5, <u>Compensation:</u>

"<u>Grantee Obtained A Reduced Price</u>: Grantee acknowledges that it has paid a substantially reduced License Fee as set forth in Paragraph 5.a. in part because it has not compensated HPL to exhaust HPL's rights against Third Parties, or to

25

obtain a license, release or covenant for Third Parties that actively Infringe the Reserved Claims as set for thin Section 3.e above."

58. The licensees that purchased rights to both the Handset Claims and Content Claims also consented to the reservations in each category discussed in ¶ 57, above, with regard to Handset Claims, and also separately obtained rights under the Content Claims. *See* Curtin Decl. ¶¶ 9-10, and Ex. A8.

59. None of the 28 handset licensees assert that HPL breached any covenant by filing suit against the Defendants for their separate infringement of the reserved Content Claims. *See* Curtin Decl. ¶ 11.

Date: April 16, 2013

LAW OFFICES OF STEVEN G. LISA

By:   */s/ Steven G. Lisa*
        Steven G. Lisa (Ill. State Bar # 6187348)
        55 West Monroe Street, Suite 3210
        Chicago, Illinois 60603
        Tel. & Fax: (312) 752-4357

        Victoria Curtin (NDIL ID #010897)
        Victoria Gruver Curtin, PLC
        14555 N. Scottsdale Rd., Ste. 160
        Scottsdale, Arizona  85254
        Tel.:  (480) 998-3547

        Gerald D. Hosier (Ill. State Bar # 7059)
        Law Offices Of Gerald D. Hosier, Ltd.
        P.O. BOX 12354,
        Aspen, CO 81612
        Attorneys for Plaintiff/Counterdefendant

**CERTIFICATE OF SERVICE**

I Laura Keller certify that on April 16, 2013, I personally caused to be served, by

CM/ECF filing, a true and correct copy of "HPL's Response to Defendants' Undisputed Facts

and Statement of Additional Facts":

*/s/ Laura Keller*

Laura Keller