**EXHIBIT A**

I, Victoria Curtin, do hereby declare:

1. I am an attorney in good standing licensed to practice law in the States of California and Arizona and admitted to practice in the United States District Court for the Northern District of Illinois, *inter alia*, and am counsel to the plaintiff in this action, Helferich Patent Licensing, LLC ("HPL"). I make this declaration upon my own personal knowledge.

2. Attached as Exhibit A1 is a current "public" list of HPL's licensees. As reflected on that list:

    a. HPL has licensed approximately 28 handset companies ("Handset Licenses" or "Handset Licensees");

    b. HPL has licensed over 160 content delivery companies ("Content Licenses" or "Content Licensees"); and

    c. Of the 28 Handset Licensees, approximately 7 handset companies also requested and paid for a "Content License" ("Dual-Field Licenses" or "Dual-Field Licensees").

3. Defendants submitted and filed under seal with their Motion for Summary Judgment 28 Handset Licenses. (*See* Defendants Exhibits A-BB.) HPL had previously suggested to Judge Gilbert that the parties identify a set of reasonably "representative" Handset Licenses and Dual Field Licenses that could be redacted and used in the public record, thereby avoiding the need for the Court to work "under seal" on the Exhaustion issue. Attached hereto as Exhibits A2-A6 are true redacted copies of six such licenses that HPL entered into with handset companies, with any confidential or highly confidential language redacted.

4. The form of the Handset Licenses evolved over time, and each license contains some unique terms. However, for the purposes of the present motion, Exhibits A2-A6 are exemplary and reasonably representative of the varying terminology used with regard to the Licensed Fields, Licenses, Releases/Covenants and Reserved Claims, over the life of the licensing program, as well as being representative of the those licensees that comprise the larger share of the U.S. handset market.

5. The following provisions, in substantively the same form, appear in HPL's Handset Licenses:

**Section 1, Definitions**:

"'Licensed Fields' means Mobile Wireless Communication Devices that are made, used, imported, exported, offered for sale, sold or otherwise disposed of by Licensee, anywhere in the world." (*See* A2, A3 at §1.d; A4, A5, A6 at §1.e).

**Section 2, Releases**:

a. "Release of Licensee: *Subject to the exceptions and limitations set forth in Sections 3.e* . . . . HPL hereby releases, acquits and discharges licensee . . . . *but only* to the extent that such claim, demand, liability or right of action is based upon Licensee making, having made, using, selling offering for sale, importing or exporting a product or method *within the scope of the Licensed Fields* . . . ."

b. "Release of Customers, Retailers, Wholesalers: *Subject to the exceptions and limitations set forth in Sections 3.e* . . . . HPL hereby releases, acquits and discharges Licensee respective direct and indirect past, present and future customers . . . . *but only* to the extent that such claim, demand, liability or

right of action is based upon Licensee making, having made, using, selling offering for sale, importing or exporting a product or method *within the scope of the Licensed Fields . . . .*"

(*See* A2, A3, A4, A5 and A6 at §2a and §2b)(emphases added).

**Section 3, Grant of License/Covenant Not to Sue**:

**3.a. "License Grant**: *Subject to the exceptions and limitations set forth in Sections 3.e . . . .* HPL hereby grants to Licensee a worldwide, non-exclusive and irrevocable license to practice *only in the Licensed Fields . . . .*"

**3.b. "Covenant Not to Sue**: (1) *Subject to the exceptions and limitations set forth in Sections 3.e . . . .* HPL hereby covenants and agrees with Licensee that neither HPL nor any person . . . controlled by it . . . will bring suit or otherwise assert any claim . . . .

(i) against Licensee, for Infringement . . . *within the scope of the Licensed Fields . . .* ;

(ii) against a Third Party, . . . to the extent such cause of action is based on the Third Party making, having made, selling offering for sale, leasing, importing or exporting . . . any product or method that is *within the scope of the Licensed Fields . . . .*

(iii) against a Consumer, for Infringement where the claim or cause of action is based on the Consumer purchasing or using a product or method that is *within the scope of the Licensed Fields . . . .*"

(*See* A2, A3, A4, A5 and A6 at §3a and §3b)(emphases added).

**Section 3.e,** **No Exhaustion or Implied Rights:**

    **(1) Reserved Causes of Action Against Third Parties:** This Section 3.e(1) reserves for HPL certain causes of action against Third Parties, and is not intended to provide HPL the right to assert claims or causes of action against Licensee for Infringement of the Licensed Patents and Applications for activities *within the scope of the Licensed Fields*.

    **(i)**     **Reserved Claims:** There are more than one thousand issued and pending claims in the Licensed Patents and Applications defining many distinct inventions. . . . not Infringed by Licensee because they expressly recite material additional operations that are carried out (or material additional structure that is added) by Third Parties, including . . . Wireless Content Provider[s] . . . *and/or are not substantially embodied in the products, services or methods within the scope of the Licensed Fields.* All such claims are hereinafter referred to as "Reserved Claims." At least those claims identified on Exhibit E are Reserved Claims.

    **(ii)**     **No License or Right to Licensee under Reserved Claims**: No provision of this Agreement (including the Covenant Not to Sue in 3.b) grants to Licensee any express or implied license or any right to make, use, sell, offer for sale, import or export products or methods that Infringe a Reserved Claim . . . .

    **(iii)**     **No License or Right to Licensee under Reserved Claims**: Because no express or implied license . . . is granted to Licensee to practice the

4

    Reserved Claims, *no license or right to the Reserved Claims (including through the doctrine of exhaustion) is granted to Third Parties (including . . . Wireless Content Providers)* . . . .

**(iv)**  **Reserved Causes of Action Against Third Parties:** Accordingly, *notwithstanding any other clause of this Agreement* . . . HPL expressly *reserves the right to assert claims*, file suit, or maintain causes of action (hereafter "Reserved Causes of Action") *against . . . Wireless Content Provider[s]* . . . for Infringement of any claim of any of the Licensed Patents and Applications *due to material additional operations that are carried out or structure that is added by such Third Parties* to any product, service, or method within the scope of the Licensed Fields.

**(v)**  **HPL's Express Covenant for Reserved Causes of Action.** Such Reserved Causes of Action are subject to HPL's express covenant and agreement that HPL will *not assert a claim against any Third Party...to the extent that any product . . . within the scope of the Licensed Fields is both involved in such assertion and would Infringe the asserted claim*. As a result, HPL agrees that any allegation of Infringement in such Reserved Cause of Action will be based on the material additional operations carried out or structure added by the Third Party to the subject product … within the scope of the Licensed Field.

(*See* A2, A3, A4, A5 and A6 at §3e)(emphases added).

**Section 5. Compensation:**

"**Grantee Obtained A Reduced Price**: Grantee acknowledges that it has paid a substantially reduced License Fee as set forth in Paragraph 5.a. in part because it has not compensated HPL to exhaust HPL's rights against Third Parties, or to obtain a license, release or covenant for Third Parties that actively Infringe the Reserved Claims as set for thin Section 3.e above."

(*See* A3 at §5.d, A4 at §5.d, A5 and A6 at §5.c).

6. Handset Agreements A2-A5 identify on Exhibit E thereof "examples" of HPL claims that were at that time issued or pending and that were included within the "Reserved Claims." *See* A2-A5 at Exhibit E. Later forms of the Handset Agreement did not list actual examples of the Reserved Claims, but rather, relied on the express limitation of the release, license and covenants to *only* those claims that were "Infringed" (as that term was defined in Section 1 of the Handset Agreements) by activities of the handset companies within the defined Licensed Field. *See* A6, § 3.e. Included in the early Handset Agreements as expressly Reserved Claims are the following Content Claims that were asserted against Defendants:

    a. 7,280,838 - claims 9, 10, 12

    b. 7,155,241 - claims 71, 85

    c. 7,499,716 - claims 15, 22, 30, 38

    d. 7,835,757 - claims 1-13, 15-20

    e. 8,116,741 - claim 1 (was listed as then-pending claim 107 of Application No. 12/167,971)

    f. 8,134,450 - claims 1, 3-8, 10, 15-17, 19-23 (were listed as then-pending claims 2, 4-9, 11, 24-26, 28-32 of Application No. 13/367,358).

7. Exhibit A7 is a true copy of the "standard form" of HPL's Content License. Although each of HPL's 160+ Content License has some terms unique to each licensee, for the purposes of the present Exhaustion motion, Exhibit A7 is exemplary and reasonably representative of the varying terminology used with regard to the Licensed Fields, Licenses, Releases/Covenants and Reserved Claims of the Content Licenses, over the life of the licensing program.

8. HPL's form of the Content Licenses mirrors the form of the Handset Licenses, differing primarily by limiting the granted rights to the different Licensed Field of "Mobile Wireless Content Provision" rather than to Handsets. (*See* A7 at §1.d). Accordingly, all terms of the Content Agreement, including the Releases (*id.* at §2.a), License Grant (*id.* at §3.a) and Covenant Not to Sue (*id.* at §3.b) are expressly subject to the exceptions set forth in Section 3.e, in a manner similar to the parallel provisions of the Handset Licenses. The Content Licensees therefore agreed that Section 3.e "reserves for HPL causes of action against Third Parties for separate Infringement of the Licensed Patents and Applications," including for "Reserved Claims" that were not Infringed by the Content Providers within the Licensed Fields of "Mobile Wireless Content Provision." (*Id.* at 3.e(1)(i)-(iii)).

9. Exhibit A8 is a true copy of a Dual-Field License that HPL entered into with a handset manufacturer that also obtained a license to the Content Claims. Helferich has entered into 7 such Dual-Field Licenses. Although each Dual Field License has some terms unique to each licensee, for the purposes of the present Exhaustion motion, Exhibit A8 is exemplary and reasonably representative of the varying terminology used with regard to the Dual Field Licensed Fields, Licenses, Releases/Covenants and Reserved Claims, over the life of the licensing program. Exhibit A8 is also redacted so that any confidential material is removed, but the terms

regarding the Licensed Fields, Licenses, Releases/Covenants and Reserved Claims are included.

10. HPL's Dual-Field Licenses mirrored the form of the Handset and Content Licenses, but with two mutually exclusive Licensed Fields: "(1) Mobile Wireless Communication Devices that are made, used, sold or offered for sale by or for Licensee" and "(2) Mobile Wireless Content and Message Provision carried out by or for Licensee." (*See* A8 at §1.d). All terms of the Content Agreement, including the Releases (*id.* at §2.a), License Grant (*id.* at §3.a) and Covenant Not to Sue (*id.* at §3.b) were made expressly subject to the exceptions set forth in Section 3.e, in a manner similar to the parallel provisions of the Handset Licenses and Content Licenses. The Dual Field Licensees therefore agreed, with respect to each separate License Field, that Section 3.e "reserves for HPL causes of action against Third Parties for separate Infringement of the Licensed Patents and Applications," including for "Reserved Claims" that were not Infringed by the Content Providers within the respective Licensed Fields. (*Id.* at 3.e(1)(i)-(iii)).

11. None of the 28 handset licensees assert that Helferich breached §3.e.v (HPL's Express Covenant for Reserved Causes of Action) in their licenses by filing suit against the defendants for their separate infringement of the reserved Content Claims.

12. Helferich Patent Licensing, LLC is a limited liability company organized and existing under the laws of the State of Illinois, with its principal office in Phoenix, Arizona.

13. HPL is responsible for identifying unlicensed infringers of the portfolio of patents of which it is the exclusive licensee, all having Richard J. Helferich as the inventor, including defendants, and negotiating and entering into licensing agreements with those companies that wish to practice the inventions claimed in the HPL Portfolio.

14. HPL to date has more than fifty patents worldwide, including more than thirty in

the United States, with more than 1500 separate patent claims.

      I declare under penalty of perjury that the foregoing is true and correct. Executed this 16th day of April, 2013, in Scottsdale, Arizona.

*/s/ Victoria Curtin*
Victoria Curtin